PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
(212) 858-1000
David G. Keyko
Eric Fishman
Ryan G. Kriger
Jay Dealy

Attorneys for Defendants
American Media, Inc. and
Distribution Services, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDERSON NEWS, L.L.C. and ANDERSON
SEVICES, L.L.C.,

                    Plaintiffs,

    - against -

AMERICAN MEDIA, INC., BAUER PUBLISHING
CO., L.P., CURTIS CIRCULATION COMPANY,
DISTRIBUTION SERVICES, INC., HACHETTE
FILIPACCHI MEDIA U.S., INC., HUDSON NEWS
DISTRIBUTORS LLC, KABLE DISTRIBUTION
SERVICES, INC., THE NEWS GROUP, L.P.,
RODALE, INC., TIME INC., and TIME/WARNER
RETAIL SALES & MARKETING, INC.,

                    Defendants.

09-CIV-2227

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISQUALIFY KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Table of Contents

Page

INTRODUCTION ....... 1

STATEMENT OF FACTS ...... 3

I.    The Source Action ...... 3

II.   AMI's Settlement ...... 4

III.  The Anderson Action ...... 6

IV.  The Motion to De-Designate ...... 8

V.   Claims against KBTF ...... 8

VI.  Source Benefits at Anderson's Expense ...... 9

ARGUMENT ...... 9

I.    KBTF'S VIOLATION OF THE CONFIDENTIAL SOURCE SETTLEMENT
      AGREEMENTS AND THE CONFIDENTIALITY AGREEMENT MANDATES
      DISQUALIFICATION ...... 9

      A.  KBTF's Knowledge Of The Settlement With AMI Requires Disqualification ...... 10

      B.  KBTF'S Use Of Confidential Documents From The Source Action Requires
          Disqualification ...... 12

      C.  KBTF's Solicitation Of Anderson    **REDACTED**
          **REDACTED**                        ...... 13

      D.  KBTF's violation of DR 5-101 Mandates Disqualification ...... 14

II.   CONFLICTS OF INTEREST MANDATE DISQUALIFICATION ...... 16

CONCLUSION ...... 21

i

## TABLE OF AUTHORITIES

### CASES

*Alcantara v. Mendez,*
  303 A.D.2d 337 (2d Dep't 2003)...............................................................12, 19

*Bassman v. Blackstone Assocs.,*
  279 A.D.2d 280 (1st Dep't 2001).............................................................10, 11

*Bassman v. Fleet Bank,*
  8/25/2000 NYLJ 26, (col. 6) (Sup. Ct. N.Y. County 2000)...................10, 11

*Calcutti v. SBU, Inc.,*
  273 F. Supp. 2d 488 (S.D.N.Y. 2003).............................................................17

*Crews v. County of Nassau,* No. 06-CV-2610 (JFB)(WDW),
  2007 WL 316568 (E.D.N.Y. Jan. 30, 2007) ...............................................15

*Dorsainvil v. Parker,*
  14 Misc. 3d 397 (Sup. Ct. Kings County 2006)......................................12, 19

*Dunton v. County of Suffolk,*
  729 F.2d 903 (2d Cir. 1984)............................................................................9

*Eshel v. Fleet Bank,*
  279 A.D.2d 281 (1st Dep't 2001) ................................................................11

*Estates Theatres, Inc. v. Columbia Pictures Indus., Inc.,*
  345 F. Supp. 93 (S.D.N.Y. 1972) ...........................................................18, 19

*Faustini v. Palladino,*
  280 A.D.2d 291 (1st Dep't 2001) ................................................................15

*Feldman v. Minars,*
  230 A.D.2d 356 (1st Dep't 1997).............................................................13, 14

*Greene v. Greene,*
  47 N.Y.2d 447 (1979) .........................................................................15, 16, 19

*In re Biovail Corp. Sec. Litig.,*
  247 F.R.D. 69 (S.D.N.Y. 2007) ...................................................................12

