UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDERSON NEWS, L.L.C., and LLOYD WHITAKER, as the Assignee under an Assignment for the Benefit of Creditors for Anderson Services, L.L.C.,<br><br>                                                     Plaintiff,<br><br>         v.<br><br>AMERICAN MEDIA, INC., BAUER PUBLISHING CO., LP., CURTIS CIRCULATION COMPANY, DISTRIBUTION SERVICES, INC., HACHETTE FILIPACCHI MEDIA U.S., HEARST COMMUNICATIONS, INC., HUDSON NEWS DISTRIBUTORS LLC, KABLE DISTRIBUTION SERVICES, INC., RODALE, INC., TIME INC. and TIME/WARNER RETAIL SALES & MARKETING, INC.,<br><br>                                                     Defendants. | 09 Civ. 2227 (PAC)<br><br>ECF CASE<br><br><u>ANSWER OF TIME INC.</u> |

       Defendant Time Inc. ("Time") by its undersigned attorneys, for its Answer to the Amended Complaint of plaintiffs Anderson News, L.L.C. ("Anderson News"), Anderson Services, L.L.C. ("Anderson Services") and Lloyd Whitaker (collectively, "plaintiffs") herein, on personal knowledge as to its own actions, and upon information and belief as to the actions of others, states as follows:

**PRELIMINARY STATEMENT**

1. Denies the allegations of paragraph 1, except admits that Anderson News was a wholesaler of magazines.

2. Denies the allegations of paragraph 2.

3. Denies the allegations of paragraph 3.

4. Denies the allegations of paragraph 4.

5. Denies the allegations of paragraph 5.

6. Denies the allegations of paragraph 6.

7. Denies the allegations of paragraph 7.

8. Denies the allegations of paragraph 8, except admits that Anderson News shut down its business operations in February 2009, and states that it lacks knowledge or information as to agreements between Source and other defendants.

9. Denies the allegations of paragraph 9.

10. Denies the allegations in paragraph 10.

**THE PARTIES**

A. **Publishers**

11. Admits the allegations of paragraph 11, except denies that Time publishes more than 120 magazines, and denies that Time publishes Southern Accents or Business 2.0.

12. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, except admits that Bauer publishes *In Touch Weekly, Life & Style Weekly, Woman's World, First For Women* and *Soaps in Depth*.

13. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13, except admits that AMI publishes *Country Weekly*, *FLEX*, *GLOBE*, *Men's Fitness*, *MUSCLE & FITNESS*, *National Enquirer*, *SHAPE* and *Star*.

14. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, except admits that Hearst publishes *Car and Driver*, *Road & Track*, *ELLE*, *ELLE Décor* and *Woman's Day*.

15. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15, except admits that Rodale publishes *Men's Health*, *Prevention*, *Women's Health*, *Runner's World*, *Best Life*, *Bicycling*, *Running Times* and *Organic Gardening*.

**B.     National Distributors**

16. Denies the allegations of paragraph 16, except admits national magazine distributors are retained by magazine publishers to perform certain tasks specified by contract.

17. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17, but admits that Curtis distributes various publications.

18. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18, but admits that Kable distributes various publications.

19. Admits the allegations of paragraph 19.

20. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20, but admits DSI is a provider of marketing services to publishers.

### C. Magazine Wholesalers

21. Denies the allegations of paragraph 21, except admits that before February 2009, there were four major magazine wholesalers in the United States.

22. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of sentences 1, 3 and 5 of paragraph 22. Denies the allegations of sentences 2, 4 and 6 of paragraph 22, except lacks knowledge or information sufficient to form a belief as to whether Anderson News was the second largest magazine wholesaler in the United States.

23. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23, except denies that defendants forced Anderson Services to begin to shut down its operations.

24. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24, except admits that Hudson is a major magazine wholesaler.

25. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25, except admits that News Group is a major magazine wholesaler and was originally named as a defendant in this action.

26. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of sentence 1 of paragraph 26, except admits that

Source is a major magazine wholesaler, and denies the allegations of sentence 2 of paragraph 26.

## JURISDICTION AND VENUE

27. Denies the allegations of paragraph 27, except states the plaintiffs purport to bring this action for alleged violations of Section 1 of the Sherman Act.

28. Admits this Court has subject matter jurisdiction over this matter.

29. Admits venue is proper in the United States District Court for the Southern District of New York.

## BACKGROUND

A. **Overview: Single-Copy Magazine Sales**

30. Admits the allegations of the first sentence of paragraph 30. Denies the allegations of the second sentence of paragraph 30, except admits that many publishers, including Time, retain a national distributor to provide a variety of functions, which may include marketing, accounting or payment guarantee services.

31. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31, except admits that TWR, Kable, Curtis and Comag are the four largest national distributors in the United States,ced admits that DSI provides marketing services to publishers.

32. Denies the allegations of paragraph 32, except admits that national distributors typically transmit allotment orders to printers; that the allotments typically exceed the number ultimately purchased by consumers; that the printers ship magazines to wholesalers; and that wholesalers and other distributors deliver or arrange for delivery of the magazines to retailers, including all the types listed in paragraph 32.

