UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDERSON NEWS, L.L.C., and LLOYD WHITAKER, as the
Assignee under an Assignment for the Benefit of Creditors for
Anderson Services, L.L.C.,

          Plaintiffs,

    - against -

AMERICAN MEDIA, INC., BAUER PUBLISHING CO., LP.,
CURTIS CIRCULATION COMPANY, DISTRIBUTION
SERVICES, INC., HACHETTE FILIPACCHI MEDIA U.S.,
HEARST COMMUNICATIONS, INCm., HUDSON NEWS
DISTRIBUTORS LLC, KABLE DISTRIBUTION SERVICES,
INC., RODALE, INC., TIME INC. and TIME/WARNER
RETAIL SALES & MARKETING, INC.,

          Defendants.

09 Civ. 2227 (PAC)
ECF CASE

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' RULE 11 MOTION

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Daniel R. Benson (dbenson@kasowitz.com)
Hector Torres (htorres@kasowitz.com)
Dean Pamphilis (dpamphilis@kasowitz.com)
Maria Gorecki (mgorecki@kasowitz.com)
Seth Davis (sdavis@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.:   (212) 506-1700
Fax:   (212) 506-1800

*Attorneys for Plaintiff*
*Anderson News, L.L.C.*

LYNCH ROWIN LLP
Thomas P. Lynch (tlynch@lynchrowin.com)
Jennifer T. Chavez (jchavez@lynchrowin.com)
630 Third Avenue
New York, New York 10017
Tel:   (212) 682-4001
Fax:   (212) 682-4003

*Attorneys for Plaintiff Lloyd Whitaker, as the*
*Assignee under an Assignment for the Benefit*
*of Creditors for Anderson Services, L.L.C.*

Dated: December 3, 2012

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

PROCEDURAL HISTORY......................................................................................4

A.    The Complaint ..........................................................................................4

B.    The Amended Complaint............................................................................5

FACTS ..................................................................................................................6

A.    Original Hudson Meeting Allegation........................................................6

    1.    TWR's Purported Evidence Concerning the Hudson Meeting...............7

    2.    Hudson's Challenge to Certain Allegations in the Complaint.................9

B.    Proposed Amended Complaint .................................................................9

    1.    DSI's Purported Evidence Concerning the Hudson Meeting ................10

C.    Defendants' Frivolous Rule 11 Motion .................................................13

ARGUMENT .......................................................................................................15

I.    Legal Standard ......................................................................................15

II.    Anderson Undertook a Reasonable Investigation and
Has an Evidentiary Basis for the Hudson Meeting Allegation .........................16

III.    Defendants' Purported "Evidence" Is Woefully Deficient................................20

    1.    The E-Z Pass Statement Is Ambiguous, and the Self-Serving Porche and
Rafferty Affidavits Simply Raise Disputed Issues of Fact ...................20

    2.    Defendants' New "Evidence" Is Irrelevant..........................................21

IV.    Defendants' Motion Should Be Denied Because No Discovery Has Taken Place ..........22

V.    Defendants Should Be Sanctioned
for Filing a Frivolous Rule 11 Motion.........................................................24

CONCLUSION.....................................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                                                                                **Page**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)................................................................................2, 5, 19, 20

*Archie Comic Publ'ns, Inc. v. DeCarlo*,
    No. 00 Civ. 5686 (LAK),
    2000 U.S. Dist. LEXIS 19295 (S.D.N.Y. Nov. 21, 2000).......................................23

*ATSI Commc'ns, Inc. v. Shar Fund, Ltd.*,
    579 F.3d 143 (2d Cir. 2009)....................................................................................18

*Bd. of Trs. of Ft. Lauderdale Gen. Empls. Ret. Sys. v. Mechel OAO*,
    811 F. Supp. 2d 853 (S.D.N.Y. 2011).....................................................................18

*Beverly Gravel, Inc. v. DiDomenico*,
    908 F.2d 223 (7th Cir. 1990) ..................................................................................15

*Bletas v. Deluca*,
    No. 11 Civ. 1777 (NRB),
    2011 U.S. Dist. LEXIS 133132 (S.D.N.Y. Nov. 14, 2011).............................16, 18

*Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*,
    28 F.3d 259 (2d Cir. 1994).....................................................................................18

*Calloway v. Marvel Entm't Grp., Div. of Cadence Indus. Corp.*,
    854 F.2d 1452 (2d Cir. 1988)......................................................................18, 22, 24

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*,
    725 F. Supp. 669 (N.D.N.Y 1989) ..................................................................... 18-19

*Connolly v. TJX Cos.*,
    No. 07-CV-3282 (JS) (WDW),
    2010 U.S. Dist. LEXIS 137404 (E.D.N.Y. Dec. 30, 2010) ....................................16

*Etlin v. Yankwitt*,
    No. CV-85-2607,
    1986 WL 15439 (E.D.N.Y. May 16, 1986) ...........................................................18

*G-I Holdings, Inc. v. Baron & Budd*,
    No. 01 Civ. 0216 (RWS),
    2002 U.S. Dist. LEXIS 15443 (S.D.N.Y. Aug. 16, 2002)................................17, 19

*Gianoukas v. Campitiello*,
    No. 09 Civ. 1266 (PAC),
    2009 U.S. Dist. LEXIS 95354 (S.D.N.Y. Oct. 13, 2009) .......................................16

*Goldenberg v. St. Barnabas Hosp.*,
    No. 01 Civ. 7435 (GBD),
    2005 U.S. Dist. LEXIS 2730 (S.D.N.Y. Feb. 22, 2005).........................................................17

*Gottlieb v. Heller*,
    No. 93 Civ. 3081 (LAP),
    1994 U.S. Dist. LEXIS 14453 (S.D.N.Y. Oct. 7, 1994).................................................15, 18

*In re Air Disaster at Lockerbie, Scotland*,
    144 F.R.D. 613 (E.D.N.Y. 1992).........................................................................................17

*In re Australia & New Zealand Banking Grp. Ltd. Secs. Litig.*,
    712 F. Supp. 2d 255 (S.D.N.Y. 2010)...................................................................................18

*In re Pennie & Edmonds LLP*,
    323 F.3d 86 (2d Cir. 2003)....................................................................................................18

*In re SLM Corp. Secs. Litig.*,
    No. 08 Civ. 1029 (WHP),
    *2011 U.S. Dist. LEXIS 16893 (S.D.N.Y. Feb. 15, 2011)* .....................................................3

*In re Veeco Instruments Secs. Litig.*,
    No. 05 MD 1965 (CM)(GAY),
    *2007 U.S. Dist. LEXIS 5969 (S.D.N.Y. Jan. 29, 2007)* ........................................................3

*In re Wachovia Equity Secs. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)...................................................................................18

*Indus. Tech. Ventures LP v. Pleasant T. Rowland Revocable Trust*,
    No. 08-CV-6227-CJS-MWP,
    2012 U.S. Dist. LEXIS 31022 (W.D.N.Y. Mar. 6, 2012).....................................................24

*Jawbone, LLC v. Donohue*,
    No. 01 Civ. 8066(CSH),
    2002 U.S. Dist. LEXIS 11806 (S.D.N.Y. June 28, 2002)................................................22-23

*Jeffreys v. Rossi*,
    275 F. Supp. 2d 463 (S.D.N.Y. 2003)..............................................................................17, 18

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) .........................................................................................18

*Kiobel v. Millson*,
    592 F.3d 78 (2d Cir. 2010)...............................................................................................15-16

*Koar v. United States*,
    No. 96 Civ. 5166 (KMW),
    1997 U.S. Dist. LEXIS 15408 (S.D.N.Y. Aug. 29, 1997)................................................24-25

*Louros v. Kreicas,*
   No. 03 Civ. 1514 (LAK),
   2003 U.S. Dist. LEXIS 18292 (S.D.N.Y. Oct. 15, 2003) ........................................23

*Marsh v. Safir,*
   No. 99 Civ. 8605 (JGK) (MHD),
   2000 U.S. Dist. LEXIS 5136 (S.D.N.Y. April 20, 2000) ......................................3

*Mohammed v. Union Carbide Corp.,*
   606 F. Supp. 252 (E.D. Mich. 1985)........................................................19

