```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 23, 2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ANDERSON NEWS, L.L.C. and LLOYD                                 :
WHITAKER, as Assignee under an Assignment for                   :
the Benefit of Creditors for Anderson Services,                 :
L.L.C.,                                                         :
                                                                :
Plaintiffs,                                                     :
                                                                :     09 Civ. 2227 (PAC)
      -against-                                                 :
                                                                :     OPINION & ORDER
AMERICAN MEDIA, INC., BAUER                                     :
PUBLISHING CO., LP., CURTIS CIRCULATION                         :
COMPANY, DISTRIBUTION SERVICES, INC.,                           :
HACHETTE FILIPACCHI   MEDIA, U.S.,                              :
HUDSON NEWS DISTRIBUTORS, LLC, KABLE                            :
DISTRIBUTION SERVICES, INC., THE NEWS                           :
NEWS GROUP, LP,  RODALE, INC., TIME INC.                        :
and TIME/WARNER RETAIL SALES &                                  :
MARKETING, INC.,                                                :
                                                                :
Defendants.                                                     :
                                                                :
----------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiffs Anderson News, L.L.C. and Lloyd Whitaker (collectively, "Anderson") filed an Amended Complaint on September 7, 2012,  alleging that "After business hours on or about January 29, 2009, key employees of certain defendants – ostensible competitors – including Dennis Porti [("Porti")] of [Curtis Circulation Company ("Curtis")] and Michael Cvrlje [("Cvrlje")] of [Time/Warner Retails Sales & Marketing, Inc. ("TWR")], met at [Hudson News Distributors L.L.C.'s ("Hudson")] office in North Bergen, New Jersey.  David Parry [("Parry")] of [The News Group, LP ("News Group")] – a competitor of Hudson – and John Rafferty [("Rafferty")] of [Distribution Services, Inc. ("DSI")], also were present at that January 29 meeting at Hudson's offices." (Am. Compl. at ¶ 63 ("Paragraph 63").)  Defendants contend that there is no evidentiary support for Anderson's allegation, that it is false, and that, despite repeated requests from Defendants, Plaintiffs have refused to retract it.  Defendants now move to

1

strike Paragraph 63 and to sanction Anderson and its counsel, pursuant to Federal Rule of Civil Procedure 11(b)(3). Anderson responds that the Court should impose Sanctions upon Defendants for bringing a frivolous motion. For the following reasons, both motions are denied.

## BACKGROUND

On March 16, 2009, Anderson, a magazine wholesaler, commenced this action by filing its initial complaint against Defendants – magazine publishers, distributors and wholesalers – alleging that Defendants engaged in anti-competitive conduct in violation of 15 U.S.C. §§ 1 and 15, and asserting various common-law claims. On January 26, 2010, TWR told Anderson that paragraph 55 of its Complaint[1] ("Paragraph 55") was not true, and requested either that it be withdrawn or that Anderson confirm that there was a sufficient basis for the allegation contained therein. TWR also informed Anderson that it would be willing to discuss the allegation further if Anderson provided additional details regarding the alleged meeting. (Wilson Decl. Ex. A.) In a February 2010 phone call with TWR, Anderson identified Cvrlje, senior vice president of sales and logistics at TWR, as a participant at the meeting and stated that it occurred on January 29, 2009. (Wilson Decl. at ¶ 4.) On March 8, 2010, TWR advised Anderson that Cvrlje denied attending the meeting and provided a copy of his E-Z Pass records for the day in question. (Wilson Decl. Ex. B.) Anderson continued to stand by the allegation, noting that the E-Z Pass records did not "conclusively establish that Crvlje was not present at the Bergen meeting" and that Crvlje "could have participated by telephone or video conference." (Wilson Decl. Ex. C.)

In April 2010, Hudson requested that several of Anderson's allegations, including Paragraph 55, be withdrawn. (See Wilson Decl. Ex. D.) Anderson responded that it had "revisited and investigated" the bases of its allegations and, in relevant part, and it continued to

---

[1] Paragraph 55 stated that "throughout the latter part of January and the early days of February, defendants – ostensibly each others' competitors – held numerous meetings during which they discussed dividing the U.S. distribution territory into two regions – one controlled by Hudson and the other controlled by News Group. For example, in furtherance of their conspiracy to cut off supply to Anderson and Source, defendants Curtis and Hudson met with their respective competitors, TWR and News Group, in January 2009 at Hudson's offices in North Bergen, New Jersey."

stand by its assertions in Paragraph 55.  (Id.)

