**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANDERSON NEWS, L.L.C. and LLOYD WHITAKER, as the Assignee under an Assignment for the Benefit of Creditors for Anderson Services, L.L.C., | |
| Plaintiffs, | |
| - against - | |
| AMERICAN MEDIA, INC., BAUER PUBLISHING CO., L.P., CURTIS CIRCULATION COMPANY, DISTRIBUTION SERVICES, INC., HACHETTE FILIPACCHI MEDIA U.S., INC., HEARST COMMUNICATIONS, INC., HUDSON NEWS DISTRIBUTORS LLC, KABLE DISTRIBUTION SERVICES, INC., RODALE, INC., TIME INC., and TIME/WARNER RETAIL SALES & MARKETING, INC., | No. 09 Civ. 2227 (PAC) |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND THE JULY 17, 2013 AMENDED STIPULATION AND
CONFIDENTIALITY ORDER**

## Table of Authorities

**Page(s)**

**Cases**

*Grand River Enters. Six Nations, Ltd. v. King*,
    No. 02 Civ. 5068, 2009 WL 222160 (S.D.N.Y. Jan. 30, 2009)................................................7

*Koch v. Greenberg*,
    No. 07 Civ. 9600, 2012 WL 1449186 (S.D.N.Y. Apr. 13, 2012)..........................................6, 7

*Swatch Watch S.A. v. Aste Trading Corp.*,
    85 Civ. 7726, 1986 WL 734 (S.D.N.Y. Jan. 3, 1986)...............................................................6

Pursuant to this Court's order of September 12, 2013, Defendants Time Inc. ("Time"), Time/Warner Retail Sales & Marketing, Inc. ("TWR"), American Media, Inc., Bauer Publishing Company, LP, Curtis Circulation Company, Distribution Services, Inc., Hachette Filipacchi Media U.S., Inc. ("Hachette"), Hearst Communications, Inc. ("Hearst"), Hudson News Distributors LLC, Kable Distribution Services, Inc. and Rodale, Inc. (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs Anderson News, L.L.C. and Lloyd Whitaker, as the Assignee under an Assignment for the Benefit of Creditors for Anderson Services, L.L.C.'s (collectively, "Anderson") motion to amend the July 17, 2013 Amended Stipulation and Confidentiality Order (the "Protective Order") (Ex. A).[1]

## Argument

The parties agreed to the Protective Order, and then to certain amendments to the Protective Order so that Hearst, following its acquisition of defendant Hachette, could use its in-house litigation counsel to represent it in this litigation.  With the exception of Hearst, no defendant has had in-house counsel attend the deposition of any witness but its own.  The in-house counsel allowed to view Highly Confidential information under the Protective Order are not "corporate representatives":  the Order requires that they must: (i) be lawyers who enter an appearance in this litigation and who, as officers of the court and members of the bar, are bound to ethical standards; (ii) be litigation counsel who do not provide general business advice regarding matters contained in the Highly Confidential documents produced in this litigation; and (iii) have established ethical walls that prevent them from communicating Highly Confidential information to businesspersons such as Mr. Maier or, indeed, even to other lawyers at their companies, unless those lawyers are also allowed to view Highly Confidential information.  Those restrictions are

---

[1]  All referenced exhibits are attached to the accompanying Declaration of Andrew Bosse in Support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Amend the July 17, 2013 Amended Stipulation and Confidentiality Order.

necessary not merely to protect the parties' Highly Confidential information from being misused, deliberately or accidentally, but also to prevent the misuse of Highly Confidential information of the third parties who have designated materials as Highly Confidential in reliance on the Protective Order, who do not attend depositions in this case, and who have no ability to invoke the procedures proposed by Anderson.

