UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDERSON NEWS, L.L.C. and LLOYD WHITAKER, as the Assignee under an Assignment for the Benefit of Creditors for Anderson Services, L.L.C.,

                Plaintiffs,

- against -

AMERICAN MEDIA, INC., BAUER PUBLISHING CO., L.P., CURTIS CIRCULATION COMPANY, DISTRIBUTION SERVICES, INC., HACHETTE FILIPACCHI MEDIA U.S., INC., HEARST COMMUNICATIONS, INC., HUDSON NEWS DISTRIBUTORS LLC, KABLE DISTRIBUTION SERVICES, INC., RODALE, INC., TIME INC., and TIME/WARNER RETAIL SALES & MARKETING, INC.,

                Defendants.

09-CIV-2227 PAC

**ORAL ARGUMENT REQUESTED**

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT RODALE, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF ANDERSON NEWS, L.L.C.

**ROSENBERG & ESTIS, P.C.**
733 Third Avenue
New York, New York 10017
Tel.: (212) 867-6000
Fax: (212) 551-8484

*Counsel for Defendant Rodale, Inc.*

RE\68145\0001\580026v10

## TABLE OF CONTENTS

**Page**

ANDERSON NEWS, L.L.C. CONTINUES TO IMPROPERLY INCLUDE RODALE AS PART OF "A WALKING CONSPIRACY" WITHOUT EVIDENCE OF ANY PARTICIPATION ON ITS PART ............................................................................................... 1

    A.    In Furtherance of an Improper "Walking Conspiracy" Theory, ANCO Ascribes to Rodale the Actions of Others that Do Not Involve Rodale .................... 1

    B.    The Evidence Cited by ANCO Involving Rodale does not Suggest or Imply that Rodale was an Active Participant in Any Conspiracy ....................................... 3

    C.    ANCO's Agency Liability Theory Against Rodale is Misplaced ............................ 7

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

### Cases

*AD/SAT, a Div. of Skylight, Inc. v Associated Press*,
   181 F3d 216 (2d Cir 1999) .................................................................................... 1, 2, 3, 10

*Am. Soc. of Mech. Eng'rs v Hydrolevel Corp.*,
   456 US 556 (1982) ............................................................................................... 7, 8, 9, 10

*Ehlinger & Assoc. v La. Arch. Assoc., et al*,
   989 F Supp 775 (ED La 1998) ...................................................................................... 10

*H.L. Moore Drug Exch. v Eli Lilly & Co.*,
   662 F2d 935 (2d Cir 1981) .............................................................................................. 4

*Hyland v HomeServices of America, Inc.*,
   771 F3d 310 (6th Cir 2014) ............................................................................................. 6

*Matsushita Elec. Indus. Co. v Zenith Radio Corp.*,
   475 US 574 (1986) ....................................................................................................... 1, 3

*Minpeco, S.A. v Conticommodity Servs. Inc.*,
   673 F Supp 684 (SD NY 1987) ................................................................................ 3, 4, 7

*Monsanto Co. v Spray-Rite Serv. Corp.*,
   465 US 752 (1984) ....................................................................................................... 1, 3

*Phelps Dodge Refining Corp. v Federal Trade Commission*,
   139 F2d 393 (2d Cir 1943) .............................................................................................. 3

*Thermal Design, Inc. v American Soc. of Heating, Refrig. and Air-Conditioning Eng., Inc.*,
   755 F3d 832 (7th Cir 2014) ........................................................................................... 10

*United States v Huezo*,
   546 F3d 174 (2d Cir 2008) .............................................................................................. 4

*United States v Koppers Co, Inc.*,
   652 F2d 290 (2d Cir 1981) ........................................................................................... 7, 8

## ANDERSON NEWS, L.L.C. CONTINUES TO IMPROPERLY INCLUDE RODALE AS PART OF "A WALKING CONSPIRACY" WITHOUT EVIDENCE OF ANY PARTICIPATION ON ITS PART