*Kashi v. Gratsos,*
  790 F.2d 1050 (2d Cir. 1986).........................................................................17

*Pine v. Solow,*
    69 A.D.2d 760 (1st Dep't 1979) ................................................................................17

*Source Interlink Distribution LLC, et al. v. American Media, Inc., et al.,*
    No. 09 Civ. 1152 (PAC) .........................................................................................1

# RULES,
## DISCIPLINARY RULES AND OTHER AUTHORITIES

DR 5-101 of the New York Code of Professional Conduct,
    (22 NYCRR 1200.20) .....................................................................................14, 15, 16

DR 5-105 of the New York Code of Professional Responsibility
    (22 NYCRR 1200.24) ..........................................................................................17, 18

N.Y. C.P.L.R. § 1401 (McKinney 2009) ...........................................................................17

NYS Bar Ass'n Comm. On Prof'l Ethics Op. 635 [1992]..................................................16

NYS Bar Ass'n Comm. On Prof'l Ethics Op. 660 [1994].................................................16

NYS Bar Ass'n Comm. On Prof'l Ethics Op. 687 [1997]..................................................16

Rule 1.7 of The Rules of Professional Conduct..................................................................14

Defendants American Media, Inc, and Distribution Services, Inc. (together "AMI"),

Curtis Circulation Company ("Curtis"), Hudson News Distributors LLC ("Hudson"), Hachette

Filipacchi Media U.S., Inc. ("Hachette"), Bauer Publishing Co., L.P. ("Bauer"), and  Rodale, Inc.

("Rodale") respectfully submit this Memorandum in support of their motion for an Order

disqualifying the law firm of Kasowitz, Benson, Torres & Friedman LLP ("KBTF") from

representing Plaintiffs Anderson News, L.L.C. and Anderson Services, L.L.C. (collectively

"Anderson") in this litigation.

## INTRODUCTION

KBTF represented Source Interlink Distribution LLC and Source Interlink Companies,

Inc., (collectively "Source") against AMI in *Source Interlink Distribution LLC, et al. v.*

*American Media, Inc., et al.*, No. 09 Civ. 1152 (PAC) (the "Source Action.")  The allegations in

the Source Action are substantially similar to those in this lawsuit (the "Anderson Action.")

In the course of the Source Action, KBTF obtained access to thousands of documents

through expedited discovery in connection with the parties' preparation for a hearing on Source's

motion for a preliminary injunction.  Those materials were produced pursuant to a

Confidentiality Stipulation and Protective Order (the "Confidentiality Agreement")[1] which

clearly provided that such documents "shall be used only in connection with the [Source

Action]."  Confidentiality Agreement ¶ 5.  KBTF was privy also to confidential settlement

negotiations between Source and AMI, as well as those between Source and other defendants,

and the terms of the settlement agreements that resulted, which also are confidential.

KBTF has made no effort effectively to wall off the attorneys working on the Source

Action from those handling the Anderson Action.  Indeed, Messrs. Kazowitz and Benson have

---

[1]  A copy of the Confidentiality Agreement is attached to the Affirmation of David G. Keyko dated April 17, 2009 ("Keyko Aff.") as Exhibit B.

been leading their firm's effort in both cases. (*See* Keyko Aff. ¶ 11.) Attorneys cannot create ethical walls within themselves. Thus, KBTF's advice to Anderson to bring this litigation against AMI, and KBTF's presumable offer to represent Anderson on a contingency basis, resulted from the fact that KBTF had access to confidential information obtained in the Source Action that KBTF was prohibited from using outside the Source Action. KBTF's possession of confidential information obtained in the Source Action, which KBTF is barred from using in the Anderson Action but will inevitably influence its decisions as counsel for Anderson, creates a serious conflict and precludes KBTF from representing Anderson.

There are additional conflicts of interests that preclude KBTF from representing Anderson.