33.     States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33, except admits that wholesalers are generally responsible for shipping to retailers and for processing returns, which may include collection and destruction of unsold magazines.

34.     Denies the allegations of paragraph 34, except admits that single-copy magazine sales can be important to publishers depending on the magazine; that advertising revenues can be important to publishers, depending on the magazine; and that, for some magazines, advertising revenues may be affected to some degree by the number of copies sold.

**B.      Historical Exclusive Agency Distribution System and Industry Consolidation**

35.     Denies the allegations of paragraph 35.

36.     Denies the allegations of paragraph 36.

37.     Denies the allegations of paragraph 37, except admits that the Department of Justice criminally prosecuted several wholesalers for allocating territories, and admits that after 1995, a few wholesalers, including Anderson News, grew larger.

38.     States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38.

39.     Denies the allegations of paragraph 39.

40.     Denies the allegations of paragraph 40, except admits that specific magazine titles, such People and Sports Illustrated, are supplied only by a single publisher.

41.     Denies the allegations of paragraph 41, except admits that for certain magazines, advertising comprises a substantial source of revenue and that advertising

revenue may be affected to some degree by the number of copies sold, and states that it is without knowledge or information sufficient to form a belief as to the truth of the penultimate sentence of paragraph 41.

42. Denies the allegations of paragraph 42.

43. Denies the allegations of paragraph 43.

C. **The Motivation for the Concerted Action and Conspiracy**

44. Denies the allegations of paragraph 44.

45. Denies the allegations of paragraph 45, except states that it lacks knowledge or information sufficient to identify or comment on the analysis referenced in paragraph 45, and further refers to the analysis, if it exists, for its contents.

46. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46, except denies the allegations of sentence 6 of paragraph 46.

47. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47.

48. Denies the allegations of paragraph 48.

49. Denies the allegations of paragraph 49, except admits that in January 2009, Anderson News announced that it would impose a $.07 per copy surcharge for all magazines it received, effective February 1, 2009, and that it would not distribute magazines unless publishers agreed to assume the cost of magazines held by Anderson News in inventory that were to be sold to retailers having scan-based trading relationships with Anderson News.

50. Denies the allegations of paragraph 50.

51. Denies the allegations of paragraph 51, except admits Anderson News CEO, Charles Anderson, and Time CEO, Ann Moore, met on January 12, 2009, and admits that Mr. Anderson told Ms. Moore that Anderson News was imposing a $.07 per copy surcharge, effective February 1, 2009.

52. Denies the allegations of paragraph 52, except admits that Charles Anderson conducted a call-in interview with *The New Single Copy* on January 14, 2009, an industry publication, and refers to the transcript of that interview for its contents.

53. Denies the allegations of paragraph 53, except states that it lacks knowledge or information sufficient to form a belief as to the last sentence of paragraph 53.

54. Denies the allegations of paragraph 54, except admits that on January 19, 2009, Source publicly announced that it would cease distributing magazines, effective February 1, 2009, for publishers who did not agree to pay Source an additional $.07 per copy for each magazine distributed by Source.

D. **The Conspiracy to Eliminate Anderson and Source**

55. Denies the allegations of paragraph 55.

56. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56, except admits Time and TWR were not present or represented at any meeting alleged in paragraph 56.

57. Denies the allegations of paragraph 57, except states that it lacks sufficient knowledge or information as to the existence of any communication by Kable to TWR, and refers to that communication, if it exists, for its contents.

58. Denies the allegations of paragraph 58, except states that it lacks sufficient knowledge or information as to the existence or substance of any communication alleged therein.

59. Denies the allegations of paragraph 59, except states that it lacks sufficient knowledge or information as to the existence or substance of any communication alleged therein.

60. Denies the allegations of paragraph 60, except states that it lacks sufficient knowledge or information as to the existence or substance of any communications alleged therein, and refers to the emails, if they exist, for their contents.

61. Denies the allegations of paragraph 61 except states that it lacks sufficient knowledge or information as to the existence or substance of any communications alleged therein, and refers to the emails, if they exist, for their contents.

62. Denies the allegations of paragraph 62.

63. Denies the allegations of paragraph 63.

1. **Defendants' Common Response to Anderson's Proposed Surcharge.**

64. Denies the allegations of paragraph 64, except states that it lacks sufficient knowledge or information to form a belief as to the communication of other defendants with Charles Anderson.

65. Denies the allegations of paragraph 65, except states that it lacks sufficient knowledge or information to form a belief as to the first sentence of paragraph 65, and admits that Charles Anderson met with TWR president and CEO, Rich Jacobsen, on January 31, 2009, in Mr. Jacobsen's office in New Jersey, and that Mr.

Jacobsen agreed to discuss scan-based trading with Mr. Anderson on Monday, February 2, 2009, and that Anderson News agreed to pay TWR $13 million on February 2, 2009, representing past-due monies owed to TWR by Anderson News.