*Nyitray v. Johnson,*
   96 Civ 6150 (MBM),
   1998 U.S. Dist. LEXIS 1791 (S.D.N.Y. Feb. 18, 1998)........................................18

*NYSE v. Gahary,*
   No. 00 Civ. 5764 (RLC),
   2003 U.S. Dist. LEXIS 165 (S.D.N.Y. Jan. 7, 2003)..........................................21

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.,*
   170 F.R.D. 361 (S.D.N.Y. 1997) ..........................................................16

*Parker v. Connecticut,*
   No. 3:03CV1942 (RNC),
   2006 U.S. Dist. LEXIS 14912 (D. Conn. Mar. 31, 2006)...........................15, 16, 24

*Pavelic & LeFlore v. Marvel Entm't Grp.,*
   493 U.S. 120 (1989).....................................................................18

*Provident Mut. Life Ins. Co. v. Vergara,*
   No. 91 Civ. 5657 (KTD)(RLE),
   1995 U.S. Dist. LEXIS 18654 (S.D.N.Y. Dec. 15, 1995) ......................................22

*Roe v. City of New York,*
   151 F. Supp. 2d 495 (S.D.N.Y. 2001).......................................................24

*Rombach v. Chang,*
   355 F.3d 164 (2d Cir. 2004)............................................................17, 23

*Safe-Strap Co., Inc. v. Koala Corp.,*
   270 F. Supp. 2d 407 (S.D.N.Y. 2003).......................................................23

*Seven Hanover Assocs. LLC v. Jones Lang Lasalle Ams., Inc.,*
   No. 04 Civ. 4143 (PAC) (MHD),
   2005 U.S. Dist. LEXIS 32016 (S.D.N.Y. Dec. 7, 2005) .......................................3

*Sheet Metal Workers' Nat'l Pension Fund v. Aul Sheet Metal Works Inc.*,
    No. 10 Civ. 1371 (KBF),
    2012 U.S. Dist. LEXIS 2915 (S.D.N.Y. Jan. 5, 2012)............................................................25

*Simpson v. Putnam Cnty. Nat'l Bank*,
    112 F. Supp. 2d 284 (S.D.N.Y. 2000).......................................................................................22

*Storey v. Cello Holdings, L.L.C.*,
    347 F.3d 370 (2d Cir. 2003).....................................................................................................16

*Vladimir v. Bioenvision Inc.*,
    606 F. Supp. 2d 473 (S.D.N.Y. 2009)......................................................................................18

## STATUTES AND RULES <span style="float:right">__Page__</span>

15 U.S.C. § 1.............................................................................................................................4

15 U.S.C. § 15...........................................................................................................................4

15 U.S.C. § 78u-4(c).................................................................................................... 17-18, 23

Fed. R. Civ. P. 11...............................................................................................................*passim*

Fed. R. Civ. P. 11 Advisory Committee Notes (1983) ...........................................................15

Fed. R. Civ. P. 11 Advisory Committee Notes (1993) ...........................................................24

Fed. R. Civ. P. 12(f)................................................................................................................24

Fed. R. Civ. P. 26(a)(1)............................................................................................................5

Plaintiffs Anderson News, LLC ("Anderson News") and Lloyd Whitaker, as the Assignee under an Assignment for the Benefit of Creditors for Anderson Services, L.L.C. ("Whitaker," and with Anderson News, "Anderson"),[1] respectfully submit this memorandum of law in opposition to Defendants' motion for Rule 11 sanctions.[2]

## PRELIMINARY STATEMENT

In their misguided motion, Defendants contend, before any discovery has been taken, that the allegations of one of the 115 paragraphs of Anderson's Amended Complaint -- Paragraph 63 -- are "utterly lacking in support" and that they purportedly have provided Anderson with "indisputable proof" that the allegations are unsupported. Each of those contentions is demonstrably baseless for numerous, independent reasons.

Anderson, a family-owned, single-copy magazine wholesaler with thousands of employees that did business for more than 70 years, was the target of Defendants' unlawful group boycott, which destroyed Anderson's business and the livelihood of its employees. As set forth in detail in the amended complaint ("Amended Complaint" or "Am. Compl."), over the span of several weeks, Defendants -- ostensible competitors -- met or communicated with each other at least a dozen times to plan and execute a concerted anti-competitive boycott of Anderson and another magazine wholesaler, Source Interlink Distribution, LLC ("Source"). The United States Court of Appeals for the Second Circuit has held that Anderson's allegations are "sufficient to make Anderson's antitrust claim plausible," and its Amended Complaint plausibly

---

[1]    On January 13, 2011, the Court of Appeals granted Anderson Services, L.L.C.'s ("Anderson Services") motion to substitute Lloyd Whitaker as the Assignee under an Assignment for the Benefit of Creditors for Anderson Services. Order, *Anderson News, LLC v. American Media, Inc.*, No. 10-4591, Doc. 55 (2d Cir. Jan. 13, 2011).

[2]    Also in opposition to the motion, Anderson submits the Declaration of Hector Torres, dated December 3, 2012 (the "Torres Decl." or "Torres Declaration"), the Declaration of Maria Gorecki, dated December 3, 2012 (the "Gorecki Decl." or "Gorecki Declaration") and the Declaration of Thomas P. Lynch, dated December 3, 2012 (the "Lynch Decl." or "Lynch Declaration"). Unless otherwise noted, all references to "Ex. __" shall refer to exhibits to the Gorecki Declaration. All emphasis supplied unless otherwise indicated.

alleges Defendants' "agreement to attempt to eliminate Anderson and Source as wholesalers in the single-copy magazine market and to divide that market between News Group and Hudson." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 187-89 (2d Cir. 2012).

One (and only one) of the numerous meetings and communications among Defendants in carrying out their boycott that are alleged in the Amended Complaint was a meeting, on or about January 29, 2009, after normal business hours, at the North Bergen, New Jersey office of one of Anderson's principal competitors, Hudson News Distributors, LLC ("Hudson").  Paragraph 63 of the Amended Complaint alleges that, at that meeting, key employees of certain Defendants -- including Dennis Porti of Curtis Circulation Company ("Curtis"), Michael Cvrlje of Time/Warner Retail Sales & Marketing, Inc. ("TWR"), David Parry of non-party The News Group, L.P. ("News Group"), and John Rafferty of Distribution Services, Inc. ("DSI") -- discussed and planned their collusive activity, including the planned allocation of the single-copy magazine market once Anderson and Source were eliminated.  (Am. Compl. ¶ 63 (the "Hudson meeting").)

It is Defendants' Rule 11 motion, if anything, that is sanctionable here.

First, before the motion was filed, Anderson, through its counsel Kasowitz, Benson, Torres & Friedman LLP ("KBT&F"), expressly informed Defendants that the allegations of Paragraph 63 were well-grounded upon evidence that had been provided by a confidential witness (the "Confidential Witness").  That witness, a highly credible non-party with more than 30 years of experience in the magazine industry, is intimately familiar with Defendants and their key employees, and was involved in the events surrounding Defendants' scheme as it unfolded. Because the witness continues to work in the magazine industry and fears possible retaliation by Defendants, Anderson has respected his wish to remain confidential at this time.  However, he

has submitted to Anderson an affidavit, which Plaintiffs are prepared to submit *in camera*.[3] There can be no doubt that Anderson is entitled to rely on the sworn testimony of a Confidential Witness. Thus, the existence of the affidavit alone dooms Defendants' motion.

Second, Defendants' sole ground for challenging the Hudson meeting allegations is its baseless assertion that it has provided Anderson with "indisputable proof" that the allegations are false. But Defendants have done no such thing. Instead, Defendants have provided Anderson (and the Court) with a collection of self-serving affidavits from the very individuals whose credibility has been challenged by the allegations in the Amended Complaint that they participated in an illegal conspiracy. This "proof," at best, creates a factual dispute as to the credibility of the Confidential Witness, on the one hand, and Defendants' affiants, on the other. Such a dispute should be resolved through discovery, not a Rule 11 motion.