This Court dismissed the Complaint on August 2, 2010.  Anderson News, L.L.C. v. Am. Media, Inc., 732 F. Supp. 2d 389 (S.D.N.Y. 2010).  On August 16, 2010, Anderson moved for reconsideration of the dismissal and filed a proposed amended complaint, which contained an assertion almost identical to Paragraph 63, quoted infra.  DSI wrote to Anderson on September 7, 2010, stating that Rafferty, national marketing director for DSI, could not have attended the meeting on January 29, 2010 because he had undergone heart surgery one week earlier, had only been released from the hospital on January 28, 2010, and did not return to work until March 2, 2009.  (Keyko Decl. Ex. A.)  On September 18, 2010, DSI provided Anderson with Rafferty's affidavit, stating that on January 29, 2009, he "remained at home recovering," was "under doctor's orders not to attend to work and was in no condition to do so," and that he "did not attend an alleged business meeting in New Jersey on January 29, 2009."  (Keyko Decl. Ex. B.)  On September 22, 2010, Anderson agreed to amend its allegation to state that the meeting occurred "on or about January 29, 2009," rather than on January 29, 2009 and that it would "reconsider" DSI's request if DSI submitted additional affidavits with fuller details.  (Keyko Decl. Ex. C.)  In response, DSI provided Anderson a September 30, 2010 affidavit from Michael Porsche ("Porsche"), president of DSI, who denied attending the meeting personally and wrote that he asked "every DSI employee who likely might have attended such a [sic] alleged meeting . . . had one occurred," but that each such employee had denied their attendance.  (Keyko Decl. Ex. D.)  Nevertheless, Anderson continued to stand by its allegation.  (See Wilson Decl. Ex. E.)

The Second Circuit reversed this Court's dismissal of the case on April 3, 2012, and found that Anderson's proposed amended complaint was "sufficient to make Anderson's antitrust claim plausible."  Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 189 (2d Cir. 2012).  On September 7, 2012, Anderson  filed its Amended Complaint, containing Paragraph 63.  TWR wrote to Anderson on October 4, 2012, requesting that Anderson withdraw

3

Paragraph 63, or face Rule 11 sanctions.  (Wilson Decl. Ex. G.)  On October 24, 2010, Anderson refused, stating that Paragraph 63 was "based on, among other things, information provided by a credible, confidential witness" (Wilson Decl. Ex. H), which, upon request, it refused to identify.[2] (Wilson Decl. Ex. K.)

On November 5, 2012, Defendants filed the instant motion and accompanying affidavits, seeking to strike Paragraph 63 and to impose sanctions on Anderson.  Specifically, Cvrlje's affidavit stated that during the relevant time period, he did not visit Hudson's office; did not attend, "in person or otherwise," any meetings with any representative of Curtis or DSI; and although he did meet and speak with representatives of Hudson and News Group, he never spoke or met with representatives of Hudson and News Group together.  (Cvrlje Aff. ¶¶ 4-6.)  James Cohen, president of Hudson, and Ronald Clark, chief operating officer of Hudson, stated they were not aware of any meeting on or about January 29, 2009, between the individuals identified in Paragraph 63 at Hudson's office, nor were they aware of any Hudson employees or representatives attending such a meeting.  (Cohen Aff. ¶¶ 4. 6; Clark Aff. ¶¶ 4. 6.)  Finally, Porti, president of Curtis, stated that he did not attend "any . . . meeting of the type alleged in Paragraph 63," nor is he aware of any other Curtis employee or representative attending or participating in such a meeting.  (Porti Aff. ¶¶ 4-7.)  An additional affidavit was submitted to the Court on February 5, 2013, from Parry, president of News Group, stating that he did not attend or participate in a meeting on or about January 29, 2009 at Hudson's offices, nor has he ever attended a meeting at which Porti, Cvrlje, and Rafferty were present.  (Parry Aff. ¶¶ 3-4.)

In January 2013, Anderson disclosed that Paragraph 63 was based upon information provided by James Gillis ("Gillis"), with whom Anderson had repeatedly met and corresponded

---

[2] Anderson has submitted declarations stating that it agreed to keep the identity of the witness "confidential for as long as possible" because he feared retaliation for providing the information contained in Paragraph 63.  (Gorecki Supp. Decl. ¶ 3; Torres Supp. Decl. ¶ 3.)  The witness, later revealed to be James Gillis, could not recall whether he had made such a request, but did not deny asking for confidentiality.  (Gillis Dep. 85.)