Under the Protective Order, Mr. Maier is free to view non-confidential information and information designated "Confidential".[2]  The only material to which he (and any other businessperson from any party) does not have access is that designated Highly Confidential under the Protective Order by a non-Anderson party or a third party.  Anderson and Defendants agreed, when negotiating the Protective Order, that depositions would be Highly Confidential for ten days after the release of the transcript.  The reason for that bargained-for provision was obvious when the Protective Order was negotiated:  counsel for all entities and individuals involved in each deposition would need time to review the deposition transcripts for Highly Confidential information so that they could decide which information could and could not be shown to all other parties.  This procedure is both practical and balanced.  It is practical because it takes into account a truism of depositions:  it is difficult and often impossible to predict ahead of time what a witness will say in answer to even seemingly innocuous questions.  The procedure is balanced because it allows all parties to review, within a matter of days, all testimony that has not been designated Highly Confidential.  The Protective Order also includes a procedure for challenging any

---

[2] Defendants' agreement to allow Mr. Maier to attend certain depositions is irrelevant.  *First*, counsel for Time and TWR specifically agreed with counsel for Anderson that allowing Mr. Maier's attendance at Ann Moore's deposition would not be cited as a reason to allow him to attend any other deposition.  *Second*, counsel for Time and TWR allowed Mr. Maier to attend only after obtaining assurances from counsel that counsel had no intention of examining Ms. Moore about a specified subject matter.  *Third*, the fact that certain defendants agreed to allow Mr. Maier to attend certain depositions represents nothing more than a decision by counsel representing the deponent that the particular deponent was not likely to disclose Highly Confidential information in the course of that deposition or that Mr. Maier had already been given leave to see certain Highly Confidential documents likely to be covered in the deposition.  In other words, denying Anderson's motion does not mean that, as to any future deposition, Mr. Maier cannot attend even if the parties (and any affected third party) agree.

confidentiality designations, including designations of deposition transcripts.  Under the terms of the Protective Order, Mr. Maier and any other corporate representative is able to review the non-Highly Confidential portions of any deposition transcript and consult with counsel about them within days after the transcript is released.  The burden on the parties is minimal.[3]

The gist of Anderson's argument has nothing to do with the issue of whether Mr. Maier or other corporate representatives should be allowed to attend depositions.  Anderson's real complaint is that Mr. Maier has not had access to documents that it believes should not have been designated as Highly Confidential and deposition transcripts that have been designated Highly Confidential in their entirety.  That complaint may well be legitimate, but the Protective Order itself provides the solution, which is, first, to ask the producing party to redesignate the information and, if Anderson is dissatisfied with the resolution of that request, to move the Court for relief.  In fact, Anderson has not moved for the redesignation of any of the documents attached to its motion.  Likewise, although Anderson complains that three deposition transcripts (out of the 15 depositions taken by Anderson to date) have been designated Highly Confidential in their entirety, Anderson acknowledges that it is in the process of negotiating a resolution as to those transcripts.  The instant motion is not the proper vehicle to challenge the propriety of confidentiality designations.

Similarly, Anderson argues that four year-old information must be "stale".  Again, that argument goes to the propriety of particular designations, not to the question whether Mr. Maier or other businesspeople should be permitted to attend depositions.  Anderson's document

---

[3]  The suggestion that Anderson is being treated unfairly because Anderson does not have in-house counsel is mistaken.  Several of the defendants do not have litigation-only in-house counsel, and therefore cannot have any employee of the company attend the depositions.  No employee of a party (other than Mr. Maier, by permission in certain cases, and Hearst's in-house counsel) has attended the deposition of any witness, and even Hearst's in-house counsel, who are litigating this case for Hearst without the use of outside counsel, are not able to relay Highly Confidential information to any businessperson (or non-litigation lawyer) at Hearst.  Anderson is in no different situation than the other parties.

requests sought much more recent information, including pricing information and information related to defendants' business dealings with magazine wholesalers and retailers through the end of 2011;[4] many contracts entered into years ago are still in force; and Anderson's counsel has not limited its examinations to information from early 2009, but has asked about current information as well, including questions about 2012 sales statistics and pricing, as well as the brokerage fees paid by one defendant to another.[5]

Moreover, Anderson itself has designated over two hundred documents as Highly Confidential, even though it has not been in business for more than four years, which belies its argument that the passage of time necessarily strips all information of competitive value. Anderson also attempts to argue that Mr. Maier is not really presently involved in the magazine business, but that is simply untrue.  Both Mr. Maier and Charles Anderson, Jr., are executives of Media Solutions LLC, a single-copy magazine wholesaler with the same ultimate parent company—Anderson Media Corporation—as plaintiffs.  Anderson does not deny that Media Solutions is a single-copy magazine wholesaler that has ongoing business relationships with many of the Defendants.  Media Solutions distributes magazines published by Time Inc., Bauer, AMI, Rodale and Hearst, and has contractual business relationships with TWR, Curtis and Kable.  Media Solutions' website announces that it "work[s] every day with all types of publishers" and that it is "the exclusive magazine distributor and marketer for some of the country's largest bookstore chains, wholesale outlets, and convenience stores".[6]

Anderson's remaining argument is that it would be preferable to allow Mr. Maier to attend all depositions, and have him (and other corporate representatives) exit and re-enter each

---

[4] *See* Ex. B, Pls.' Second Request for Production of Documents to Defendant Curtis Circulation Company, at Requests No. 10-12.  *See also id.* at Requests No. 9, 20, 26, 27, 30-32.