Rodale, Inc. ("Rodale") has shown in its moving Memorandum of Law that Anderson News L.L.C. ("ANCO") cannot establish facts that demonstrate or even imply that Rodale participated in any conspiracy between or among the named defendants to boycott ANCO, and that ANCO's assertion that Rodale was an active participant in such a conspiracy as a result of its national distributor relationship with defendant Curtis Circulation Company ("Curtis") is misplaced. To survive Rodale's summary judgment motion, ANCO must come forward with "direct or circumstantial evidence that reasonably tends to prove" the alleged conspiracy, *Monsanto Co. v Spray-Rite Serv. Corp.*, 465 US 752, 760-61 (1984), and must make "a factual showing that each defendant [including, specifically, Rodale] conspired in violation of the antitrust laws, [and that it has] not adopted a 'walking conspiracy' theory in place of such a showing." *AD/SAT, a Div. of Skylight, Inc. v Associated Press*, 181 F3d 216 (2d Cir 1999). In addition, ANCO's specific factual showing as to Rodale must comply with the Supreme Court's seminal ruling set forth in *Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 US 574, 588 (1986), *i.e.* that the factual showing "tends to exclude the possibility that [Rodale] acted independently," or did not take any action evidencing its participation in any conspiracy.

ANCO has made no factual showing, nor has it identified any actions on Rodale's part, evidencing any participation by Rodale in any such conspiracy. Instead, it has improperly adopted a "walking conspiracy" theory against Rodale. ANCO's arguments are without merit.

### A.     In Furtherance of an Improper "Walking Conspiracy" Theory, ANCO Ascribes to Rodale the Actions of Others that Do Not Involve Rodale

ANCO conclusorily asserts at Point II of its memorandum of law in opposition to Rodale's motion (the "ANCO Brief") that the "*Overwhelming Evidence Establishes That Rodale*

*Participated in an Unlawful Complicacy*" (ANCO Brief, at pp. 5-22). However, most of the argument cites to no action taken by Rodale whatsoever, and the few references to Rodale communications toward the end of the argument fall far short of suggesting or implying that Rodale became a party to any agreement or did anything to become an active participant in any conspiracy.

The primary arguments made against Rodale by ANCO in the "Overwhelming Evidence" section of the ANCO Brief (Points II[a] and [b], pp. 5-15) are that: (1) the "Evidence Establishes a Plausible Conspiracy," (2) the "Conspiracy Unfolded In a Series of Overlapping Phases," and (3) there were purportedly a number of "Additional Circumstances that Permit an Inference of Conspiracy." However, all of the factual references cited in support of these arguments refer to defendants or third parties *other than Rodale*.

ANCO baldly asserts that "Rodale essentially ignores the mountain of highly incriminating emails, sworn testimony and more than 150 inter-competitor communications supporting an inference of a conspiracy...." (ANCO Brief, at p. 8). ANCO, however, cites to not a single email or telephone communication involving Rodale, much less demonstrates that Rodale "conspired in violation of the antitrust laws." *AD/SAT, supra,* 181 F3d at 233-34. Indeed, the only mention of Rodale in this 11-page "Overwhelming Evidence" argument is ANCO's assertion that "Rodale and its co-conspirators focused on developing an alternate distribution plan that included sharing competitively-sensitive information about each others' historical distribution practices...." (ANCO Brief, at p. 10.) ANCO, however, does not cite to a single communication or document that mentions Rodale. ANCO cites only to ¶¶ 87-92 of "Anderson's Statement of Additional Genuine Issues of Material Fact" submitted in opposition to Rodale's motion, which paragraphs do not mention Rodale, and to some secondary conclusions of its expert Leslie Marx

- 2 -

that "Defendants communicated with each other. . . ." (Marx Report at age 80) in which she cites as to Rodale the same Rodale emails and telephone calls addressed in Part **B.** below.

Contrary to this Court's January 21, 2015 order, observing that "Plaintiffs must identify the evidence that links each Defendant to the alleged conspiracy" and thus rejecting ANCO's request for a consolidated brief against Curtis, Bauer, Rodale and Kable, ANCO's 11-page "Overwhelming Evidence" argument against Rodale is a virtually verbatim copy of ANCO's opposition to the summary judgment motions of Curtis, Bauer and Kable.

## B.   The Evidence Cited by ANCO Involving Rodale does not Suggest or Imply that Rodale was an Active Participant in Any Conspiracy

In subpart "c" of ANCO's "Overwhelming Evidence" argument (ANCO Brief, at pp. 15-19), ANCO makes reference to several Rodale communications. In so doing, however, it cites to improper legal authority for the purported legal proposition that only "slight evidence is needed to link" Rodale to the alleged conspiracy and that "actual knowledge" of the conspiracy is equivalent to active participation in it. (ANCO Brief, at pp. 15-16, citing *Minpeco, S.A. v Conticommodity Servs. Inc.*, 673 F Supp 684, 688 [SD NY 1987]).