**REDACTED**

It therefore is in KBTF's interest that Anderson not prevail on the claims KBTF is pursuing on Anderson's behalf against AMI. Second, the interests of Source and Anderson are in conflict with each other. Because Source has been one of the primary beneficiaries of Anderson's demise, the defendants in the Anderson Action have a strong incentive to bring third-party claims seeking indemnification from Source. KBTF thus would be in the position of representing parties on the opposite sides of the same action.

KBTF's representation of Anderson thus creates a number of conflicts of interest for the firm, which it has done nothing to mitigate. It now is too late to do so, and so KBTF should be disqualified from representing Anderson.

## STATEMENT OF FACTS

**I.    The Source Action**

On February 9, 2009, Source commenced the Source Action against AMI and all the

other defendants subsequently sued by Anderson, except for Rodale. (Keyko Aff. ¶ 2, Ex A.)

Source later added Rodale as a defendant.  The complaint alleged, *inter alia*, an industry-wide

conspiracy among magazine publishers, distributors, and wholesalers, to boycott Source in a

purported attempt to drive it out of business.  The complaint asserted claims for unlawful

restraint of trade under the Sherman Act, tortious interference, defamation, and civil conspiracy.

Source's counsel in the action was and still is KBTF.

Source also sought a Temporary Restraining Order ("TRO") and a preliminary injunction

against the defendants.  The TRO was granted on February 11, 2009, and the preliminary

injunction hearing was set for February 23, 2009.  To permit the parties to prepare for the

hearing, expedited discovery was scheduled.  In connection with the discovery, the parties

entered into the Confidentiality Agreement.  (Keyko Aff. ¶ 3, Ex. B.)  That agreement provides

that, "[a]ll Litigation Material shall be used only in connection with the above captioned

litigation."  The Confidentiality Agreement prohibited the parties from sharing confidential

documents with third parties like Anderson.  Confidentiality Agreement ¶ 6.  On February 18,

2009, AMI produced over 17,000 pages of documents, all designated either "Confidential" or

"Attorneys Eyes Only" pursuant to the Confidentiality Agreement.  Other defendants also

produced thousands of pages of documents that were likewise labeled confidential.  (Keyko

Aff. ¶ 4.)

On February 19, 2009, Source settled with Time, Inc., and its affiliate Time/Warner

Retail Sales & Marketing, Inc. (collectively, "Time"), two of the co-defendants.  The terms of

this settlement are confidential.  As a result of the Time settlement, Source concluded that it

could not make all the required showings for a preliminary injunction and withdrew its motion for such an injunction. (Keyko Aff. ¶ 5.) On February 27, 2009, AMI settled with Source. That settlement also was confidential. (Keyko Aff. ¶ 6.) Source, with the assistance of its lawyers, KBTF, has subsequently reached settlements with Curtis, Hachette, Hudson, Kable Distribution Services, Inc. ("Kable"), and The News Group, L.P. ("News Group"). These defendants were dismissed from the lawsuit and the terms of those settlements are non-public and most are confidential. (Keyko Aff. ¶ 8.)

**II.    AMI's Settlement**

The settlement between Source and AMI exemplifies the conflicts that KBTF has in representing Anderson while at the same time being party to confidential settlement negotiations and settlements on behalf of Source. For approximately a week, Source, with the assistance of its counsel, KBTF, engaged in settlement negotiations with AMI that culminated in a settlement agreement dated February 27, 2009 (the "Settlement Agreement") with AMI. (*Id.*, Ex. C.)

**REDACTED**

4

**REDACTED**

Memo in Support of Motion to Disqualify.DOC

**REDACTED**

**III.    The Anderson Action**

On March 10, 2009, Anderson, by and through its counsel KBTF, commenced the Anderson Action.  Anderson sued all the defendants originally named by Source plus Rodale, which was subsequently added as a defendant by Source.  (Keyko Aff. ¶ 9, Ex. D.)  Anderson asserts it was injured by the exact same conspiracy alleged in the Source Action and its claim of conspiracy is premised on most of the same flimsy factual allegations.  The causes of action alleged also are the same: unlawful restraint of trade under the Sherman Act, tortious interference, defamation, and civil conspiracy.  While the Anderson Action complaint does not particularize the alleged injuries, Anderson apparently seeks hundreds of millions of dollars in damages.