66. Denies the allegations of paragraph 66, except states that it lacks sufficient knowledge or information as to the existence or substance of any communications alleged therein, and refers to the emails, if they exist, for their contents.

67. Denies the allegations of paragraph 67.

68. Denies the allegations of paragraph 68.

69. Denies the allegations of paragraph 69.

70. Denies the allegations of paragraph 70, except states that it lacks sufficient knowledge or information as to the existence or substance of any communication alleged therein.

71. Denies the allegations of paragraph 71, except states that it lacks knowledge or information sufficient to form a belief as to the existence or substance of any conversation between Mr. Castardi and any executive of Source.

**2. Defendants' Conduct Was Contrary to Their Economic Self Interest Absent Collusion**

72. Denies the allegations of paragraph 72.

73. Denies the allegations of paragraph 73, except admits that severe disruptions to the rate base of certain magazines can cause significant drops in advertising revenue.

74. Denies the allegations of paragraph 74.

75. Denies the allegations of paragraph 75.

76. Denies the allegations of paragraph 76.

77. Denies the allegations of paragraph 77.

78. Denies the allegations of paragraph 78, except states it lacks knowledge or information as to any alleged poaching of Anderson News or Anderson Services employees.

79. States that it is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 79.

80. Denies the allegations of paragraph 80.

81. Denies the allegations of paragraph 81.

82. Denies the allegations of paragraph 82.

83. Denies the allegations of paragraph 83.

E. **The Destruction of Anderson's Business**

84. Denies the allegations of paragraph 84.

85. Denies the allegations of paragraph 85.

86. Denies the allegations of paragraph 86.

87. Denies the allegations of paragraph 87.

88. Admits the allegations of paragraph 88.

F. **The Relevant Market**

89. Denies the allegations of paragraph 89, except admits that wholesale distributors sold and continue to sell thousands of magazine titles to tens of thousands of retailers across the country.

90. Denies the allegations of paragraph 90.

91. Denies the allegations of paragraph 91.

### G. Competition Has Been Injured by the Conspiracy

92. Denies the allegations of paragraph 92.

93. Denies the allegations of paragraph 93.

94. Denies the allegations of paragraph 94.

95. Denies the allegations of paragraph 95, and states that it lacks knowledge or information sufficient to form a belief as to whether News Group is selling magazines to retailers previously served by Anderson, or the prices charged to any such customers.

96. Denies the allegations of paragraph 96.

### FIRST CAUSE OF ACTION

97. Denies the allegations of paragraph 97, and further repeats, realleges and incorporates herein by reference its responses to paragraphs 1 through 96 as if fully set forth herein.

98. Denies the allegations of paragraph 98.

99. Denies the allegations of paragraph 99.

100. Denies the allegations of paragraph 100.

101. Denies the allegations of paragraph 101.

### SECOND CAUSE OF ACTION

102. Denies the allegations of paragraph 102, and further repeats, realleges and incorporates herein by reference its responses to paragraphs 1 through 101 as if fully set forth herein.

103. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 103.

104. States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 104.

105. Denies the allegations of paragraph 105.

106. Denies the allegations of paragraph 106.

107. Denies the allegations of paragraph 107.

108. Denies the allegations of paragraph 108.

109. Denies the allegations of paragraph 109.

110. Denies that Anderson News or Anderson Services are entitled to any of the relief sought in paragraph 110 of the Amended Complaint or elsewhere.

**THIRD CAUSE OF ACTION**

111. Denies the allegations of paragraph 111, and further repeats, realleges and incorporates herein by reference its responses to paragraphs 1 through 110 as if fully set forth herein.

112. Denies the allegations of paragraph 112.

113. Denies the allegations of paragraph 113.

114. Denies the allegations of paragraph 114.

115. Denies that Anderson News or Anderson Services is entitled to any of the relief sought in paragraph 115 of the Amended Complaint or elsewhere.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs' claims for recovery of damages are barred, in whole or part, by plaintiffs' failure to avoid, minimize or mitigate the alleged damages.

### Second Affirmative Defense

Plaintiffs, by their own acts and omissions, have waived any right to recover under the causes of action that they allege in the Amended Complaint.

### Third Affirmative Defense

Plaintiffs, as a result of their own acts and omissions, are estopped, in whole or in part, from obtaining the relief they seek in the Amended Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, for the reasons stated herein and for good cause shown, Time respectfully requests:

(a) that the plaintiffs' Amended Complaint be dismissed with prejudice;

(b) that Time be awarded the costs, expenses, disbursements and attorneys' fees, which it incurs in defending this action; and

(c) such other and further relief as the Court deems just and proper.

Dated:  September 24, 2012

                                                             CRAVATH, SWAINE & MOORE LLP

                                                             by
                                                                         /s/ Rowan D. Wilson
                                                                           Rowan D. Wilson
                                                                          Heather L. Cannady

                                                              Worldwide Plaza
                                                              825 Eighth Avenue
                                                              New York, NY 10019
                                                                   (212) 474-1000

                                                   *Attorneys for Defendant Time Inc.*