Third, the allegations about the Hudson meeting were included in the Amended Complaint only after a thorough investigation that included numerous interviews of the Confidential Witness and analyses about the Confidential Witness's information. On the three occasions that Defendants challenged the inclusion of this allegation in the original and Proposed Amended Complaint, KBT&F carefully evaluated Defendants' purported evidence, re-interviewed the witness and satisfied itself that the allegations were based on substantial evidentiary support, and conveyed that conclusion to Defendants. Under those circumstances,

---

[3]    The caselaw is uniform that parties may submit privileged materials to the Court *in camera*. *See Marsh v. Safir*, No. 99 Civ. 8605 (JGK) (MHD), 2000 U.S. Dist. LEXIS 5136, at *42-43 (S.D.N.Y. April 20, 2000) ("[T]he federal courts, including the Supreme Court, have long recognized the appropriateness and value of *in camera* review of materials that disclose to the court the substance of assertedly privileged information, even of the most sensitive nature.") (citations omitted); *Seven Hanover Assocs. LLC v. Jones Lang Lasalle Ams., Inc.*, No. 04 Civ. 4143 (PAC) (MHD), 2005 U.S. Dist. LEXIS 32016, at *3 n.1 (S.D.N.Y. Dec. 7, 2005). Here, the identity of the Confidential Witness is protected by the attorney work product doctrine, since revealing the identity would improperly intrude on the investigation by Anderson's counsel. *See In re Veeco Instruments Sec. Litig.*, No. 05 MD 1965 (CM) (GAY), 2007 U.S. Dist. LEXIS 5969, at *4-5 (S.D.N.Y. Jan. 29, 2007) (refusing to compel disclosure of identity of confidential witness); *In re SLM Corp. Secs. Litig.*, No. 08 Civ. 1029 (WHP), 2011 U.S. Dist. LEXIS 16893, at *1-2 (S.D.N.Y. Feb. 15, 2011) (same).

Defendants' contention that the allegation has "no chance of success" and is "utterly lacking in support" -- the high bar that must be satisfied before the drastic remedy of Rule 11 sanctions are imposed -- is patently frivolous.

Fourth, KBT&F's investigation indisputably and substantially exceeds the level of inquiry required in antitrust collusion and conspiracy cases, where the courts uniformly recognize that direct evidence concerning defendants' unlawful conspiratorial conduct typically is exclusively in the hands of defendants.

Fifth, Defendants' motion -- which Defendants have filed before discovery and without any knowledge of Anderson's evidentiary support for the Paragraph 63 allegations -- appears to be nothing more than an improper attempt to obtain early defensive discovery, while withholding the documentary and other evidence in Defendants' possession concerning the alleged conspiracy. Because Defendants' motion is factually and legally meritless, and evidently was filed for an improper purpose, it should be denied.

## PROCEDURAL HISTORY

### A.    The Complaint

On March 10, 2009, Anderson, a single-copy magazine wholesaler, commenced this Action by filing a complaint (the "Complaint" or "Compl.") against Defendants -- major magazine publishers, four national distributors and two wholesalers -- alleging that Defendants had engaged in collusive, anti-competitive conduct in violation of section 1 of the Sherman Act (15 U.S.C. § 1) and section 4 of the Clayton Act (15 U.S.C. § 15), and asserting common law claims for tortious interference and civil conspiracy. Anderson alleges, among other things, that Defendants conspired to boycott the distribution of single-copy magazines to wholesalers Anderson and Source with the intent of destroying them as competitors. (*See* Ex. A (Complaint).) This Court dismissed the Complaint, and subsequently denied Plaintiffs' motions

for reconsideration and for permission to file a proposed amended complaint (the "Proposed Amended Complaint" or "PAC"). (*See* Ex. B (PAC).)

Plaintiffs timely appealed this Court's orders to the United States Court of Appeals for the Second Circuit. The Second Circuit vacated the dismissal of Anderson's antitrust and common law claims, denied Defendants' motions for rehearing *en banc* and for an order staying issuance of the mandate and, on August 22, 2012, remanded the Action to this Court for further proceedings. *See Anderson News*, 680 F.3d at 194.

**B.      The Amended Complaint**

On September 7, 2012, Plaintiffs filed the Amended Complaint, the allegations of which are substantially similar to those in the Complaint and the Proposed Amended Complaint, the pleadings that were reviewed by the Second Circuit. (Gorecki Decl. ¶ 5; Ex. C (Am. Compl.).)[4]

Anderson has yet to obtain any discovery from Defendants with the exception of Federal Rule 26(a)(1) initial disclosures. Anderson has served on Defendants their initial disclosures and identified 67 individuals likely to have discoverable information that Anderson may use to support its claims. This list includes the name of the Confidential Witness. (Gorecki Decl. ¶ 6; Ex. D (Initial Disclosures).)

On October 15, 2012, Anderson served on Defendants its First Request for Production of Documents. Three days later, on October 18, 2012, Defendants served Defendants' First Joint Request for Production of Documents Directed to Plaintiffs. On November 5, 2012, Defendants served their Second Joint Request for Production of Documents Directed to Plaintiffs, and Defendant Hudson served its First Request for Production of Documents Directed to Anderson

---

[4]      On October 12, 2012, this Court entered a Civil Case Management Plan and Scheduling Order in this Action. [Docket No. 132.]

News.  (Gorecki Decl. ¶ 7.)  Defendants have yet to produce even a single document in response to Anderson's document requests.

On October 31, 2012, Defendant Hudson served its First Set of Interrogatories on Plaintiffs ("Hudson Interrogatories") in which it requests, among other things, the disclosure of the identity of the Confidential Witness who provided information concerning the allegations in Paragraph 63 of the Amended Complaint.  Plaintiffs' responses and objections to the Hudson Interrogatories are due on December 3, 2012.  (Gorecki Decl. ¶ 8; Ex. E (Hudson Interrogatories).)

## FACTS

**A.    Original Hudson Meeting Allegation**

Anderson's original Complaint alleged, among other things, that Defendants engaged in an intense series of inter-competitor meetings and communications intended to formulate a coordinated response to Anderson's proposed $.07 per-copy surcharge.  One of the alleged meetings was held at Hudson's offices.  Specifically, as alleged in the Complaint:

> [I]n furtherance of their conspiracy to cut off supply to Anderson and Source, defendants Curtis and Hudson met with their respective competitors, TWR and News Group, in January 2009 at Hudson's offices in North Bergen, New Jersey.

(Ex. A (Compl.) ¶ 55.)

That specific allegation was based on information that had been provided by a highly credible, non-party Confidential Witness with more than 30-years' experience in the single-copy magazine distribution industry.  That witness also had close and long-standing business relationships with top-level executives at certain of the Defendant companies, including with some of those who attended the Hudson meeting.  (Gorecki Decl. ¶ 11.)

### 1.     TWR's Purported Evidence Concerning the Hudson Meeting

Nearly one year after the Complaint was filed, on January 26, 2010, counsel for TWR and Time, Inc. ("Time"), Rowan D. Wilson ("Wilson"), sent a letter to KBT&F, which claimed that "no representative of TWR or Time met with any representative of Curtis in January or early February of 2009 at Hudson's offices in North Bergen or at any other location." Wilson requested that Anderson either withdraw those allegations "or satisfy [itself] that [it has] a sufficient basis under Rule 11 to persist in that averment." (Ex. F (1/26/10 Wilson letter).)

Based on Wilson's assertions concerning TWR and Time, KBT&F re-evaluated and re-examined the bases for the factual allegations concerning the Hudson meeting. The substance of those allegations, as well as the source of the allegations -- the Confidential Witness -- were discussed and evaluated internally among all the partners working on the Action at that time, including Marc E. Kasowitz, Daniel R. Benson, Hector Torres and Maria Gorecki. In addition, KBT&F again interviewed the Confidential Witness and expressly informed him of Wilson's assertion that neither TWR nor Time attended any meeting such as the one described in the Complaint. In response, the Confidential Witness not only confirmed that the meeting had occurred but also provided additional details concerning the identity of at least certain of the participants at the meeting, which included Michael Cvrlje ("Cvrlje") of TWR, David Parry ("Parry") of News Group, Dennis Porti ("Porti") of Curtis, and John Rafferty ("Rafferty") of DSI. These new details were confirmed in a February 9, 2010 e-mail from the Confidential Witness (see Ex. G (2/9/10 Confidential Witness email)), and were analyzed and discussed internally among all the partners working on the Action. KBT&F concluded that the Confidential Witness's account was credible and constituted clear evidentiary support for the allegations concerning the Hudson meeting. (Gorecki Decl. ¶ 12.)