throughout the time period in which Defendants challenged the veracity of Paragraph 63 (Gorecki Decl. ¶¶ 12, 16, 20, 22-23, 29; Gorecki Decl. Ex. G; Gorecki Supp. Decl. ¶¶ 8-9), and provided Defendants with a copy of an affidavit submitted by Gillis.  (Hr'g Tr. at 7, Jan. 9, 2013; see also Gillis Aff.)  Gillis currently works as a consultant to magazine publishers, wholesalers and retailers, and previously served as the president of Source Interlink Companies, Inc., a subsidiary of which is a magazine wholesaler ("Source Interlink").  (Gillis Aff. ¶¶ 1-2.)  Gillis first learned of the alleged meeting in 2009 from Michael Sullivan ("Sullivan"), who was then the chief executive officer of a magazine distributor, and is currently the president and chief executive officer of Source Interlink.  (Id. at ¶ 6.)  Subsequently, Gillis spoke to Cvrlje, Parry and Porsche, none of whom denied that the meeting had occurred.  (See id. at ¶¶ 7, 9; Gillis Dep. at 59-62.)  Despite numerous requests from Anderson over several years, Gillis declined to identify Sullivan as the source of his information until September 27, 2012, describing his source only as a "well-placed, very knowledgeable, 'high ranking' executive in the . . . magazine industry, with whom he had been good friends for many years."  (Gorecki Supp. Decl. ¶¶ 4-5.)

The Court directed expedited discovery with respect to Paragraph 63, including the deposition of Gillis, which took place on January 29, 2013.  (See Hr'g Tr. at 17-18.)  Following the Gillis deposition, both parties submitted supplemental briefs on the cross-motions for sanctions.  Defendants also submitted an affidavit from Sullivan denying that he told Gillis that the alleged meeting occurred, who attended it, or having any knowledge of its occurrence or who might have attended it. (Sullivan Aff. ¶ 4.)  He did, however, acknowledge "mention[ing] to Mr. Gillis that [he] had heard a rumor that a meeting had taken place in or around the Hudson News offices."  (Id.)

## DISCUSSION

### I.   Motion to Strike Paragraph 63

Motions to strike, which may be made pursuant to Fed. R. Civ. P. 12(f), are "disfavored"

and "granted only if 'there is a strong reason to do so.'"  Roe v. City of N.Y., 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (quoting Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976)).  The movant bears the burden of demonstrating that "'(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant.'"  Id. (quoting Koch v. Dwyer, No. 98 Civ. 5519, 2000 WL 1458803, at *1 (S.D.N.Y. Sept. 29, 2000)).  Defendants have failed to satisfy these requirements and, accordingly, their motion to strike is denied.

**II.     Motions for Sanctions**

a.     Legal Standard

In relevant part, Rule 11 states that "[b]y presenting to the court a pleading . . . an attorney . . . certifies that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  Liability for violating Rule 11 requires "'a showing of objective unreasonableness on the part of the attorney . . . signing the papers.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009) (quoting Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997)).  "A court called upon to judge the reasonableness of an attorney's factual inquiry should consider how much time the attorney had for the investigation, the feasibility of verifying facts; the complexity of the factual issues; and the need for additional discovery to develop the factual claim."  Gottlieb v. Heller, No. 93 Civ. 3081, 1994 WL 557092, at *4 (S.D.N.Y. Oct. 7, 1994).

In assessing reasonableness, courts focus on "what was objectively reasonable to believe at the time the pleading, motion or other paper was submitted," Jeffreys v. Rossi, 275 F. Supp. 2d 463, 480 (S.D.N.Y. 2003), while "tak[ing] care not to allow hindsight to skew [their]

judgment." N.Y. Stock Exch., Inc. v. Gahary, No. 00 Civ. 5764, 2003 U.S. Dist. LEXIS 165, at *5-6 (S.D.N.Y. Jan. 8, 2003). Nevertheless, in connection with amendments to the Federal Rules of Civil Procedure in 1993, the Advisory Committee noted that "a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they filed with . . . the court," and that Rule 11 also "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable."

"'The principal objective of the imposition of Rule 11 sanctions is . . . the deterrence of baseless filings and the curbing of abuses.'" Abdelhamid v. Altria Group, Inc., 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) (quoting Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d 259, 266 (2d Cir. 1994)). Accordingly, "Rule 11 'must be read in light of concerns that it will chill vigorous advocacy;'" and, therefore, all doubts must be resolved in favor of the signer of the pleading. Id. (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990)). "Because Rule 11 sanctions represent a drastic, extraordinary remedy, courts seldom issue them and then only as a (very) last resort. Put another way, a Rule 11 motion may not be granted unless a particular allegation is utterly lacking in support." Connolly v. TJX Cos., No. 07 Civ. 3282, 2010 U.S. Dist. LEXIS 137404, at *36 (E.D.N.Y. Dec. 30, 2010) (internal quotations omitted). "In addition, where the action involves antitrust claims, caution in the imposition of Rule 11 sanctions is especially appropriate given the importance of discovery . . . where evidence is largely within the knowledge and control of adverse parties." Capital Imaging Assocs., 725 F. Supp. at 681 (citing Mohammed v. Union Carbide Corp., 606 F. Supp. 252 (E.D. Mich. 1985)).