[5] *See, e.g.*, Ex. C, Dep. Tr. of Richard Alleger, 37:5-40:4; Ex. D, Dep. Tr. of Dennis Porti, 298:10-11.

[6] Ex. E, http://www.mediasolutionsllc.com/new_publisher (accessed Sept. 30, 2013).

deposition depending on whether one party or another anticipates that a document or question might elicit Highly Confidential information, and that doing so would allow Mr. Maier to assist outside counsel in taking depositions.  Anderson claims that these proposed Protective Order amendments "effectively" eliminate the risk of disclosure; that is incorrect.  Besides being disruptive, Anderson's procedure is very likely to lead to inadvertent disclosures.  The Protective Order defines Highly Confidential information as:

> [A]ny Litigation Material, whether produced by [a party], any other Party or any non-party, the disclosure of which to a Receiving Party or to the public is either restricted by law or would, in the good faith opinion of the designating Party, affect the designating Party's business, commercial or financial interests or be reasonably likely to cause competitive injury to the designating Party."

(Protective Order ¶ 4.)  Determining whether a witness may reveal Highly Confidential information between the time a question is asked and answered—that is, determining whether a witness may disclose information that, in the good faith opinion of counsel, could affect the client's business, commercial or financial interests, or be reasonably likely to cause competitive injury—is not a practical possibility.  Nor is it anything like instructing a witness not to answer questions on the grounds of privilege.  Telling a witness not to reveal conversations with counsel is not comparable to telling a witness ahead of time or contemporaneously to give a warning that he or she is about to reveal information that the client corporation would deem in its good faith judgment to constitute Highly Confidential information.  That is an unfair burden to place on deponents and counsel.  Moreover, in the case of the inadvertent disclosure of privileged information, the information is not likely to have a competitive significance, and its use in litigation would be obvious to the affected party and preventable by the Court.  In the case of commercially sensitive information, the misuse would likely occur in a way that could not be readily detected.

5

In addition, as defendants noted in their pre-motion letter, Anderson has served subpoenas on over 60 third parties. Several of those non-parties, in reliance on the Protective Order, designated documents they produced as Highly Confidential. Under Anderson's proposal, those non-parties would be unable to prevent their Highly Confidential information from being disclosed, and third parties who have not yet produced responsive documents, or who have not yet been subpoenaed, would likely refuse to produce certain documents because they could not be assured that their Highly Confidential information would not leak out to businesspeople of the parties. Anderson did not attempt in its brief even to address the rights of third parties and the chilling effect its proposal would have on the ability of the parties to obtain relevant information from third parties.

The cases Anderson cites do not support its argument for amending the Protective Order. In *Swatch Watch S.A. v. Aste Trading Corp.*, 85 Civ. 7726, 1986 WL 734, at *6 (S.D.N.Y. Jan. 3, 1986), the plaintiff appears to have been unable to view <u>any</u> documents produced by the defendant without a court order. That is not the case here, where all parties have agreed that the only documents corporate representatives may not view are those marked Highly Confidential. Anderson is not claiming otherwise. Mr. Maier concededly should not be able to assist Anderson's counsel by examining information properly designated Highly Confidential, and if the information has, in Anderson's view, been improperly designated, the solution is provided for in paragraph 15(b) of the Protective Order. Having to wait several days before its corporate representative can review all of the other deposition testimony does not prejudice Anderson's ability to prosecute its case.