The Second Circuit in *AD/SAT*, 181 F3d at 233-34, ruled that its previous holding in *Phelps Dodge Refining Corp. v Federal Trade Commission*, 139 F2d 393 (2d Cir 1943), that continued membership in a trade association with knowledge of its anticompetitive activities is equivalent to ratification, "does not retain the force of law." The Court ruled that the Supreme Court's holdings in *Monsanto* and *Matsushita Elec. Indus. Co.*, "call into doubt the continued viability of *Phelps'* membership ratification theory," 181 F3d at 233-34, and instead require, as quoted above, an evidentiary showing that each defendant conspired in violation of the antitrust laws and that the plaintiff has "not adopted a 'walking conspiracy' theory in place of such a showing." 181 F3d at 234. The "slight evidence" rule which ANCO relies upon, on the basis of

- 3 -

the *Minpeco* case, is no longer good law. *See United States v Huezo*, 546 F3d 174, 180 n 2 (2d Cir 2008).

Relying on its improper "slight evidence" standard in opposition to Rodale's summary judgment motion, ANCO then cites to the telephone records of Rodale's Vice President of Retail Sales, Richard Alleger, to assert that "Rodale was directly involved and acutely aware of the 'essential nature and general scope of' the conspiracy." (ANCO Brief, at pp. 16-19.) ANCO asserts that the fact that there were telephone calls between Richard Alleger and other publishers or national distributors is "adequate" (albeit "slight") evidence of Rodale's knowledge -- and participation -- in the conspiracy. (ANCO Brief, at pp 16-17.) ANCO even asserts that Rodale's supposed active participation in the alleged conspiracy is evidenced by Mr. Alleger's several written reports to Rodale's senior management concerning his knowledge of the status of the severely disrupted single copy distribution marketplace in early 2009. (ANCO Brief, at p. 19.)

Clearly, such industry communications and internal management reports, without more, are insufficient evidence of Rodale's participation in any alleged conspiracy. Information-gathering communications among industry participants, including competitors, is to be expected, particularly in the face of such serious marketplace disruption as that which resulted from ANCO's Surcharge demand and its assertion that it would cease delivery after February 1, 2009 of the titles of any publisher which did not accept the Surcharge. Such communications, in the absence of evidence that they led to an illegal agreement, are insufficient to defeat a summary judgment motion, whether that of Rodale or any of the other defendants. *See H.L. Moore Drug Exch. v Eli Lilly & Co.*, 662 F2d 935, 941 (2d Cir 1981); *see also* authorities cited at Rodale's moving brief, at pp. 8-9, and Curtis's moving brief, at pp. 15-16.

- 4 -

ANCO additionally refers to three emails of Richard Alleger as evidence of Rodale's supposed commitment to the alleged boycott conspiracy. These emails, however, suggest nothing of the kind.

First, ANCO inaccurately describes an Alleger email dated January 29, 2009 as characterizing "Comag's decision to ship Anderson and Source as 'dangerous' -- *i.e.* 'dangerous' to defendants' collective plan." (ANCO Brief, at p. 18.) Mr. Alleger did not characterize either Comag or its then-President, Michael Sullivan, as "dangerous" because of Comag's decision to ship ANCO or Source. Mr. Alleger explained that his characterization of Mr. Sullivan in this email, which was extensively covered during his deposition, was the result of Mr. Sullivan's several inconsistent press releases that Mr. Alleger found to be confusing to retailers and the single copy marketplace and not helpful during the extremely disruptive period following the ANCO Surcharge announcement. (*See* Rodale moving brief at pp. 7-8, and Ex. #1 to Rodale's motion, at pp. 190-91, 198-202.)

ANCO also misdescribes the exchange of emails between Mr. Alleger and Robert Castardi. In response to Mr. Castardi's email regarding his inability to initiate any negotiations with ANCO, Mr. Alleger responded that he would prefer to see ANCO remain in business (which, of course, ANCO fails to mention) but wanted to know about Source -- which at that point (January 26, 2009) had also demanded a $.07 surcharge. The derogatory reference to Source is consistent with Mr. Alleger's deposition testimony that his experience with Source led him to conclude that its management was dishonest and did not run a good wholesaler business. (*See* Ex. #1 to Rodale's motion, at pp. 150-51.)