6

Anderson announced that it had ceased doing business before KBTF filed the Anderson Action. In fact, an involuntary bankruptcy petition was filed against Anderson prior to the time the Anderson Action was filed. (Keyko Aff. ¶ 10.) While the defendants believe that KBTF was retained by Source to be paid on an hourly fee basis, KBTF apparently actively solicited Anderson to handle Anderson's claims on a contingency fee basis. Because Anderson is insolvent, it presumably is not paying for KBTF's services on an hourly-fee basis. Anderson has made clear that it does not have sufficient assets to repay its secured lenders, and so unsecured creditors will receive nothing.[2] It therefore is probable that KBTF is even fronting the litigation costs.

Before offering to handle a case like this on a contingency fee basis, a law firm would have to do a very careful analysis of the basis for its claims. It is not believable that in performing this analysis, KBTF could have ignored its knowledge of the terms of the confidential Source settlements and the confidential documents produced in the Source Action. In fact, the same KBTF partners are involved in both the Source Action and the Anderson Action. (Keyko Aff. ¶ 11.) KBTF did not even attempt to erect a Chinese Wall to separate those with confidential information about the Source Action from those analyzing Anderson's claims. No lawyer can erect an ethical wall within him or herself.

---

[2] *See* Keyko Aff. Ex. E, Direct Examination of John Campbell, Anderson News, LLC Vice-President of Finance, Transcript of Proceedings Before the Hon. Christopher S. Sontchi, U.S. Bankruptcy Court Judge, Case No. 09-10695 (Bankr. D.Del Mar. 11, 2009), at 23 ("Q. No payments to any of the book distributors during this period of time [from Jan. 1, 2009 through Mar. 11, 2009]; correct? A. That's correct."); 30 ("Q. And today [Anderson's] gross revenue is effectively zero? A. Yes. Q. Anticipate any additional payments to any affiliated or related entities of Anderson News over the next few weeks? A. Not that I would be aware of, no."); 55-56 ("Q. Okay. Has there been any discussion with the petitioning creditors about providing them some extracts of the financial statement, the consolidated financial statement? A. Yes. . . . Q. Is there any money to pay the auditors? A. No."); 61 ("Q. Okay. How are you doing on the accounts receivable collection? A. Miserable.")

Memo in Support of Motion to Disqualify.DOC

**IV.     The Motion to De-Designate**

On March 3, 2009, Source, through KBTF, moved to have certain documents produced by AMI, Curtis, Bauer, and Hudson declared non-confidential.  (Keyko Aff. ¶ 12, Ex. F.)  The Court denied the motion, concluding that it was "not clear to the Court what litigation purpose is to be served by quoting and publication of confidential documents."  Order at 2.  Indeed, there was no legitimate strategic reason that Source needed these documents redesignated.  The only apparent motivation for its motion to de-designate the documents was for the purpose of quoting them in a public document (the Amended Source Complaint) that could then be referenced to bolster the Anderson complaint.

**V.      Claims against KBTF**

**REDACTED**

REDACTED

## VI.   Source Benefits at Anderson's Expense

Prior to going out of business, Anderson alleges that it was the second largest national wholesaler, with approximately 27% of the market.  Anderson Complaint ¶ 30.  Although Anderson's complaint alleged that Anderson and Source were victims of an alleged conspiracy, Source has been one of the principal beneficiaries of Anderson's closing.  Source acquired a number of Anderson's customers, including hundreds of Wal-Mart stores.