On February 9, 2010, KBT&F partner Hector Torres telephoned Wilson and disclosed the additional information that had been provided by the Confidential Witness concerning the identity of the TWR representative who had attended the Hudson meeting -- Cvrlje. (Gorecki Decl. ¶ 13.) Nearly one month later, on March 8, 2010, Wilson sent KBT&F a second letter, along with an E-Z Pass statement for a vehicle purportedly belonging to Cvrlje for the time period January 3 to February 2, 2009 (the "E-Z Pass Statement"), which Wilson claimed proved that Cvrlje had not attended the Hudson meeting. (Ex. H.)

After reviewing the E-Z Pass Statement and concluding that it in no way constituted proof that Cvrlje had not attended the Hudson meeting (for the reasons set forth *infra*), on March 22, 2010, KBT&F responded to Wilson's March 8, 2010 letter, explaining that the E-Z Pass Statement was insufficient to refute the information regarding Cvrlje's attendance at the meeting and that "there clearly remain[ed] numerous unanswered questions that [could] only be addressed through discovery." (Gorecki Decl. ¶ 15; Ex. I.) Wilson failed to address Anderson's explanation in his March 26, 2010 reply letter, and merely persisted in his demonstrably baseless contention that the E-Z Pass Statement constituted "concrete evidence" that Cvrlje did not attend the Hudson meeting. (Ex. J.)

Further, on April 15, 2010, the Confidential Witness, who was again interviewed and was presented with Wilson's information concerning the E-Z Pass Statement, reaffirmed the substance of the information previously provided concerning the Hudson meeting, including Cvrlje's attendance. As a result, in a letter sent to Wilson the following day, April 16, 2010, KBT&F stated that it had "sought and obtained confirmation" concerning the Hudson meeting allegations. KBT&F directly underscored the analysis set forth in the March 22, 2010 letter, which indisputably demonstrated that the E-Z Pass Statement provided by Wilson in no way

proved that Cvrlje had not attended the meeting. (Ex. K.) Wilson did not respond to that letter nor did he even attempt to provide any other purported "evidence" concerning Cvrlje and the Hudson meeting. (Gorecki Decl. ¶ 17.)[5]

2.     **Hudson's Challenge to Certain Allegations in the Complaint**

In April 2010, Hudson's counsel, Jarrett Arp ("Arp"), telephoned KBT&F and contested certain of the allegations in the Complaint. (Gorecki Decl. ¶ 18.) Arp claimed, among other things, that Hudson did not host or attend the Hudson meeting, poach Anderson's employees, purchase Anderson's assets at fire-sale prices, or enter into agreements to serve Anderson's former retailer-customers. (*Id.*) On May 3, 2010, KBT&F partner Maria Gorecki spoke with Arp, and explained that Anderson was "confident" that the Hudson meeting had taken place as alleged in the Complaint. (*Id.*) Arp responded by stating, in substance, that Anderson's confidence caused him "some concern" about the information he was receiving from his client. (*Id.*) After evaluating each of Hudson's contentions, Anderson wrote to the Court on June 9, 2010, advising that, although it was withdrawing its allegation that Hudson entered into agreements to serve Anderson's former customers,[6] it continued to maintain the other allegations challenged by Hudson, including that Hudson hosted a meeting on January 29, 2009. (Ex. L.)

B.     **Proposed Amended Complaint**

Paragraph 63 of the PAC, which was served on Defendants on August 16, 2010, related to the Hudson meeting and included the new details that had been uncovered from Anderson's continuing factual investigation, including the specific identity of a number of participants at that meeting:

---

[5]     At that point in time, the Confidential Witness declined to disclose the identity of his sources because of a fear of retaliation and concern that it might jeopardize his business in the industry. (Gorecki Decl. ¶ 16.)

[6]     As stated in Anderson's June 9, 2010 letter, that allegation applies only to News Group, a non-party co-conspirator. (*See* Ex. L (6/9/10 KBT&F letter).)

Hudson was at the heart of the conspiratorial meetings. After business hours on January 29, 2009, key employees of certain defendants -- ostensible competitors -- including Dennis Porti of Curtis and Michael Cvrlje of TWR, met at Hudson's offices in North Bergen, New Jersey. David Parry of News Group -- a competitor of Hudson -- and John Rafferty of DSI, also were present at that January 29 meeting at Hudson's offices. At this and other meetings among the defendants, they discussed and planned their collusive activity, including their market allocation agreement with respect to the Anderson and Source business and customers.

(Ex. B (PAC) ¶ 63.)[7]

## 1.    DSI's Purported Evidence Concerning the Hudson Meeting

On September 7, 2010, approximately 18 months after the original Complaint was filed,

Defendant DSI's counsel, David G. Keyko ("Keyko"), sent a letter to KBT&F, denying

Rafferty's attendance at the Hudson meeting because he had been discharged from the hospital

---

[7]     The Proposed Amended Complaint also detailed numerous other meetings and communications by and between Defendants both before and after the Hudson meeting -- none of which were challenged by Defendants -- including that:

- on Sunday January 18, Robert Castardi, Curtis's president, met with one of his competitors, Michael Duloc, Kable's president and CEO (*see* Ex. B (PAC) ¶ 56);

- Curtis and Kable, competitors whose publisher clients included AMI, Rodale, Hachette, and Bauer, thereafter refused to enter into any legitimate substantive negotiations with Anderson with respect to the surcharge (*see id.* ¶ 66);

- on January 22, Kable communicated with its competitor TWR (*see id.* ¶ 57), and on Sunday January 25, Duloc, the president of Kable, and Jacobsen, the president of TWR, scheduled a breakfast meeting for January 29 (*see id.* ¶¶ 56, 62);

- when Anderson attempted to negotiate with Curtis, Castardi said he, on behalf of AMI, Hachette Filipacchi Media, U.S. ("Hachette"), and Rodale, Inc. ("Rodale"), would do whatever TWR did; when Anderson's CEO met with TWR's CEO Rich Jacobsen on January 31 and reported Castardi's statement, Jacobsen just nodded, smiled, and crossed his arms (*see id.* ¶ 70);

- in late January, Kable's president Duloc contacted the president and CEO of national distributor Comag Marketing Group, LLC ("Comag"), Michael Sullivan, and urged him to have Comag stop shipping to Anderson and/or Source (*see id.* ¶ 59);

- on January 29, Rodale's vice president Richard Alleger sent an e-mail to Michael Porche, DSI's president and CEO, stating that Comag "'will continue to SHIP!'" to "'BOTH Anco [i.e., Anderson] and Source,'" and that "'Sullivan . . . is dangerous'" (*see id.* ¶ 60);

- DSI's Porche forwarded Rodale's concerned e-mail to the president of AMI (David Pecker), a Rodale competitor (*see id.* ¶¶ 51, 60); and

- on January 31, Rodale complained to its competitor Bauer Publishing Co., LP ("Bauer") about Comag's agreement to continue supplying Source, and Bauer responded that it "'[d]oesn't matter[; S]ource won't be around much longer'" (*id.* ¶ 61).

on January 28, 2009, after undergoing heart surgery on January 22, was on medical leave and did

not return to work until March 2, 2009.  Keyko also claimed that Rafferty's medical records

confirmed that Rafferty was "in no condition to attend any business meeting on January 29[.]"

(Ex. M (9/7/10 D. Keyko letter).)  Keyko's information concerning Rafferty was promptly

discussed with the Confidential Witness.  On September 9, 2010, the Confidential Witness

stated, not only that he was fully aware that Rafferty had been in the hospital, but that he recalled

seeing him conducting business while on crutches.  (Gorecki Decl. ¶ 20.)