b. Defendants' Motion for Sanctions

Prior to filing the Amended Complaint, Anderson had met or spoken with Gillis on at least six occasions, and, on each occasion, he confirmed the allegations of Paragraph 63. (See Gorecki Decl. ¶¶ 11-12, 16, 20, 22-23, 29.) The allegations were also confirmed in

correspondence from Gillis on February 9, 2010.  (Gorecki Decl. Ex. G.)  While Gillis did not personally attend the alleged meeting, he informed Anderson that he had discussed the meeting with two of sources of information, "one who attended the Hudson meeting, and one who had not attended but had confirmed occurrence of the meeting and the identity of certain of the participants of the meeting."  (Gorecki Decl. ¶ 22.)  Though Gillis did not initially identify these sources to Anderson, he has since made clear that he was referring to Sullivan and Parry.  (See Gillis Aff. ¶¶ 6, 9.)  Because "a plaintiff need not plead specific, *admissible* evidence in support of a claim," Anderson is entitled to include "allegations based on hearsay" in its Amended Complaint.  Campanella v. Cnty. of Monroe, 853 F. Supp. 2d 364, 378 (W.D.N.Y. 2012) (emphasis added).

While Defendants assert several problems with the factual basis for Paragraph 63, they largely boil down to the same argument: it was not objectively reasonable for Anderson to rely solely on Gillis in the face of denials provided by the meeting's purported participants.  Other than arguing that Anderson should have shown Gillis the affidavits of the meeting's purported participants and spoken to Sullivan and Parry directly, however, there is no explanation of what a more thorough investigation by Anderson might have entailed.  With respect to the former, Defendants had the opportunity to confront Gillis with the affidavits at his deposition, yet Gillis refused to recant his belief that the meeting had occurred.  (See generally Gillis Dep. 184-91, 201-05.)  Although he acknowledged that the date might not have been "exactly the 29th," that the meeting might have occurred in a different Hudson office, and that "[t]here's an awful lot of guys saying they weren't there," he "had no doubt in [his] mind" that "they were there."  (Id. at 208-10.)  See also Forrest Creek Assocs., Ltd. v. McLean Sav. & Loan Ass'n, 831 F.2d 1238, 1245 (4th Cir. 1987) (Rule 11 "does not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains 'well grounded in fact.'" (quoting Fed. R. Civ. P. 11)).  There is no reason to expect that this would have been any different if Anderson had

presented the affidavits to Gillis prior to the filing of Defendants' motion for sanctions.

Moreover, Anderson was not at liberty to speak to the affiants regarding their denials outside of the discovery process because they are employed by parties adverse to Anderson[3] and represented by counsel. See N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 4.2(a). Accordingly, Anderson had to choose between relying solely on Gillis or withdrawing Paragraph 63 in reliance solely on denials provided by Defendants. In such cases, "[R]ule 11 must not bar the courthouse door to people . . . who need discovery to prove their case." Smith v. Our Lady of the Lake Hosp., Inc., 960 F.2d 439, 446-47 (5th Cir. 1992) (quoting Kraemer v. Grant Cnty., 892 F.2d 686, 689-90 (7th Cir. 1990)). Sanctioning a party for objectively unreasonable factual assertions would therefore be premature prior to the end of discovery, if not the litigation as a whole. See Archie Comic Publ'ns, Inc. v. DeCarlo, No. 00 Civ. 5686, 2000 U.S. Dist. LEXIS 19295, at *2 (S.D.N.Y. Nov. 21, 2000) (discussing "[t]he preference for the determination of sanctions for allegedly frivolous pleadings at the end of the case").

Nor have Defendants cited any cases in which sanctions were imposed under similar circumstances. Rather, all of the cases on which they rely wherein sanctions were imposed addressed plaintiffs who had obvious means of conducting further investigations but failed to do so, had no evidence whatsoever, or had access to evidence that directly undermined their allegations. See, e.g., Hilton Hotels Corp. v. Banov, 899 F.2d 40, 42, 43 (D.C. Cir. 1990); In re Australia & New Zealand Banking Group Ltd. Sec. Litig., 712 F. Supp. 2d 255, 264 (S.D.N.Y.