Anderson's citation of *Koch v. Greenberg* is similarly misplaced. In that case, the court <u>refused</u> to undo the protective order at issue and required the party seeking de-designation of documents marked "Confidential Information" and "Confidential-Attorneys' Eyes Only

Information" to submit those documents to the Court for review—precisely the procedure set out in paragraph 15 of the Protective Order at issue here, which is available to Anderson at any time. *Koch v. Greenberg*, No. 07 Civ. 9600, 2012 WL 1449186, at *1 (S.D.N.Y. Apr. 13, 2012). *Koch*'s statement that 10-year old information could be "stale" is irrelevant. *Id.* at *4. Old information may well be stale, and Anderson—which itself designated documents from 2005 as Highly Confidential—is free to argue that any material designated Highly Confidential in this case should be re-designated. But Anderson does not get to decide for itself what information was or was not properly designated Highly Confidential by Defendants or third parties, or that its corporate representative should be allowed to hear Highly Confidential information because it does not believe the information was properly designated as such. In any event, nothing prevents deponents in this action from being asked about or from disclosing <u>current</u> competitively-sensitive information. Nor is there any rule that competitively sensitive pricing information, for example, automatically becomes "stale" after so many years. *See Grand River Enters. Six Nations, Ltd. v. King*, No. 02 Civ. 5068, 2009 WL 222160, at *3-4 (S.D.N.Y. Jan. 30, 2009) (noting that 10-year old commercial information could be sensitive because business plans identified trends and strategies that could be "extrapolated out to the present day and show how [a party] intends to compete"). The dangers inherent in Anderson's proposed amendment far outweigh any perceived benefits.

## Conclusion

For the reasons stated herein, defendants respectfully request that the Court deny Anderson's motion.

Dated:  September 30, 2013

      New York, New York

Respectfully submitted,

_____
Rowan D. Wilson (rwilson@cravath.com)
Thomas G. Rafferty (trafferty@cravath.com)

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019

*Attorneys for Defendants Time Inc. and Time/Warner Retail Sales & Marketing, Inc.*

_____
David G. Keyko (david.keyko@pillsburylaw.com)
Eric Fishman (eric.fishman@pillsburylaw.com)
Jay Dealy (jay.dealy@pillsburylaw.com)

PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY  10036

*Attorneys for Defendants American Media, Inc. and Distribution Services, Inc.*

_____
Barry J. Brett
(barry.brett@troutmansanders.com)
Daniel N. Anziska
(daniel.anziska@troutmansanders.com)

TROUTMAN SANDERS LLP
405 Lexington Avenue
New York, NY  10174

*Attorneys for Defendant Bauer Publishing Co., LP*

_____
George G. Gordon (george.gordon@dechert.com)
Joseph F. Donley (joseph.donley@dechert.com)
Jennings F. Durand
(jennings.durand@dechert.com)

DECHERT LLP

1095 Avenue of Americas
New York, NY  10036

Circa Centre
2929 Arch Street
Philadelphia, PA  19104

*Attorneys for Defendant Curtis Circulation Company*

8

_Eva M. Saketkoo_ /ACD

Eva M. Saketkoo (esaketkoo@hearst.com)
Jonathan R. Donnellan (jdonnellan@hearst.com)
Kristina E. Findikyan (kfindikyan@hearst.com)

HEARST CORPORATION OFFICE OF
GENERAL COUNSEL
300 West 57th Street, 40th Floor
New York, NY 10019

*Attorneys for Defendant Hearst
Communications, Inc. (as successor in interest
to Defendant Hachette Filipacchi Media U.S.,
Inc.)*

_Michael Bayda_ /AUB

I. Michael Bayda (ibayda@mdmc-law.com)
Jay A. Katz (mkatz@mdmc-law.com)

MCELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
Wall Street Plaza
88 Pine Street, 24th Floor
New York, NY 10005

*Attorneys for Defendant Kable
Distribution Services, Inc.*

_John M. Hadloch_ /ACD

John M. Hadlock
(jhadlock@rosenbergestis.com)
Alexander Lycoyannis
(alycoyannis@rosenbergestis.com)

ROSENBERG & ESTIS, P.C.
733 Third Avenue
New York, NY 10017

*Attorneys for Defendant Rodale, Inc.*

_D. Jarrett Arp_ /DUB

D. Jarrett Arp (jarp@gibsondunn.com)
Cynthia E. Richman (crichman@gibsondunn.com)
Melanie L. Katsur (mkatsur@gibsondunn.com)

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, DC 20036

*Attorneys for Defendant Hudson News
Distributors, LLC*