Alleger's internal January 28, 2009 memo that "Anderson will be going away" was a response to an email from a Rodale field representative concerning Anderson's most recent

- 5 -

reported position on shipping product with on-sale dates the week of February 9, 2009. The email was sent after it was widely reported by the industry press that most publishers were refusing to accept the Surcharge, and after it was similarly reported that TWR failed to reach an agreement with ANCO and had already notified its clients that it would no longer accept credit responsibility for ANCO shipments. The statement was an obvious conclusion by Mr. Alleger based on ANCO's own statements that it would not ship after February 1, 2009 without publisher commitments to the Surcharge, and the broadly disseminated information by the industry press that very few of the larger publishers had agreed to the Surcharge. It suggests nothing that was not broadly known and reported within the industry as of the date of the email.

Finally, the exchange of emails with DSI that Bauer was "solid" (ANCO Brief, at p. 18) has no significance. Mr. Alleger testified that his January 30, 2009 email exchange with DSI that contained the Bauer reference was simply Mr. Alleger's effort to assess industry developments as of that point: "You were trying to pay attention to what the changes [in the industry] were because you wanted to know where your product was going to go." (Ex. #1 to Rodale's motion, at pp. 239-45.) Mr. Alleger's testimony as to the referenced email exchange is completely consistent with the balance of his testimony that he was solely committed, during the period of disruption, to assessing Rodale's potential losses and learning where Rodale's copies should be shipped. (*See* Rodale moving brief, at pp. 2-4, 9-10.)

As Rodale established in its moving brief, ANCO cannot survive summary judgment by unilaterally attributing negative implications to such benign emails. *See Hyland v HomeServices of America, Inc.*, 771 F3d 310, 321 (6th Cir 2014).[1]

---

[1] ANCO attempts to distinguish *Hyland* by asserting that choosing between "plausible interpretations of the evidence will be a task for the trier of fact." ANCO Brief, at p. 18, n. 25. This argument is a *non sequitur*. While, of course, the very role of the trier of fact is to assess conflicting evidence at trial, that is completely

- 6 -

## C. ANCO's Agency Liability Theory Against Rodale is Misplaced

In the last section of ANCO's "Overwhelming Evidence" argument (ANCO Brief, Point II[d], pp. 19-22), ANCO implicitly acknowledges that its evidence against Rodale is far from "overwhelming" by asserting, in the alternative, that "even if there were not substantial evidence of Rodale's direct knowledge of the 'essential nature and general scope' of the conspiracy ... Rodale would still be responsible for the acts of its agents, Curtis and DSI." (ANCO Brief, at pp. 19-20.) ANCO again cites *Minpeco*, which, as noted, is no longer good law, as well as *Am. Soc. of Mech. Eng'rs v Hydrolevel Corp.*, 456 US 556 (1982) and *United States v Koppers Co, Inc.*, 652 F2d 290 (2d Cir 1981) for its asserted theory of broad agency liability. The latter two cases acknowledge that an employer or other principal can be responsible under the antitrust laws for the unlawful acts of an employee or other agent acting with "apparent authority," but with limitations that ANCO has chosen to ignore.

ANCO, however, misconstrues the holdings in *Hydrolevel* and *Koppers* and seeks to impose an agency liability theory on Rodale that is far broader than those cases permit. ANCO improperly seeks to impose liability on Rodale for any and all actions of either Curtis or DSI that it characterizes as evidence of a conspiracy, regardless of whether the activity was being pursued on behalf of Rodale. As described above, ANCO attributes to Rodale "the mountain of highly incriminating emails, sworn testimony and the more than 150 inter-competitor communications supporting an inference of a conspiracy...." (ANCO Brief, at p. 8.) The *Hydrolevel* and *Koppers* cases do not support such a broad application of the agency liability theory in an antitrust case. As the Supreme Court stated in *Hydrolevel*:

---

separate and apart from assessing whether ANCO has made a sufficient factual showing to survive summary judgment. As established herein, ANCO has not made such a showing.

- 7 -

> This case presents the important issue of the Society's civil liability under the antitrust laws for acts of its agents performed with apparent authority. 456 US at 558-59.