## ARGUMENT

## I.   KBTF'S VIOLATION OF THE CONFIDENTIAL SOURCE SETTLEMENT AGREEMENTS AND THE CONFIDENTIALITY AGREEMENT MANDATES DISQUALIFICATION

The Court should disqualify counsel from its representation of multiple parties if there is "[an] imminent threat of a serious conflict." *See generally Dunton v. County of Suffolk*, 729 F.2d 903, 907 (2d Cir. 1984).  Disqualification is appropriate where the dual representation will violate Canons 5 and 9 of the New York Code of Professional Responsibility, which require

9

attorneys to decline representations that will create conflicts of interest and to avoid even the appearance of impropriety. *Id* at 908.

Through its representation of Source, KBTF obtained defendants' confidential information through discovery.  Through its representation of Source in negotiating settlements with AMI and other defendants KBTF learned confidential information about the parties' settlement positions.  KBTF is bound under the terms of the settlement agreements.  KBTF, as a result, obtained knowledge and accepted obligations that preclude it from representing Anderson in this matter.  KBTF, by representing Anderson, is now in breach of the AMI Settlement Agreement.  AMI is now seeking compensation from KBTF for the damages that will arise from the Anderson Action.

**REDACTED**

### A.    KBTF's Knowledge Of The Settlement With AMI Requires Disqualification

Because the Anderson Action is highly similar to the Source Action, it would be impossible for KBTF to represent Anderson, including advising it as to its settlement options, because of the firm's participation in the confidential negotiation of Source's settlements with ten defendants and KBTF's drafting of confidential settlement agreements including the one that resolved AMI's and Source's claims against each other.

This issue was directly addressed in *Bassman v. Blackstone Assocs.*, 279 A.D.2d 280 (1st Dep't 2001), *affirming Bassman v. Fleet Bank*, 8/25/2000 NYLJ 26, (col. 6) (Sup. Ct. N.Y. County 2000).  There, a settlement agreement explicitly provided that the settlement was to remain confidential.  In a subsequent action commenced on behalf of a different client by the same law firm against the same defendant, the defendant moved to disqualify the lawyers.  The law firm argued that it could represent another plaintiff without violating the settlement because

the law firm would not disclose the settlement terms. The supreme court rejected this contention:

> By entering the agreement, counsel agreed to keep confidential, meaning not reveal or give others access to, the terms of the settlement. It is implausible that counsel could use, yet somehow not reveal or give plaintiffs in this lawsuit access to, the [prior] settlement information, without being in breach of the terms of the confidentiality provision. Since the possibility of settlement is a part of any litigation, counsel's obligations under the [prior] agreement conflicts with its ability to freely contemplate settlement strategies in the instant litigation.

*Id.* at 1.

The supreme court disqualified the law firm and the First Department affirmed, holding that the "motion court correctly held that the confidentiality provisions of the settlement agreement in another action in which [the firm] represented the plaintiffs prohibited [the firm] from accepting future representation of similarly situated plaintiffs." *Bassman*, 279 A.D.2d at 281; *see also Eshel v. Fleet Bank*, 279 A.D.2d 281, 281 (1st Dep't 2001).

The analysis of the *Bassman* court is applicable here. In fact, because of the contingency arrangement that KBTF apparently has with Anderson, the reasons for disqualification are stronger here. In this case, KBTF had to consider whether it made economic sense for it to take on the risk of handling the Anderson Action for a contingency fee. Part of this calculus is always whether settlement is possible, and if so at what level. KBTF could not have ignored the terms of the confidential settlements it negotiated for Source when making that judgment. In fact, KBTF made no effort to wall off the confidential Source information from the Anderson Action team – the same KBTF partners are managing both cases. Furthermore, Anderson must have assumed that KBTF used its knowledge about the Source Settlements as the basis for the firm's proposal to handle the Anderson Action on a contingency basis. That also had to be part of Anderson's decision making process when it determined to devote some of its limited resources

Memo in Support of Motion to Disqualify.DOC

to directing the litigation.  KBTF's knowledge of the settlement with AMI and other defendants therefore requires that it be disqualified from representing Anderson.