On September 20, 2010, Keyko sent a second letter, which included an affidavit from

Rafferty.  In this affidavit, Rafferty stated that he had open heart surgery on January 22, 2009

and supposedly "was in no condition" to attend to work or to attend the "alleged business

meeting in New Jersey on January 29, 2009."  Based solely on the affidavit of Rafferty -- an

obviously interested party employee -- Keyko demanded that Anderson withdraw the allegations

concerning AMI and the Hudson meeting.  (Ex. N.)  The Rafferty affidavit, however, did not

prove that Rafferty could not have been present at the Hudson meeting.  To the contrary, the

affidavit states that Rafferty was "released from the hospital and returned to [his] home" on

January 28, 2009 -- *i.e.*, the day *before* the Hudson meeting -- and thus could have attended the

meeting.  (*Id.*)

Nonetheless, as a result of the assertions in DSI's September 20, 2010 letter, KBT&F

again contacted the Confidential Witness and informed him of the substance of the letter and

Rafferty's denial.  In response, the Confidential Witness not only reaffirmed all of the

information he previously had provided regarding the Hudson meeting, but also provided

additional information corroborating the Hudson meeting and contradicting the denials of Cvrlje

and Rafferty.  (Gorecki Decl. ¶ 22.)  He further disclosed that he had contacted two of his

sources of information:  one who attended the Hudson meeting, and one who had not attended

but had confirmed occurrence of the meeting and the identity of certain of the participants at the

meeting.

Further, the Confidential Witness reported that he actually met with the source who had

attended the meeting and directly asked him how he was going to "skate around" the fact that he

had attended the Hudson meeting.  The source responded that his lawyers had advised him that

he was allowed to meet with Hudson and others to discuss "Hudson Retail and the airports."

When the Confidential Witness replied, "So that's how you are going to spin this," the source

just shrugged his shoulders.  The Confidential Witness viewed this exchange as a tacit

concession that the source and the others who had attended the meeting would use this excuse as

a pretext for their unlawful meeting.  The Confidential Witness also stated, for the first time, that

the Hudson meeting occurred either on January 29, 2009 or within a few days of that date.[8]  The

Confidential Witness then unequivocally stated that "there is no doubt in my mind" that the

Hudson meeting occurred and that Rafferty, Cvrlje, Parry and Porti were in attendance.  (Gorecki

Decl. ¶ 23.)

Accordingly, in a September 22, 2010 letter, KBT&F informed Keyko that KBT&F had

confirmed its information that Rafferty had attended the Hudson meeting.  Nonetheless, KBT&F

stated that it would reconsider the allegations as to Rafferty and DSI if two affidavits were

provided:  (1) one from Rafferty declaring he did not attend a meeting at Hudson's offices with

one or more of News Group, Curtis, and TWR during the period January 12 through February 7,

2009 (the "Relevant Period"), and (2) a second "from the person at DSI most knowledgeable

---

[8]        As a result of this information, KBT&F partner Torres advised the Court, in a October 4, 2010 letter, that if
the Court granted Anderson's then-pending application to serve the Proposed Amended Complaint, Anderson would
revise Paragraph 63 to allege that the Hudson meeting took place on "or about" January 29, 2009.  (Ex. Q (10/4/10
H. Torres letter).)  That change was made in the Amended Complaint.  (*See* Ex. C (Am. Compl.) ¶ 63.)

about DSI's communications with the defendants stating, on behalf of DSI, that no representative of DSI attended such a meeting at Hudson's offices during the Relevant Period." No such affidavits were provided. (Ex. O (9/22/10 KBT&F letter).)

Instead, Keyko sent a September 30, 2010 letter that failed to address the requests in the September 22, 2010 letter. First, no affidavit was provided by Rafferty stating that he did not attend the Hudson meeting during the Relevant Period. Second, while Keyko provided an affidavit from another interested party employee, Michael Porche of DSI (the "Porche affidavit"), purporting to "establish[] that no representative of DSI attended the [Hudson meeting] on or about January 29, 2009," the Porche affidavit similarly failed to state definitively that no representative of DSI attended the Hudson meeting during the Relevant Period. (Ex. P (9/30/10 D. Keyko letter).)

The affidavits provided by Keyko, at best, raise genuine factual issues as to the credibility of DSI's two self-interested party witnesses, versus that of a disinterested, non-party witness. Anderson certainly had no reason to -- and was under no obligation to -- accede to Keyko's demand that the factual allegations concerning Rafferty and DSI and the Hudson meeting be withdrawn. Indeed, in light of the highly reliable source providing the information, KBT&F was duty bound to its client to reject Keyko's demand and to proceed with discovery concerning, among other things, the Hudson meeting.

## C.   **Defendants' Frivolous Rule 11 Motion**

On October 4, 2012, Defendants served on Anderson a copy of a Notice of Motion, along with a letter threatening to file the motion if the Hudson meeting allegations were not withdrawn before the expiration of the 21-day safe-harbor period. (Ex. R (10/4/12 R. Wilson letter).) In response, Anderson made clear to Defendants, in an October 24, 2012 letter from counsel, that

any Rule 11 motion -- before any discovery has been taken -- "would be frivolous and . . .

[would] itself be violative of Rule 11." (Ex. S (10/24/12 KBT&F letter).)  In that letter,

Anderson also expressly assured Defendants that the Hudson meeting allegations were "based on

a level of inquiry that more than satisfie[d] Rule 11" and that evidentiary support existed for

those allegations. (*Id.*)  Moreover, Anderson disclosed to Defendants that its evidentiary support

included, among other things, information that had been provided by a highly credible,

Confidential Witness. (*Id.*)  In an October 25, 2012 letter, Wilson requested that Anderson

disclose the identity of that Confidential Witness. (Ex. T (10/25/12 R. Wilson letter).)  Anderson

responded that it would disclose the identity of the Confidential Witness during the normal

course of discovery, assuming Defendants satisfied the requisite standards. (Ex. U (10/26/12

KBT&F letter).)

Ignoring the express assurance that Anderson had conducted a more than reasonable

investigation concerning the Hudson meeting allegations, and that evidentiary support existed for

those allegations, including from a Confidential Witness, and in direct contravention of the case

law in this Circuit, Defendants nonetheless filed their patently meritless Rule 11 motion on

November 5, 2012.  In purported support of the motion, Defendants also filed several new

affidavits and declarations.[9]

---

[9]       Specifically, Defendants included:

- The affidavit of Ronald Clark, sworn to on October 26, 2012 (the "Clark Aff."), in which Clark states that "[t]o [his] knowledge," the Hudson meeting did not occur. (Clark Aff. ¶ 4.)  In his affidavit, Clark refers to (i) his "paper and electronic calendars for the time period of January 12, 2009 through February 7, 2009" (*id.* ¶ 9); (ii) his travel records (*id.* ¶ 9(b)); and (iii) "visitor logs from Hudson's North Bergen, New Jersey office for the time period of January 12, 2009 through February 7, 2009" (*id.* ¶ 10).  He fails to attach a single one of these documents to his affidavit.

- The affidavit of James Cohen, sworn to on September 14, 2012 (the "Cohen Aff."), in which Cohen states only that "[t]o [his] knowledge," the Hudson meeting did not occur. (Cohen Aff. ¶ 4.)

- The affidavit of Michael Cvrlje, signed on October 28, 2012 and notarized on October 31, 2012 (the "Cvrlje Aff."), in which Cvrlje, relying solely on his E-Z Pass Statement, states that he did not attend the Hudson meeting. (Cvrlje Aff. ¶¶ 3-8.)

Upon receiving Defendants' motion, on November 6, 2012, KBT&F again met with the Confidential Witness, who once again confirmed that the Hudson meeting had taken place, and subsequently executed an affidavit to that effect.  (Torres Decl. ¶ 7.)

## ARGUMENT

### I.  Legal Standard

Rule 11 of the Federal Rules of Civil Procedure requires an attorney to undertake "an inquiry reasonable under the circumstances" to confirm that "the factual contentions [underlying a complaint] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  Whether an inquiry is reasonable rests on "what was reasonable to believe at the time the pleading, motion, or other paper was submitted."  Fed. R. Civ. P. 11, Advisory Committee Notes (1983).  "'What constitutes a reasonable pre-filing investigation depends on the circumstances of each case.'"  *Parker v. Connecticut*, No. 3:03CV1942 (RNC), 2006 U.S. Dist. LEXIS 14912, at *5 (D. Conn. Mar. 31, 2006) (quoting *Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 225 (7th Cir. 1990)).  "A court called upon to judge the reasonableness of an attorney's factual inquiry should consider how much time the attorney had for investigation; the feasibility of verifying facts; the complexity of factual issues; and the need for additional discovery to develop the factual claim."  *Gottlieb v. Heller*, No. 93 Civ. 3081 (LAP), 1994 U.S. Dist. LEXIS 14453, at *9 (S.D.N.Y. Oct. 7, 1994).