---

[3] Parry is employed by News Group, which was voluntarily dismissed as a party by Anderson on March 12, 2009. (Dkt. No. 3.) Nevertheless, News Group is still alleged to have been Defendants' co-conspirator in the instant matter and remains adverse to Anderson in In re Anderson News, LLC, No. 09-10695 (Bankr. D. Del.). Similarly, Sullivan is employed by Source Interlink, which is adverse to Anderson in an ongoing arbitration. See Anderson News, LLC v. Source Interlink Cos., Inc., AAA No. 002-GGA-8XT. Although the Rules of Professional Conduct specifically bar lawyers from communicating "about the subject of the representation with a party . . . represented by another lawyer in the matter," N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 4.2(a), Anderson concluded that it "could not and should not" contact Sullivan and Parry, both of whom are employed by parties adverse to Anderson in related cases. (See Supp. Gorecki Decl. ¶¶ 6, 11.) In addition, Anderson feared that contacting them would reveal Gillis's identity as Anderson's then-confidential witness and concluded that Sullivan and Parry could be deposed in due time through the normal discovery process. (Id.) The Court notes that in analyzing these decisions for Rule 11 purposes, the standard is not whether Anderson's conclusions were correct, but rather whether they were "objectively unreasonable[.]" ATSI Commc'ns,, 579 F.3d at 150.

2010); Nyitray v. Johnson, No. 96 Civ. 6150, 1998 U.S. Dist. LEXIS 1791, at *39 (S.D.N.Y. Feb. 18, 1998); Gottlieb v. Heller, No. 93 Civ. 3081, 1994 U.S. Dist. LEXIS 14453, at *10 (S.D.N.Y. Oct. 7, 1994); Nassau-Suffolk Ice Cream, Inc. v. Integrated Resources, Inc., 114 F.R.D. 684, 689-90 (S.D.N.Y. 1987); Etlin v. Yankwitt, No. 85 Civ. 2607, 1986 WL 15439, at *7 (E.D.N.Y. May 16, 1986).

Similarly, Defendants also rely on an inapposite decision by the Seventh Circuit, which remanded a case to the district court to determine whether to impose sanctions. City of Livonia Employees' Retirement Sys. v. Boeing Co., -- F.3d --, 2013 WL 1197791, at *8 (7th Cir. Mar. 26, 2013).  In Boeing, the Seventh Circuit declined to impose sanctions itself where the plaintiffs' "only barrier to dismissal of their suit" was a confidential witness to whom Plaintiffs' counsel had never spoken. Id.  Rather, counsel relied on an investigator who had spoken to the confidential source, but acknowledged that she could not verify what the source had told her and had "qualms" based on inconsistencies between the source's information and what she otherwise believed to be true. Id. "No one had bothered to show the complaint to" the confidential source, and, at his deposition, he "denied virtually everything that the investigator had reported." Id. at *5-6.  Finally, the Seventh Circuit also noted that plaintiffs' counsel had already been criticized "for misleading allegations, concerning confidential sources, made to stave off dismissal" in three similar cases. Id. at *8.

Unlike the aforementioned cases, Gillis's allegations here are relatively well-grounded, relying on several different sources and fitting into a broader pattern of alleged conduct by Defendants.  Gillis, a non-party witness, repeatedly confirmed his story during meetings with Anderson and in his deposition.  Though the allegations may well prove to be inaccurate, at this stage of the proceedings they are not "objectively unreasonable[]." ATSI Commc'ns., 579 F.3d at 150.  The Court is also unaware of similar instances of alleged misconduct by counsel for Anderson, nor is Paragraph 63 the only hook on which Anderson hangs its hat.  Accordingly,

10

Defendants' motion is denied.

c.   Anderson's Cross-Motion for Sanctions

While the Court has found that the allegations in Paragraph 63 are not objectively unreasonable, that does not mean that Defendants motion lacked merit. There was a sound basis for Defendants motion, which did not succeed because of the heavy burden such a motion must overcome. Defendants' "motion was not clearly frivolous, filed for an improper purpose, or not well grounded in fact or law," and sanctions are not appropriate. Goldberg v. Blue Ridge Farms, Inc., No. 10 Civ. 1371, 2005 WL 1796116, at *7 (E.D.N.Y. July 26, 2005); see also Sheet Metal Workers' Nat'l Pension Fund v. AUL Sheet Metal Works, Inc., No. 10 Civ. 1371, 2012 WL 32237, at *3 (S.D.N.Y. Jan. 5, 2012). Accordingly, Anderson's cross-motion is denied.

## CONCLUSION

For the foregoing reasons, both Defendants' and Anderson's motions are DENIED. The Clerk of Court is directed to terminate the motion at Docket Number 141.

Dated: New York, New York
       April 22, 2013

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

11