The Supreme Court then described when such "apparent authority" is sufficient to impose antitrust liability on an employer or other principal as the result of the wrongful anticompetitive conduct of an employee or other agent:

> Under the apparent authority theory, liability is based upon the fact that the agent's positon facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of business confided to it. 456 U.S. at 566.

ANCO improperly seeks to impose this "apparent authority" standard of liability on Rodale by describing activities of either DSI or Curtis that had nothing to do with Rodale, and indeed specifically dealt with other publishers. This is not a case involving the alleged wrongful activities of a Rodale employee, such as in the *Koppers* case,[2] or where a volunteer was functioning as a designated committee member of a professional society, such as in the *Hydrolevel* case. Curtis had hundreds of publisher clients in January of 2009 and DSI had at least dozens. No such presumption of apparent authority arises from those relationships.

In seeking to force this case into the *Hydrolevel* apparent authority liability theory, ANCO describes that DSI sought to facilitate the activities of two publishers other than Rodale to use their "'collective resources and influence' to direct business away from Anderson." (ANCO Brief, at pp. 20-21.) On its face, the described activity indisputably has no bearing on Rodale and cannot suggest that DSI was acting in the ordinary course of Rodale's business and with its authority. Obviously, any activity of DSI involving two different publishers does not reasonably suggest to third persons that DSI was acting upon Rodale's authority. Similarly, none of DSI's

---

[2] *Koppers* has no bearing on the issue as that case involved an employee managing agent of Koppers Co., Inc. having been found guilty of engaging in a price fixing agreement with a competitor and the agency issue was assumed. The case did not present an issue regarding the "apparent authority" question.

- 8 -

other activities described by ANCO at page 21 of the ANCO Brief relate to Rodale, and Rodale is not mentioned in any of the cited record references, with the single exception of ¶ 126, which is a misdescription of the "Bauer is solid" email described above.

ANCO has made no showing that any specific activity of DSI falls within the "apparent authority" standard set forth in the *Hydrolevel* case, so as to impose agency liability on Rodale.

ANCO's apparent authority argument as to Curtis fares no better. It generally asserts as being attributable to Rodale "numerous calls ... as well as emails and other documents" of Curtis described in ANCO's memorandum of law in opposition to the Curtis motion (ANCO Brief, at p. 20), but there is no "apparent authority" argument against Rodale as to any of the alleged calls or emails or documents in either of ANCO's briefs opposing the Rodale and Curtis motions. ANCO has made no attempt to show that any of the alleged "numerous" Curtis calls, emails or documents: *seem[ed] regular on [their] face and [Curtis] appear[ed] to be acting in the ordinary course of the business [of Rodale] confided to [it]*, as required by *Hydrolevel* to impose "apparent authority" liability on Rodale. ANCO also asserts that Robert Castardi's purported statement to Charles Anderson, Jr. that Curtis was acting in "lock step" with TWR is attributable to Rodale -- as well as presumably all of Curtis's hundreds of publisher clients. (ANCO Brief, at p. 20.) Such an assertion clearly fails the *Hydrolevel* apparent authority test because the agreement between Rodale and Curtis (Ex #8 to Rodale's motion) clearly provides that only Rodale has authority to approve the discounts to wholesalers, and Charles Anderson, Jr., during his industry "Surcharge interview" on January 14, 2009, acknowledged that he needed to and did seek to negotiate any improved discounts directly with the publishers.

When, as in this case, there is no factual showing that the agent's alleged activities were within its apparent authority, the courts routinely distinguish *Hydrolevel* and dismiss the case.

*See e.g. Thermal Design, Inc. v American Soc. of Heating, Refrig. and Air-Conditioning Eng., Inc.,* 755 F3d 832, 838 (7th Cir 2014); *Ehlinger & Assoc. v La. Arch. Assoc., et al,* 989 F Supp 775, 786-89 (ED La 1998).

ANCO's argument that it can impose liability on Rodale via an agency theory pursuant to *Hydrolevel* is therefore no better than its effort to make a factual showing specific to Rodale demonstrating its participation in the alleged conspiracy, as required by the *AD/SAT* case. Rodale's motion for summary judgment should be granted and the case as against it should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, Rodale respectfully requests that its motion for summary judgment be granted in its entirety.