**B.     KBTF'S Use Of Confidential Documents From The Source Action Requires Disqualification**

The participation of KBTF in the Anderson Action is also a breach of the Confidentiality Agreement in the Source Action.  Paragraph 5 of that Agreement admonishes that "All Litigation Materials shall be used only in connection with the above captioned litigation."  Paragraph 6 states that "Confidential" Litigation Material "shall be maintained in confidence by the party to whom such materials are produced or disclosed and shall not be disclosed to any other person . . . ."  And Paragraph 7 cautions that Litigation Material designated as "Attorneys' Eyes Only" materials "shall not be disclosed and shall be kept on a counsel eyes' only basis and not be disclosed or shown to any other person . . . ."  Taken together, these provisions make clear that the materials exchanged in discovery were not permitted to be shared with non-parties to the Source Action, including other clients of KBTF, including Anderson.

KBTF's advice to Anderson concerning whether to commence an action, and its own decision about whether to accept such an engagement, was necessarily informed by information obtained in the Source Action and therefore violated the letter and the spirit of the Confidentiality Agreement.  To state the obvious, the KBTF partners could not create an ethical wall within themselves, and, as stated, the firm made no attempt to erect an ethical wall within the firm to separate those with knowledge about Source Action defendants' documents from those working on the Anderson Action.  As the court reasoned in *Bassman*, KBTF likely has and can not help but use the information discovered in the Source Action to the benefit of Anderson, in violation of the Confidentiality Agreement.  *See also Dorsainvil v. Parker*, 14 Misc. 3d 397, 402-03 (Sup. Ct. Kings County 2006) (disqualifying counsel in part because he could not keep

the confidences of each client apart from each other); *Alcantara v. Mendez*, 303 A.D.2d 337, 338 (2d Dep't 2003) (same).[3]

      **C.    KBTF's Solicitation Of Anderson**        **REDACTED**

**REDACTED**

---

[3]  KBTF recently was accused in another matter of improperly using confidential documents from one case in another.  In 2007, KBTF represented Biovail Corp. in a litigation against S.A.C. Capital Management in New Jersey.  Biovail had obtained documents subject to a confidentiality order in a case before Judge Owen in the Southern District of New York.  That confidentiality order, like the Confidentiality Agreement in this case, stated, "[d]ocuments, testimony, or information obtained through discovery in this Action, including but not limited to Confidential Information, may be used or disclosed *solely for the prosecution or defense of this Action.*"  *In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 69, 70 (S.D.N.Y. 2007) (emphasis in original).  KBTF was found to have used the protected, confidential documents to file the New Jersey action.  After extensive hearings, Judge Owen ordered Biovail to return the confidential documents, redact any information in the New Jersey complaint that relied on the documents, and awarded the movant attorney's fees and expenses.

[4]  **REDACTED**

REDACTED

**D.     KBTF's violation of DR 5-101 Mandates Disqualification**

REDACTED

_____

REDACTED

**REDACTED**

---

[6]   On April 1, 2009, New York adopted a set of Rules of Professional Conduct modeled on the Model Rules of Professional Conduct, and DR 5-101 was superseded by Rule 1.7, which states in relevant part, "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." When the complaint was filed, however, DR 5-101 was in effect.

**REDACTED**

## II.    CONFLICTS OF INTEREST MANDATE DISQUALIFICATION

Anderson alleges an industry-wide boycott enacted by publishers, distributors and wholesalers in an attempt to monopolize the magazine distribution market and to push Anderson out of the industry.  Complaint ¶ 2.  Prior to the alleged boycott, Anderson alleges it was the second largest national wholesaler, with approximately 27% of the market.  Complaint ¶ 30.  Although the complaint in the Anderson Action paints Source as another victim of the purported conspiracy, that characterization does not reflect reality.  Now, following Anderson's closing, the industry has only three major wholesalers, the largest of which is Source.  Source, in fact, was a

major beneficiary of Anderson's demise.  Many Wal-Mart stores, which had been clients of

Anderson, shifted to Source.