It is well-settled that courts should not impose Rule 11 sanctions that may discourage counsel's obligation to advocate zealously on behalf of its client.  *See Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) ("Rule 11 sanctions are a coercive mechanism, available to trial court

---

- The declaration of Dennis E. Porti, sworn to on September 26, 2012 (the "Porti Aff.") in which Porti evasively states that he did not attend the Hudson meeting "or any other meeting of the type alleged in Paragraph 63 of the Amended Complaint."  (Porti Aff. ¶ 4.)

judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy.") (citation omitted); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 389 (S.D.N.Y. 1997) (observing that courts "must be careful not to impose sanctions that chill an attorney's creative, imaginative or enthusiastic advocacy on his client's behalf") (internal quotation marks and citation omitted).

Thus, sanctions are inappropriate unless "it is patently clear that a claim has absolutely no chance of success," *Parker*, 2006 U.S. Dist. LEXIS 14912, at *7, or where factual allegations are "utterly lacking in support," *Kiobel*, 592 F.3d at 81 (citing *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003)); *accord Gianoukas v. Campitiello*, No. 09 Civ. 1266 (PAC), 2009 U.S. Dist. LEXIS 95354, at *24-25 (S.D.N.Y. Oct. 13, 2009) (same). "[T]he imposition of sanctions is a serious matter in which a court must resolve all doubts in favor of the signer of the pleading." *Bletas v. Deluca*, No. 11 Civ. 1777 (NRB), 2011 U.S. Dist. LEXIS 133132, at *36 (S.D.N.Y. Nov. 14, 2011) (citations and internal quotations omitted). "Because Rule 11 sanctions represent a drastic, extraordinary remedy, courts seldom issue them and then only as a '(very) last resort.'" *Connolly v. TJX Cos.*, No. 07-CV-3282 (JS) (WDW), 2010 U.S. Dist. LEXIS 137404, at *36 (E.D.N.Y. Dec. 30, 2010) (citation omitted).

## II.   Anderson Undertook a Reasonable Investigation and Has an Evidentiary Basis for the Hudson Meeting Allegation

Defendants cannot come even remotely close to satisfying the requisite standard. Anderson indisputably undertook a reasonable, pre-filing inquiry before making the Hudson meeting allegation, which unquestionably has substantial evidentiary support. The allegation, which is made in the context of a series of inter-competitor meetings and communications, is primarily based on detailed information provided by a highly credible and competent Confidential Witness. (Torres Decl. ¶ 5; Gorecki Decl. ¶ 11.) KBT&F interviewed the

Confidential Witness on at least six completely separate occasions over a two-year period. (Gorecki Decl. ¶¶ 11, 12, 16, 20, 22, 29.)  During each interview, the Confidential Witness was "consistent and credible in his account" of the Hudson meeting.  (*Id.*)  *See Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 481 (S.D.N.Y. 2003) (finding that plaintiff's counsel undertook reasonable pre-filing inquiry where, "[b]efore proposing the Third Amended Complaint, plaintiff's counsel conducted numerous interviews with their client and found him to be consistent and credible in his account").  After Defendants filed this motion, Anderson obtained an affidavit, in which the Confidential Witness affirmed under penalty of perjury the substance of his prior conversations with KBT&F.  (Torres Decl. ¶ 7.)

It is well-established that attorneys are generally "entitled to rely on the objectively reasonable representations of their clients" and confidential witnesses.  *See Goldenberg v. St. Barnabas Hosp.*, No. 01 Civ. 7435 (GBD), 2005 U.S. Dist. LEXIS 2730, at *20 (S.D.N.Y. Feb. 22, 2005); *G-I Holdings, Inc. v. Baron & Budd*, No. 01 Civ. 0216 (RWS), 2002 U.S. Dist. LEXIS 15443, at *43 (S.D.N.Y. Aug. 16, 2002) ("Rule 11 sanctions should only adhere if [the party] was 'satisfied that the statements [of a confidential witness] and other evidence were not competent or are otherwise untrustworthy.'") (quoting *In re Air Disaster at Lockerbie, Scotland*, 144 F.R.D. 613, 617 (E.D.N.Y. 1992)).  In *G-I Holdings*, for example, Judge Sweet found that the plaintiff undertook a sufficient pre-filing inquiry when it based its pleadings on the statements of a witness whose identity was withheld "[i]n an effort to safeguard the confidentiality of [plaintiff's] investigations."  *G-I Holdings*, 2002 U.S. Dist. LEXIS 15443, at *4.[10]  Moreover, an attorney is "entitled to rely on the representations of their client, without

---

[10]      Cases addressing the use of confidential witnesses in the context of claims brought pursuant to the Private Securities Litigation Reform Act ("PSLRA") are instructive on this point.  Under the PSLRA, a court is required to *sua sponte* make findings on the record with regard to a party's compliance with Rule 11 upon the final adjudication of a private securities action.  *See Rombach v. Chang*, 355 F.3d 164, 178 (2d Cir. 2004) (citing 15 U.S.C. § 78u-

having to assess his credibility," as "'credibility is solely within the province of the finder of fact.'" *Jeffreys*, 275 F. Supp. 2d at 481 (citation omitted).

Further, the meritless contention that no "reasonable inquiry" was undertaken by Anderson (Def. Mem. 12) ignores the obvious fact that the witnesses and documents concerning the Hudson meeting are exclusively under Defendants' control. As even Defendants' cases make clear, the reasonableness of a pre-filing inquiry depends on, among other things, "the feasibility of verifying facts . . . and the need for additional discovery to develop the factual claim." *Gottlieb*, 1994 U.S. Dist. LEXIS 14453, at *9 (Def. Mem. 8).[11]  Indeed, "where the action involves antitrust claims, caution in the imposition of Rule 11 sanctions is especially appropriate

---

4(c)). In such cases, even under the heightened pleading standard of the PSLRA, where reliance on a confidential witness fails to support a complaint, it does not necessarily follow that such reliance warrants Rule 11 sanctions. *See e.g.*, *In re Wachovia Equity Secs. Litig.*, 753 F. Supp. 2d 326, 382 n.51 (S.D.N.Y. 2011) (finding that plaintiffs complied with Rule 11 where allegations were based on undated and vague information from confidential sources); *Bd. of Trs. of Ft. Lauderdale Gen. Empls. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 883 n.17 (S.D.N.Y. 2011) (finding that plaintiffs complied with Rule 11 where confidential witness was not sufficiently described under applicable rules); *Vladimir v. Bioenvision*, 606 F. Supp. 2d 473, 497 (S.D.N.Y. 2009) (finding that plaintiff complied with Rule 11 where allegation was based on second-hand anonymous source). *A fortiori*, here, where the Confidential Witness is credible and provides information based on a first-hand source in an action not subject to the heightened pleading standard of the PSLRA, it is beyond dispute that the Rule 11 motion is patently without merit.

[11]     Defendants' cases are wholly inapposite. In those cases where sanctions were awarded, the plaintiffs exercised a total lack of diligence and failed to conduct anything resembling a reasonable inquiry. *See In re Australia & New Zealand Banking Grp. Ltd. Secs. Litig.*, 712 F. Supp. 2d 255, 264 (S.D.N.Y. 2010) (plaintiffs' "lack of diligence or further inquiry [amounted to] an act of gross negligence bordering on recklessness."); *Nyitray v. Johnson*, 96 Civ. 6150 (MBM), 1998 U.S. Dist. LEXIS 1791, at *22, *39 (S.D.N.Y. Feb. 18, 1998) (finding that party represented by counsel could be sanctioned for factual contentions that were "illogical and far-fetched" and had "absolutely no evidentiary support"); *Gottlieb*, 1994 U.S. Dist. LEXIS 14453, at *10 (plaintiff failed to inspect books and records to which he was entitled, that would have demonstrated that there was no basis for his action); *Etlin v. Yankwitt*, No. CV-85-2607, 1986 WL 15439, at *6-7 (E.D.N.Y. May 16, 1986) (plaintiff's allegations against defendant were based on mere "suspicion, rumor and surmise"); *Bletas*, 2011 U.S. Dist. LEXIS 133132, at *41-42 (allegations had "no factual basis whatsoever" and rested on "gross speculation" of judicial and arbitral bribery); *Calloway v. Marvel Entm't Grp., Div. of Cadence Indus. Corp.*, 854 F.2d 1452, 1470-72 (2d Cir. 1988) (attorney relied on testimony from possibly mentally ill client that was "inconsistent and sometimes unintelligible"), *rev'd on other grounds sub nom., Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989).