Dated: New York, New York
April 17, 2015

**ROSENBERG & ESTIS, P.C.**

By: _____
John M. Hadlock
(jhadlock@rosenbergestis.com)
Alexander Lycoyannis
(alycoyannis@rosenbergestis.com)
733 Third Avenue
New York, New York 10017
Tel.: (212) 867-6000
Fax: (212) 551-8484

*Counsel for Defendant Rodale, Inc.*

- 10 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDERSON NEWS, L.L.C. and LLOYD WHITAKER, as the Assignee under an Assignment for the Benefit of Creditors for Anderson Services, L.L.C.,

Plaintiffs,

- against -

09-CIV-2227 PAC

AMERICAN MEDIA, INC., BAUER PUBLISHING CO., L.P., CURTIS CIRCULATION COMPANY, DISTRIBUTION SERVICES, INC., HACHETTE FILIPACCHI MEDIA U.S., INC., HEARST COMMUNICATIONS, INC., HUDSON NEWS DISTRIBUTORS LLC, KABLE DISTRIBUTION SERVICES, INC., RODALE, INC., TIME INC., and TIME/WARNER RETAIL SALES & MARKETING, INC.,

Defendants.

**CERTIFICATE OF SERVICE - REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT RODALE, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF ANDERSON NEWS, L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of April, 2015, I caused a true and complete copy of defendant Rodale, Inc.'s reply memorandum of law in further support of its motion for summary judgment against Plaintiff Anderson News, L.L.C. to be served via electronic mail on the counsel listed below:

KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
1633 Broadway
New York, New York 10019

>   Kevin A. Cyrulnik (KCyrulnik@kasowitz.com)
>   Daniel R. Benson (DBenson@kasowitz.com)
>   Dean Pamphilis (DPamphilis@kasowitz.com)
>   Gavin D. Schryver (GSchryver@kasowitz.com)
>   Hector Torres (HTorres@kasowitz.com)
>   Jack Atkin (JAtkin@kasowitz.com)
>   Marc E. Kasowitz (MKasowitz@kasowitz.com)
>   Seth B. Davis (sdavis@kasowitz.com)
>   Seth A. Moskowitz (smoskowitz@kasowitz.com)

LYNCH ROWIN, L.L.P.
630 Third Avenue
New York, New York 10017

>   Jennifer Chavez (jchavez@lynchrowin.com)
>   Thomas Lynch (tlynch@lynchrowin.com)

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036

>   Jean Paul Nagashima (jnagashima@khhte.com)
>   Michael K. Kellogg (mkellogg@khhte.com)
>   Steven F. Benz (sbenz@khhte.com)

PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039

>   David G. Keyko (david.keyko@pillsburylaw.com)
>   Jay D. Dealy (jay.dealy@pillsburylaw.com)
>   Sara E. Stinson (sara.stinson@pillsburylaw.com)

DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808

>   Larry Reicher (Lawrence.Reicher@dechert.com)
>   George Gordon (george.gordon@dechert.com)
>   Jennings Durand (jennings.durand@dechert.com)

HEARST CORPORATION - OFFICE OF GENERAL COUNSEL
300 West 57th Street, 40th Floor
New York, NY 10019

>   Eva Saketkoo (esaketkoo@hearst.com)
>   Kristen Hauser (khauser@hearst.com)

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

>   Rachel Fritzler (rfritzler@cravath.com)
>   Anthony Ryan (ARyan@cravath.com)
>   Daniel Margolskee (dmargolskee@cravath.com)
>   Rowan Wilson (RWilson@cravath.com)
>   Sara Slavin (slavin@cravath.com)

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
88 Pine Street, 24th Floor
New York, New York 10005

>   I. Michael Bayda (ibayda@mdmc-law.com)
>   Jay Katz (jkatz@mdmc-law.com)

- 3 -

TROUTMAN SANDERS LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174

> Barry Brett (barry.brett@troutmansanders.com)
> Daniel Anziska (daniel.anziska@troutmansanders.com)

By: /s/ John M. Hadlock

John M. Hadlock
ROSENBERG & ESTIS, P.C.
*Counsel for Defendant Rodale, Inc.*
733 Third Avenue
New York, New York 10017
(212) 867-6000 (phone)
(212) 551-8484 (fax)
(jhadlock@rosenbergestis.com)

- 3 -