Consequently, it is not surprising that while the allegations in the Anderson Action are

substantially similar to those in the Source Action, the underlying rationale of each is at odds

with the other.  Anderson alleges that the seven cent increase was necessary and, if not accepted,

Anderson would go out of business, as it did.  Source alleges that the seven cent increase was

simply a bargaining tactic.  It claims to have rescinded its demand when it realized that the

defendant publishers would not accept the increase – knowing at the time, like other industry

participants, that if Anderson was being honest, it would be out of business.  It thus took

advantage of the situation, suddenly withdrawing its demands, knowing that it would profit from

Anderson's departure.

Anderson's and Source's interests therefore are not aligned.  Anderson has asserted a

New York common law conspiracy claim.  Under New York law, co-conspirators are joint and

severally liable.  *Kashi v. Gratsos*, 790 F.2d 1050, 1054-55 (2d Cir. 1986).  Therefore, not only

could Anderson sue Source, but other purported conspirators (like defendants) could conceivably

bring third-party claims against Source for indemnification (even though defendants deny there

was a conspiracy).  N.Y. C.P.L.R. § 1401 (McKinney 2009) ("[T]wo or more persons who are

subject to liability for damages for the same . . . injury to property . . . may claim contribution

among them . . . .").  *See also Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 493 (S.D.N.Y. 2003)

(denying motion to dismiss claim for contribution for aiding and abetting fraud, negligence, and

conversion); *Pine v. Solow*, 69 A.D.2d 760, 760 (1st Dep't 1979) (affirming denial of motion to

dismiss cross-claim for contribution for conspiracy).  The interests of Anderson and Source are

thus in conflict, and KBTF cannot zealously represent both.

DR 5-105 of the New York Code of Professional Responsibility (22 NYCRR 1200.24)

states:[7]

> B. A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under DR 5-105(C).

> C. In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved.

This situation is strikingly similar to that presented in *Estates Theatres, Inc. v. Columbia Pictures Indus., Inc.*, 345 F. Supp. 93 (S.D.N.Y. 1972). In that case, the attorney representing the plaintiff, which owned a theater called the Utopia, had represented a theater chain which owned a theater called the Roosevelt in separate antitrust litigations. The Utopia alleged an antitrust conspiracy against a number of motion picture distributors and theater owners. Though the Utopia did not name the Roosevelt as a defendant, it was clear from the facts that the Roosevelt was allegedly a co-conspirator. *Id.* at 96. The court found that, based on the facts, the interests of the two theaters were antagonistic in that the conspirators were apparently

---

[7]  DR 5-105 was superseded by Rule 1.7 of the New York Rules of Professional Conduct on April 1, 2009:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing.

*See* Footnote 4, *supra*.

discriminating against one of the attorney's clients, the Utopia, in favor of the other, the

Roosevelt. *Id.*

The court also held that the defendants had standing to raise the conflict of interest issue

because, "[w]hen the propriety of professional conduct is questioned, any member of the Bar

who is aware of the facts which give rise to the issue is duty bound to present the matter to the

proper forum, and a tribunal to whose attention an alleged violation is brought is similarly duty

bound to determine if there is any merit to the charge." *Id.* at 98.  The court then explained its

reasons for disqualifying the plaintiff's attorney:

> Once a conflict of interest appears from the facts, and where the matters embraced
> in the pending action are substantially related to those in the other actions, the law
> will not inquire into the force of the impact or its potential damage.  For the Court
> to do so would require it to speculate as to the course a litigation would take and
> would tend to undermine the confidence of clients that their counsel would be
> constant in their loyalty to their interests, a confidence essential to our adversary
> legal process.  This parallels the rule that once the attorney-client relationship is
> established, the courts will not inquire into the nature of the privileged
> communications entrusted to the attorney by the client to determine whether
> disclosure would adversely affect the former client's interest.  As already stated,
> considerations of public policy, no less than the client's interests, require rigid
> enforcement of the rule against dual representation where one client is likely to be
> adversely affected by the lawyer's representation of another client and where it
> appears he cannot exercise independent judgment and vigorous advocacy on
> behalf of the one without injuring the interests of the other. A lawyer should not
> be permitted to put himself in a position where, even unconsciously he will be
> tempted to "soft pedal" his zeal in furthering the interests of one client in order to
> avoid an obvious clash with those of another, at least in the absence of the express
> consent of both clients.

*Estates Theatres*, 345 F. Supp. at 98-99.  *See Dorsainvil*, 14 Misc.3d at 402-03 (disqualifying

counsel from representing multiple plaintiffs where the interests of the plaintiffs were in conflict

based on the counsel's inability to represent both parties zealously); *Alcantara*, 303 A.D.2d at

338 (disqualifying counsel from representing multiple plaintiffs where their pecuniary interests

were in conflict, and where representation of one could expose the other to liability).

A conflict of interest clearly exists because of the differing interests of Anderson and Source. The conflict is not waivable because it would put KBTF on both sides of the same action. *Greene*, 47 N.Y.2d at 451-52 ("Perhaps the clearest instance of impermissible conflict occurs when a lawyer represents two adverse parties in a legal proceeding. In such a case, the lawyer owes a duty to each client to advocate the client's interests zealously. Yet, to properly represent either one of the parties, he must forsake his obligation to the other. Because dual representation is fraught with the potential for irreconcilable conflict, it will rarely be sanctioned even after full disclosure has been made and the consent of the clients obtained.").

**REDACTED**

**CONCLUSION**

For the reasons stated above, AMI respectfully requests the Court grant their motion to disqualify Kasowitz, Benson, Torres & Friedman LLP as counsel for Anderson in this action, and to grant such other relief as the Court deems appropriate.

Dated: April 17, 2009
New York, New York

PILLSBURY WINTHROP SHAW PITTMAN LLP

By:   */s/ David G. Keyko*
     David G. Keyko
     Eric Fishman
     Ryan G. Kriger
     Jay Dealy
     1540 Broadway
     New York, NY  10036-4039
     (212) 858-1000

*Attorneys for Defendants American Media, Inc. and Distribution Services, Inc.*

DECHERT LLP
As To Non-Redacted Sections

By:   */s/ Joseph F. Donley*
     Joseph F. Donley
     1095 Avenue of the Americas
     New York, NY 10036
     (212) 649-8724

*Attorneys for Defendant Curtis Circulation Co.*

WINSTON & STRAWN LLP
As To Non-Redacted Sections

By:   */s/ John M. Hadlock*
     John M. Hadlock
     200 Park Avenue
     New York, NY  10166-4193
     (212) 294-6700

*Attorneys for Defendant Rodale, Inc.*

GIBSON, DUNN & CRUTCHER LLP
As To Non-Redacted Sections


By:   */s/ Jarrett D. Arp*
      Jarrett D. Arp
      Cynthia E. Richman
      1050 Connecticut Ave., NW
      Washington, DC  20036
      (202) 955-8500

*Attorneys for Defendant Hudson News*
*Distributors LLC*

TROUTMAN SANDERS LLP
As To Non-Redacted Sections


By:   */s/ Stephen G. Rinehart*
      Stephen G. Rinehart
      Daniel N. Anziska
      The Chrysler Building
      405 Lexington Avenue
      New York, New York 10174
      (212) 704-6305

*Attorneys for Defendant Bauer Publishing Co., L.P.*


JONES DAY
As To Non-Redacted Sections


By:   */s/ Meir Feder*
      Meir Feder
      Jones Day
      222 East 41st St.
      New York, NY  10017
      (212) 326-7870

*Attorneys for Defendant Hachette Filipacchi*
*Media U.S., Inc.*

22