         Moreover, defendants' other cases are inapposite, as they either involved sanctions based on violations of Fed. R. Civ. P. 11(b)(2), *see Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 659-61 (S.D.N.Y. 1996); *Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259, 264-66 (2d Cir. 1994), or focused primarily on the issues surrounding the lack of a safe-harbor period for court-initiated sanctions, *see In re Pennie & Edmonds LLP*, 323 F.3d 86, 93 (2d Cir. 2003) (vacating court-initiated sanctions because party had no safe-harbor period to withdraw allegations); *ATSI Commc'ns, Inc. v. Shar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009) (refusing to vacate court-initiated sanctions where attorney's allegations of scienter were based simply on defendant's status as market-maker, because attorney was on notice of possibility of sanctions due to language of PSLRA).

given the importance of discovery in antitrust cases where evidence is largely within the knowledge and control of adverse parties." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 725 F. Supp. 669, 681 (N.D.N.Y 1989) (citing *Mohammed v. Union Carbide Corp.*, 606 F. Supp. 252, 262 (E.D. Mich. 1985) ("[T]he difficulty of investigating the conspiracy and monopolization claims prior to the initiation of the lawsuit lessens the extent of investigative efforts that an attorney must undertake to satisfy the 'reasonable inquiry' standard.")); *see also G-I Holdings*, 2002 U.S. Dist. LEXIS 15443, at *45-46 ("[T]he issue of whether [plaintiffs] adequately investigated does not turn on whether a particular stone left unturned would have disproved their theory unless they intentionally avoided finding unfavorable information.").

Here, Defendants make no attempt to -- and cannot -- identify what else Anderson could have done to verify the truth of the Hudson meeting allegation, other than inquire carefully into the credibility of the Confidential Witness -- which Anderson has done -- and take discovery -- which Anderson is doing.  Indeed, despite three-and-a-half years of unfettered access to the very documents and witnesses that could prove (or, according to Defendants, disprove) the truth of this allegation, the only purported evidence proffered by Defendants for their contention that the Hudson meeting did *not* occur is an inconclusive and discredited E-Z Pass Statement and a collection of self-serving affidavits.  Because this is the only so-called "evidence" Defendants were able to proffer during this time period to *oppose* the Hudson meeting allegation, their contention that Anderson could have done more to *support* that allegation is entirely without merit.  Anderson's investigation was clearly more than reasonable.[12]

---

[12]     Defendants' contention that the allegation in Paragraph 63 is "central" to all of Anderson's claims ignores the fact that, as held by the Second Circuit, that allegation was only one of a number of allegations of "meetings and communications [in which] the defendants planned a concerted boycott of Anderson, or Source, or both." *See Anderson News*, 680 F.3d at 187.  Thus, even absent that allegation, there is no question that, as the Second Circuit

### III.    Defendants' Purported "Evidence" Is Woefully Deficient

####    1.    The E-Z Pass Statement Is Ambiguous, and the Self-Serving Porche and Rafferty Affidavits Simply Raise Disputed Issues of Fact

Defendants' purported "evidence" concerning the Hudson meeting is deficient, lacks any probative value, and is directly contradicted by information provided by a Confidential Witness.

***Michael Cvrlje's E-Z Pass Statement.*** TWR's Cvrlje's E-Z Pass Statement has no probative value. As Anderson's counsel explained to TWR's counsel, his contention based on that statement failed to take into account the numerous alternative and entirely plausible scenarios eliminating entirely the purported probative value of the statement. For example, Cvrlje, motivated to avoid creating a record of his attendance at a covert and unlawful meeting, could have used another vehicle, could have paid for tolls in cash, or could have used non-toll roads to travel to the meeting. None of that travel, all of which would be consistent with his having attended the meeting, would have been reflected on the E-Z Pass Statement. (Ex. I (Mar. 22, 2010 Letter).)

***John Rafferty Affidavit.*** Although in his Affidavit, Rafferty states that he had open heart surgery on January 22, 2009, was released from the hospital on January 28, 2009, and did not attend the Hudson meeting on January 29, 2009 (Rafferty Aff. ¶¶ 4-7), Rafferty did not address the possibility of a meeting that occurred "on or about" January 29, 2009. (Gorecki Decl. ¶ 24; Ex. O (Sep. 22, 2010 Letter).) Moreover, even if Rafferty was in fact restricted in his travel after his surgery -- a fact that Anderson has not had an opportunity to verify through document discovery or deposition -- Rafferty could have participated in the Hudson meeting by phone.

---

held, the Amended Complaint plausibly alleges Defendants' "agreement to attempt to eliminate Anderson and Source as wholesalers in the single-copy magazine market and to divide that market between News Group and Hudson." *Id.*

***Michael Porche Affidavit.*** In his affidavit, Porche denies attending the Hudson meeting and states that he has "asked" every DSI employee "who likely might have attended such a[n] alleged meeting," and they denied attending the meeting. (Porche Aff. ¶¶ 3-4.) Porche's denial -- and the denials of an unspecified number of unidentified employees -- are unsurprising, because any DSI employee who admits attending a conspiratorial meeting essentially would be admitting to criminal conduct, which should result in immediate discharge. At most, the Porche Affidavit raises a factual dispute regarding the credibility of Porche and his employees (who may be motivated to be less than entirely candid) and a disinterested Confidential Witness -- a dispute that cannot be resolved before any discovery.

### 2.   Defendants' New "Evidence" Is Irrelevant

The four affidavits accompanying Defendants' motion are entirely irrelevant on this motion as a matter of law. The affidavits were not provided to Anderson at any point before filing of the motion (or the expiration of the safe-harbor period), and thus could not possibly have any bearing on Anderson's pre-filing inquiry, which is judged based on the information available when the Amended Complaint -- not the Rule 11 motion -- was filed. *See NYSE v. Gahary*, No. 00 Civ. 5764 (RLC), 2003 U.S. Dist. LEXIS 165, at *5-7 (S.D.N.Y. Jan. 7, 2003) (question on Rule 11 analysis is "whether the attorney's conduct was objectively reasonable *at the time he or she signed* the motion, pleading, or other paper").

In any event, the affidavits provide no support for Defendants' motion. None of these affidavits attaches any documentary proof, and none offers anything other than the unsupported assertions by individuals who have every reason to conceal the truth and deny their involvement in an illegal conspiracy. Indeed, even where those affidavits refer to documents that purportedly establish the Hudson meeting allegation is false, none of those documents is attached. (*See* Clark

Aff. ¶¶ 9-10.) Nor has Anderson had the opportunity to depose any of these witnesses. Further, nothing in these new submissions establishes that Anderson was not entitled to rely on the information provided by the Confidential Witness.

Instead, because Anderson indisputably has undertaken an objectively reasonable inquiry that far exceeds that required under Rule 11, Defendants' motion is frivolous and should be denied.

**IV.** **Defendants' Motion Should Be Denied Because No Discovery Has Taken Place**

Defendants' motion should be denied for the additional reason that the motion was filed before Defendants have provided any discovery in this action.

The Second Circuit -- in a case on which Defendants mistakenly rely -- has made clear that "[i]n considering sanctions regarding a factual claim, the initial focus of the district court should be on whether an objectively reasonable evidentiary basis for the claim was demonstrated in pretrial proceedings or at trial." *Calloway*, 854 F.2d at 1470 (Def. Mem. 8), *rev'd on other grounds sub nom., Pavelic*, 493 U.S. 120. "Where such a basis [is] shown, no inquiry into the adequacy of the attorney's pre-filing investigation is necessary." *Id.*; *see also Simpson v. Putnam C'ty. Nat'l Bank*, 112 F. Supp. 2d 284, 290-91 (S.D.N.Y. 2000) (same); *Provident Mut. Life Ins. Co. v. Vergara*, No. 91 Civ. 5657 (KTD)(RLE), 1995 U.S. Dist. LEXIS 18654, at *3-4 (S.D.N.Y. Dec. 15, 1995) (same). It is only where "no reasonable evidentiary basis for a factual claim was disclosed in pretrial proceedings or at trial" that "the district court must then scrutinize the objective reasonableness of the attorney's pre-filing inquiry and the basis for the claim developed by that inquiry." *Calloway*, 854 F.2d at 1470.

The Advisory Committee Notes to the 1983 amendments to Rule 11, and the case law, also make clear that the issue of sanctions in the case of pleadings "normally will be determined at the end of the litigation." *See Jawbone, LLC v. Donohue*, No. 01 Civ. 8066(CSH), 2002 U.S.

Dist. LEXIS 11806, at *19 (S.D.N.Y. June 28, 2002) (refusing to find, "at [an] early stage of the

litigation, without the benefit of discovery and a thorough analysis of the merits of the case, that

plaintiff's factual allegations are completely without support"); *Safe-Strap Co, Inc. v. Koala*

*Corp.*, 270 F. Supp. 2d 407, 412 (S.D.N.Y. 2003) (issue of sanctions should be put off until end

of litigation); *Archie Comic Publ'ns, Inc. v. DeCarlo*, No. 00 Civ. 5686 (LAK), 2000 U.S. Dist.

LEXIS 19295, at *1-2 (S.D.N.Y. Nov. 21, 2000) ("The preference for the determination of

sanctions for allegedly frivolous pleadings at the end of the case makes a good deal of sense";

denying motion for sanctions without prejudice to renewal after determination of case); *Louros v.*

*Kreicas*, No. 03 Civ. 1514 (LAK), 2003 U.S. Dist. LEXIS 18292, at *7 (S.D.N.Y. Oct. 15, 2003)

("Nor, in most circumstances, is there much to be gained by deciding sanctions motions based

upon the alleged insufficiency or baselessness of claims during the continuation of litigation.");

*see also Rombach*, 355 F.3d at 178 (under PSLRA, court is required to *sua sponte* make findings

regarding parties' compliance with Rule 11 upon final adjudication of private securities action)

(citing 15 U.S.C. § 78u-4(c)).

　　　Here, Defendants are seeking a Rule 11 determination before any discovery has been

obtained by Anderson.  Defendants have filed their motion before producing a single document;

without having offered a single witness for deposition; and without having offered a shred of

probative concrete evidence supporting their assertion that the Hudson meeting did not occur.

"Pretrial proceedings" have barely begun -- no documents have been exchanged, and no

depositions have been taken -- and trial is scheduled for 2014.  At a minimum, until discovery

has been completed, the Court simply cannot find that "no reasonable evidentiary basis for a

factual claim was disclosed in pretrial proceedings or at trial" -- the prerequisite for any

examination by this Court of Anderson's pre-filing inquiry.  *See Calloway*, 854 F.2d at 1470; *see*

*also Parker*, 2006 U.S. Dist. LEXIS 14912, at *12 (finding, after discovery, that "[b]ecause the factual allegations of the complaint were not without a reasonable factual basis, a specific analysis of counsel's pre-filing inquiry is therefore not necessary."). For this reason as well, Defendants' motion should be denied.[13]

## V.   Defendants Should Be Sanctioned for Filing a Frivolous Rule 11 Motion

Defendants' Rule 11 motion is clearly frivolous. Before expiration of the safe-harbor provision, Anderson explicitly informed Defendants that it was relying on a Confidential Witness to support its allegations. Nevertheless, in a thinly-veiled attempt to obtain discovery into the identity of Anderson's Confidential Witness, *see* Fed. R. Civ. P. 11 Advisory Committee Notes (1993) (Rule 11 "should not be employed as a discovery device"), to intimidate Anderson into withdrawing the Hudson meeting allegation, *see id.* (Rule 11 should not be used "to intimidate an adversary into withdrawing contentions that are fairly debatable"), and to stifle counsel's zealous advocacy of this case, Defendants have filed this motion.

It is well-established that "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11, Advisory Committee Notes (1993); *see Indus. Tech. Ventures LP v. Pleasant T. Rowland Revocable Trust*, No. 08-CV-6227-CJS-MWP, 2012 U.S. Dist. LEXIS 31022, at *18-21 (W.D.N.Y. Mar. 6, 2012) (imposing sanctions on party for filing baseless Rule 11 motion); *Koar v. United States*, No. 96

---

[13]   Equally frivolous for a number of reasons is Defendants' request for an order striking Paragraph 63. First, the relief sought by Defendants may be obtained only through a Rule 12(f) motion to strike. Second, Defendants have not satisfied -- and cannot satisfy -- the standard governing such relief: a "strong reason" to strike the allegation based on the following three factors: (i) that "no evidence in support of the allegations would be admissible," (ii) that the allegations lack any "bearing on the issues in the case," and (iii) that allowing the allegation to remain would prejudice them. *See Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001). Indeed, Defendants' failure even to attempt to meet this standard simply underscores the frivolous nature of the Rule 11 motion.

Civ. 5166 (KMW), 1997 U.S. Dist. LEXIS 15408, *4 n.2 (S.D.N.Y. Aug. 29, 1997) ("[T]he making of a frivolous Rule 11 motion can itself result in sanctions against the movant.").

Contrary to their contention, Defendants have not provided Anderson with "incontrovertible proof" that the Hudson meeting did not occur.  Instead, they have submitted six self-serving affidavits by the individuals alleged to have conspired, and an inconclusive E-Z Pass Statement for one of their clients.  Defendants' contention that this purported "evidence" constitutes "incontrovertible proof" sufficient to warrant withdrawal of the Hudson meeting allegations -- much less an award of sanctions against Anderson and its counsel -- is wholly without merit, and crosses "the line between zealous advocacy and sanctionable conduct under Federal Rule of Civil Procedure 11." *See Sheet Metal Workers' Nat'l Pension Fund v. Aul Sheet Metal Works Inc.*, No. 10 Civ. 1371 (KBF), 2012 U.S. Dist. LEXIS 2915, at *9 (S.D.N.Y. Jan. 5, 2012).

In short, the motion is factually and legally meritless and evidently was filed for an improper purpose.  See Fed. R. Civ. P. 11(b)(1) (describing "improper purposes" as including "to harass, cause unnecessary delay, or needlessly increase the cost of litigation"); Fed. R. Civ. P. 11 Advisory Committee Notes (1993) (Rule 11 should not be used "to intimidate an adversary into withdrawing contentions that are fairly debatable").  Sanctions against Defendants' counsel are particularly appropriate here, to deter the abusive and inappropriate use of Rule 11 that Defendants have employed in filing their motion.

## CONCLUSION

Based on the foregoing, Defendants' Rule 11 motion should be denied and Anderson should be awarded, as sanctions against Defendants, the cost it has been compelled to incur in opposing the motion, including attorneys' fees and costs.

Dated: New York, New York
       December 3, 2012

                          Respectfully submitted,

                          KASOWITZ, BENSON, TORRES &
                              FRIEDMAN LLP

                          By: _____
                              Marc E. Kasowitz (mkasowitz@kasowitz.com)
                              Daniel R. Benson (dbenson@kasowitz.com)
                              Hector Torres (htorres@kasowitz.com)
                              Dean Pamphilis (dpamphilis@kasowitz.com)
                              Maria Gorecki (mgorecki@kasowitz.com)
                              Seth Davis (sdavis@kasowitz.com)

                          1633 Broadway
                          New York, New York 10019
                          Tel.:   (212) 506-1700

                          *Attorneys for Plaintiff Anderson News, L.L.C.*


                          LYNCH ROWIN LLP

                          By: _____
                              Thomas P. Lynch (tlynch@lynchrowin.com)
                              Jennifer T. Chavez (jchavez@lynchrowin.com)

                          630 Third Avenue
                          New York, New York 10017
                          Tel.:   (212) 682-4001, ext. 211

                          *Attorneys for Plaintiff Lloyd Whitaker, as the*
                          *Assignee under an Assignment for the Benefit of*
                          *Creditors for Anderson Services, L.L.C.*

26