UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDERSON NEWS, L.L.C. and LLOYD WHITAKER,
as the Assignee under an Assignment for the Benefit of
Creditors for Anderson Services, L.L.C.,

            Plaintiffs,

   - against -

AMERICAN MEDIA, INC., BAUER PUBLISHING
CO., L.P., CURTIS CIRCULATION COMPANY,
DISTRIBUTION SERVICES, INC., HACHETTE
FILIPACCHI MEDIA U.S., INC., HEARST
COMMUNICATIONS, INC., HUDSON NEWS
DISTRIBUTORS LLC, KABLE DISTRIBUTION
SERVICES, INC., RODALE, INC., TIME INC., and
TIME/WARNER RETAIL SALES & MARKETING,
INC.,

            Defendants.

AMERICAN MEDIA, INC., HEARST
COMMUNICATIONS, INC., and TIME INC.,

            Counterclaim-Plaintiffs,

   - against -

ANDERSON NEWS, L.L.C. and CHARLES
ANDERSON, JR.,

            Counterclaim-Defendants.

09 Civ. 2227 (PAC)

Filed Under Seal

**COUNTERCLAIM-DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700

*Attorneys for Counterclaim-Defendant
Anderson News, L.L.C.*

KELLOGG, HUBER, HANSEN, TODD,
EVANS & FIGEL, PLLC
1615 M Street NW #400
Washington, DC 20036
Tel.: (202) 326-7900

*Attorneys for Counterclaim-Defendant
Charles Anderson, Jr*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT..........................................................................................................................2

I.      COUNTERCLAIM-PLAINTIFFS LACK ANTITRUST STANDING ...........................2

II.     TIME CONCEDES THAT IT DOES NOT HAVE CONSTITUTIONAL
        STANDING TO PURSUE ███████ OF ITS ALLEGED DAMAGES ................7

III.    THE COUNTERCLAIMS AGAINST
        C. ANDERSON ARE TIME-BARRED.........................................................................8

CONCLUSION.....................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................9

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
  152 F.3d 588 (7th Cir. 1998) ...................................................................................7

*Blue Shield of Virginia v. McCready*,
  457 U.S. 465 (1982) ................................................................................................5

*Cook v. Avien, Inc.*,
  573 F.2d 685 (1st Cir. 1978) .................................................................................10

*Crimpers Promotions Inc. v. Home Box Office, Inc.*,
  724 F.2d 290 (2d Cir. 1983) ............................................................................... 4-5

*Danecker v. Bd. of Trs. of Serv. Emps. 32BJ N. Pension Fund*,
  882 F. Supp. 2d 606 (S.D.N.Y. 2012) .....................................................................9

*Doe v. Cigna Life Ins. Co. of New York*,
  304 F. Supp. 2d 477 (W.D.N.Y. 2004) ....................................................................3

*Donahue v. Pendleton Woolen Mills, Inc.*,
  633 F. Supp. 1423 (S.D.N.Y. 1986) ........................................................................8

*Gatt Commcn's Inc. v. PMC Assocs., LLC*,
  711 F.3d 68 (2d Cir. 2013) ...........................................................................2, 3, 4

*Haas v. Jefferson Nat'l Bank of Miami Beach*,
  442 F.2d 394 (5th Cir. 1971) ...................................................................................7

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
  602 F.3d 237 (3d Cir. 2010) ............................................................................... 6-7

*Impro Prods., Inc. v. Herrick*,
  715 F.2d 1267 (8th Cir. 1983) .................................................................................7

*J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*,
  76 F.3d 1245 (1st Cir. 1996) .................................................................................10

*Kearney v. Cnty. of Rockland*,
  373 F. Supp. 2d 434 (S.D.N.Y. 2005) .....................................................................5

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
    292 F. Supp. 2d 535 (S.D.N.Y. 2003)................................................................5

*Mathie v. Fries*,
    935 F. Supp. 1284 (E.D.N.Y. 1996), *aff'd*, 121 F.3d 808 (2d Cir. 1997) ...............3

*Maxim Grp. LLC v. Life Partners Holdings, Inc.*,
    690 F. Supp. 2d 293 (S.D.N.Y. 2010)................................................................5

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007) ...........................................................................6

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998) ............................................................................10

*New York v. Hendrickson Bros., Inc.*,
    840 F.2d 1065 (2d Cir. 1988)........................................................................3, 4

*Newman v. Warnaco Grp., Inc.*,
    335 F.3d 187 (2d Cir. 2003) ...........................................................................9

*PepsiCo, Inc. v. Coca-Cola Co.*,
    315 F.3d 101 (2d Cir. 2002) ....................................................................3, 5, 6

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*,
    828 F.2d 211 (4th Cir. 1987) ...........................................................................8

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
    453 F. Supp. 2d 633 (S.D.N.Y. 2006)................................................................6

*In re Publ'n Paper Antitrust Litig.*,
    690 F.3d 51 (2d Cir. 2012) ........................................................................2-3, 4

*Robbins v. Banner Indus., Inc.*,
    285 F. Supp. 758 (S.D.N.Y. 1966)................................................................ 5-6

*Sly Magazine, LLC v. Weider Publications L.L.C.*,
    241 F.R.D. 527 (S.D.N.Y. 2007) ....................................................................6

*Southwick Clothing LLC v. GFT (USA) Corp.*,
    No. 99 Civ. 10542 (GBD),
    2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004) ....................................................5

*Spirt v. Teachers Ins. & Annuity Ass'n of Am.*,
    416 F. Supp. 1019 (S.D.N.Y. 1976).................................................................7

*Three Crown Ltd. P'ship v. Salomon Bros., Inc.*,
    906 F. Supp. 876 (S.D.N.Y. 1995)................................................................3, 4

*Veltri v. Bldg. Serv. 32B-J Pension Fund*,
    393 F.3d 318 (2d Cir. 2004) ....................................................................................9

*Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*,
    857 F.2d 55 (2d Cir. 1988) .....................................................................................5

*Yong Ki Hong v. KBS Am., Inc.*,
    951 F. Supp. 2d 402 (E.D.N.Y. 2013).............................................................2, 3, 4

Counterclaim-Defendants respectfully submit this memorandum of law in further support of their motion for summary judgment seeking dismissal of the counterclaims.[1]

## PRELIMINARY STATEMENT

Counterclaim-Plaintiffs' arguments opposing summary judgment, as shown below, fail to raise any genuine issue of material fact. The counterclaims should be dismissed.[2]

*First*, under settled Second Circuit law, Counterclaim-Plaintiffs lack antitrust standing to pursue their alleged price-fixing claim because they admit that they have not paid an artificially-inflated price due to the alleged conspiracy. Counterclaim-Plaintiffs argue that standing exists because the business expenses for which they seek recovery supposedly were the intended consequence of the alleged conspiracy. Counterclaim-Plaintiffs fail to cite any price-fixing case to support that proposition, and the cases upon which they purport to rely are inapposite.

Apparently recognizing that they lack antitrust standing, Counterclaim-Plaintiffs attempt in their opposition brief to recast their price-fixing claim as a group boycott claim. That attempt should be rejected. A party cannot amend its pleading through a brief opposing summary judgment. Nor can Counterclaim-Defendants, at this late stage, cure the defect in their pleadings by seeking to amend: discovery closed long ago and summary judgment motions have been

---

[1] "Ex. __" refer to exhibits attached to the Declaration of Seth A. Moskowitz, dated April 17, 2015. "Counterclaim-Defs. Br." refers to the December 19, 2014 memorandum of law submitted in support of Counterclaim-Defendants' motion for summary judgment; "Counterclaim-Pls. Br." refers to the March 9, 2015 memorandum of law submitted in support of Counterclaim-Plaintiffs' opposition to Counterclaim-Defendants' motion for summary judgment; "CC Pls. 56.1 ¶ __" refers to Counterclaim-Plaintiffs' responses to Counterclaim-Defendants' 56.1 Statement; and "CC Def. 56.1 ¶ __" refers to Counterclaim-Defendants' responses to Counterclaim-Plaintiffs' Statement of Additional Facts. Capitalized but undefined terms have the same meaning ascribed to them in Counterclaim-Defs. Br. All emphasis supplied unless otherwise noted.

[2] Most of Counterclaim-Plaintiffs' brief consists of alleged facts concerning Counterclaim-Defendants' supposed participation in a conspiracy, despite the absence of any challenge to the legal sufficiency of those allegations for purposes of this summary judgment motion. Those alleged "facts" -- which are conclusory and vigorously disputed by Counterclaim-Defendants -- are irrelevant to the motion and will not be addressed here.

filed.  In any event, any purported group boycott claim would be subject to dismissal because no genuine issue of material fact exists as to such a claim.

*Second*, Time lacks constitutional standing to assert any claim seeking ▇▇▇▇▇▇ of the ▇▇▇▇▇▇ it alleges in damages.  Those damages were not sustained by Time -- but arguably only by TWR.  TWR has not asserted any counterclaim.  Time argues that its legally deficient claim survives because Counterclaim-Defendants did not move for partial summary judgment on those damages.  Time is mistaken.  Counterclaim-Defendants did move for partial summary judgment as to such alleged damages.  Nor can Time cure this deficiency.  No motion has been filed seeking leave to add TWR as a counterclaim-plaintiff.  Even if such a motion had been filed, it would be subject to denial as untimely.  Adding TWR as a counterclaim-plaintiff at this late stage would be prejudicial to Counterclaim-Defendants.

*Third*, the counterclaims against C. Anderson are barred by the four-year statute of limitations.  Counterclaim-Plaintiffs' attempt to avoid the statute of limitations by invoking the doctrine of fraudulent concealment should be rejected.  The undisputed evidence shows that, within days of the Anderson and Source announcements, Counterclaim-Plaintiffs suspected that the two announcements had been coordinated and, despite that suspicion, conducted no due diligence.  The claim is thus time-barred as a matter of law.

## ARGUMENT

## I.   COUNTERCLAIM-PLAINTIFFS LACK ANTITRUST STANDING

The Second Circuit has held the only injury stemming from a price-fixing conspiracy that provides a plaintiff standing to pursue an antitrust claim is the payment by the plaintiff of an artificially-inflated price that it would not have paid absent the conspiracy.[3]  Here, Counterclaim-

---

[3]  *See* Counterclaim-Defs. Br. 10-13 (citing *Gatt Commc'n Inc. v. PMC Assocs., LLC*, 711 F.3d 68, 77 (2d Cir. 2013); *Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 418 (E.D.N.Y. 2013); *In re Publ'n Paper Antitrust*

Plaintiffs allege price-fixing, but expressly concede that they did not pay an artificially-inflated

price as a result of the alleged price-fixing.  (CC Pls. 56.1 ¶ 36.)  Counterclaim-Plaintiffs contend

that antitrust standing exists because the supposed "intended consequence" of the alleged price-

fixing was their lost profits and other business expenses.[4]  (Counterclaim-Pls. Br. 12-13.)  The

case law provides no support for this erroneous contention.[5]

    *First*, Counterclaim-Plaintiffs futilely attempt to distinguish *Gatt* and *Yong Ki Hong* --

the Second Circuit cases that limit antitrust standing in cases involving a price-fixing claim to

those parties that have paid an artificially-inflated price.[6]  They argue that standing and antitrust

---

*Litig.*, 690 F.3d 51, 61-62 (2d Cir. 2012); *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1077 (2d Cir. 1988); *Three Crown Ltd. P'ship v. Salomon Bros., Inc.*, 906 F. Supp. 876, 885 (S.D.N.Y. 1995)).

[4]  Because Counterclaim-Defendants have shown that there is no genuine issue of material fact that Counterclaim-Plaintiffs lack antitrust standing to assert their price-fixing claims, the burden of proof shifted to Counterclaim-Plaintiffs to come forward with specific facts showing that there is a genuine issue for trial.  *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).  Counterclaim-Plaintiffs have failed to -- and cannot -- satisfy that burden.

[5]  Counterclaim-Plaintiffs cite this Court's January 23, 2014 Order granting Counterclaim-Plaintiffs leave to file their counterclaims as purported support for the proposition that this Court already has rejected Counterclaim-Defendants' antitrust standing argument.  (Counterclaim-Pls. Br. 14.)  They are mistaken.  Nothing in that Order supports such a proposition.  In any event, the legal standard on summary judgment is different than on a motion for leave to amend, which does not constitute a judicial determination on the merits of the proposed claim.  *See, e.g.*, *Doe v. Cigna Life Ins. Co. of New York*, 304 F. Supp. 2d 477, 503 (W.D.N.Y. 2004) ("A motion for leave to amend . . . unlike a determination of a motion for summary judgment . . . is not a judicial determination on the merits of the proposed claim.") (*citing Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 875 F. Supp. 1022, 1029 (S.D.N.Y.1995) ("[A]rguments that address the merits are not relevant to a motion for leave to amend the pleadings.")); *see also Mathie v. Fries*, 935 F. Supp. 1284, 1301 (E.D.N.Y. 1996), *aff'd*, 121 F.3d 808 (2d Cir. 1997) (holding that granting leave amend "is a far cry from a finding of legal sufficiency").

[6]  The standard for determining if antitrust standing exists, as Counterclaim-Plaintiffs concede, is "whether the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place." (Counterclaim-Pls. Br. 12) (citation and quotation omitted).  Here, Counterclaim-Plaintiffs' alleged damages do not constitute harm that "corresponds to the rationale" for the price-fixing antitrust laws.  As discussed (*supra* 2-3, n.3), under Second Circuit law, price-fixing conspiracies are illegal because of the artificially-inflated prices that usually are associated with such anticompetitive conduct.  Here, Counterclaim-Plaintiffs' supposed lost profits and switching costs would have been sustained even absent the alleged conspiracy between Anderson and Source.  Even if all parties agreed that Anderson had made its proposal unilaterally, the outcome would have been identical.  Counterclaim-Plaintiffs still would have refused the proposed pricing terms, and would have incurred the same alleged lost profits and other business expenses in the process of refusing Anderson's proposal and switching to alternative wholesalers.  That is precisely why a price-fixing conspiracy does not allow a private plaintiff to recover for damages that have no relation to the purported conspiracy.  *See Gatt*, 711 F.3d at 75 ("As the Supreme Court explained in its seminal decision addressing § 4 actions . . . Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation.") (citation and quotation omitted).

injury in those price-fixing cases was found lacking because the injury flowed from the plaintiffs' initial participation in allegedly illegal cartels. (Counterclaim-Pls. Br. 15.) That is incorrect. In *Gatt*, the plaintiff's initial participation in the conspiracy had no bearing on the court's holding that the only measure of damages arising from a price-fixing claim that confers standing on an antitrust plaintiff is the payment of an artificially-inflated price. 711 F.3d at 77-78. The Second Circuit held that standing was foreclosed solely because "Gatt ha[d] not been forced to pay higher prices" -- not because of Gatt's participation in the conspiracy. *Id*. at 77.

In *Yong Ki Hong*, the plaintiffs did not participate in the alleged conspiracy. 951 F. Supp. 2d at 417 n.3. Moreover, that court underscored -- in its analysis of the *Gatt* decision -- that the plaintiff's participation in that conspiracy "did not affect the *Gatt* . . . court's reasoning on the issue of antitrust standing." *Id*. This further shows that Counterclaim-Plaintiffs' attempt to distinguish *Gatt* and *Yong Ki Hong* on the "participation" basis is meritless.

As Counterclaim-Defendants further showed, *Publication Paper, Hendrickson Bros.* and *Three Crown Ltd.* hold that a plaintiff must pay an artificially-inflated price to establish antitrust standing in a price-fixing conspiracy. (Counterclaim-Defs. Br. 10.) Counterclaim-Plaintiffs seek to diminish those declarations by characterizing them as "stray *dicta*." (Counterclaim-Pls. Br. 15.) The statements in those cases, however, are not "stray dicta" but instead articulate the well-established standard for asserting a price-fixing claim in the Second Circuit and other courts.[7]

_____

[7]   *Publ'n Paper*, 690 F.3d at 61-62 ("To prevail on a claim of horizontal price-fixing . . . the evidence must show that . . . [the] conspiracy caused injury to the plaintiff in the form of artificially inflated prices."); *Hendrickson*, 840 F.2d at 1077 ("Where the antitrust violation is a price-fixing conspiracy, the measure of damages to one of the coconspirators' customers is the difference between the prices actually paid and the prices that would have been paid absent the conspiracy."); *Three Crown Ltd.*, 906 F. Supp. at 885 (in price-fixing cases, "damages are measured by the difference between the price paid and the uninflated price . . ."). Moreover, the fact that those cases do not address whether a "boycott implemented to force a price increase constitute[s] antitrust injury" (Counterclaim-Pls. Br. 15), is irrelevant because Counterclaim-Plaintiffs have pled a price-fixing -- not a boycott -- claim. (*See infra* n.10.) *Crimpers Promotions Inc. v. Home Box Office, Inc.*, 724 F.2d 290 (2d Cir. 1983), also relied on by

*Second*, Counterclaim-Plaintiffs argue that *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), supports their lost profits standing argument in a price-fixing case. (Counterclaim-Pls. Br. 12-16.)  *McCready* can provide no such support, however, because the case involved a boycott claim -- not a price-fixing claim.  457 U.S. at 469-70.  Even in that boycott case, the alleged injury consisted of payments by the plaintiff of a higher price for the services targeted by the boycott -- not lost profits.  *Id.* at 468, 75.

Evidently recognizing that they lack antitrust standing to pursue a price-fixing claim, Counterclaim-Plaintiffs improperly attempt -- in their opposing brief -- to re-characterize their price-fixing claim as a group boycott claim.[8]  Boycott and price-fixing claims, however, are separate and distinct claims under the Sherman Act, with separate and distinct elements. *See PepsiCo*, 315 F.3d at 109-10 (explaining that boycott and price-fixing claims under the Sherman Act are distinguishable); *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 71-73 (2d Cir. 1988) (separating claims of price-fixing and group boycott for the purposes of antitrust injury analysis).

A party cannot amend its pleadings through an opposition to a motion for summary judgment.[9]  Counterclaim-Plaintiffs' purported price-fixing and boycott claims are required to be pled separately, just like any other separate and distinct claims.  *See Robbins v. Banner Indus.,*

---

Counterclaim-Plaintiffs, is irrelevant for the same reason; it involved a group boycott -- not price-fixing -- claim.  *Id.* at 294-95.

[8]   Thus, they assert repeatedly in their brief that ████████████████████ ████████████████████████████████████████ (Counterclaim-Pls. Br. 1; *see also id.* at 3-4, 7-9, 11, 15-16, 20.)

[9]   *See, e.g.*, *Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010) (explaining that "a party cannot amend its pleading through its opposition brief"); *Kearney v. Cnty. of Rockland*, 373 F. Supp. 2d 434, 440-41 (S.D.N.Y. 2005) (same); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 Civ. 10542 (GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) (same); *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 544 (S.D.N.Y. 2003) ("A summary judgment opposition brief is not a substitute for a timely motion to amend the complaint.").

*Inc.,* 285 F. Supp. 758, 760 (S.D.N.Y. 1966) (holding that pleading must include "the averment of a single set of facts while separately stating in separate counts the various legal theories upon which recovery is claimed").  While ███████████████████████████████,  that is insufficient to convert the price fixing claim into a boycott claim and Counterclaim-Plaintiffs make no argument to the contrary.[10]

Even assuming that Counterclaim-Plaintiffs had moved for leave to amend their counterclaims, the motion would be untimely and prejudicial to Counterclaim-Defendants.  Fact discovery in this case, which consisted of more than 70 fact and expert depositions and the production of more than 100,000 documents, concluded more than a year ago.  Thus, any motion for leave should be denied.[11]

In any event, even if Counterclaim-Plaintiffs timely had moved for leave to amend, the amended counterclaim, which essentially would involve allegations of a hub-and-spoke conspiracy, would fail to raise any genuine issue of material fact as to any violation of Section 1 of the Sherman Act.  Counterclaim-Plaintiffs have not adduced any evidence that



██████████████████████.[12]  Thus, any such claim would be meritless.[13]

---

[10]   Indeed, it is beyond genuine dispute that Counterclaim-Plaintiffs' counterclaims allege only a price-fixing conspiracy.  *See* Counterclaim-Plaintiffs' counterclaim (████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████).

[11]   *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-02 (2d Cir. 2007) (affirming denial of leave to amend where discovery was closed and summary judgment motions filed); *Sly Magazine, LLC v. Weider Publications L.L.C.*, 241 F.R.D. 527, 532 (S.D.N.Y. 2007) (denying leave to amend where discovery was closed and "both sides [were] poised to file motions for summary judgment"); *Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 453 F. Supp. 2d 633, 679-81 (S.D.N.Y. 2006) (same).

[12]   *See, e.g., PepsiCo*, 315 F.3d at 110 (affirming grant of summary judgment where there was "no evidence of direct communications" between the alleged spokes of a conspiracy); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010) (affirming grant of summary judgment, court found no conspiracy

## II.   TIME CONCEDES THAT IT DOES NOT HAVE CONSTITUTIONAL STANDING TO PURSUE ▆▆▆▆▆▆ OF ITS ALLEGED DAMAGES

Time does not dispute that it lacks constitutional standing to seek recovery for ▆▆

▆▆▆▆▆▆▆▆▆▆ in damages that allegedly were incurred by TWR, a non-party to

the counterclaim.  Instead, Time seeks to avoid dismissal based on the contention that

Counterclaim-Defendants did not move for partial summary judgment seeking to dismiss

this aspect of the claim.  (Counterclaim-Pls. Br. 17.)  There is no support under the Federal

Rules or the case law for the contention that a legally deficient claim somehow can survive a

motion seeking summary judgment and dismissal merely because the moving party did not

move separately for partial summary judgment.[14]

Tacitly conceding the absence of any support for this argument, Time argues that it

could cure the deficiency in its claim by adding TWR as a counterclaim-plaintiff.

(Counterclaim-Pls. Br. 18.)  As already explained (*supra* at 5-6), however, a party cannot

---

where there was no allegation "of an agreement among the Dealers themselves" in a hub-and-spoke conspiracy between manufacturers and dealers to exclude other manufacturers); *Impro Prods., Inc. v. Herrick*, 715 F.2d 1267, 1280 (8th Cir. 1983) (affirming grant of summary judgment, court held that the absence of evidence indicating that "spoke" defendants communicated with one another precluded the court from concluding that "there existed an overall plan to suppress the plaintiff as a competitor or that each defendant had knowledge that others were involved in the conspiracy").

[13]   The purported group boycott claim also fails because Counterclaim-Plaintiffs have not ▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆ (*See* Ex. 76 at 77:24-17; Ex. 77 at 113:13–114:1; Ex. 78 at 31:16-19; Ex. 82 at 92:11–93:2; Ex. 79 at 59:10-19.) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See Spirt v. Teachers Ins. & Annuity Ass'n of Am.*, 416 F. Supp. 1019, 1022 (S.D.N.Y. 1976) (mandating joinder of third party where the challenged conduct could not have occurred without the third party's participation, and explaining that "[w]hen an entity is more accurately described as an active participant, rather than merely a key witness, joinder is indicated"); *Haas v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d 394, 398 (5th Cir. 1971) (holding that a party is indispensable where it has actively participated in the challenged conduct).

[14]   *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588 (7th Cir. 1998), upon which Counterclaim-Plaintiffs mistakenly rely (Counterclaim-Pls. Br. 17), has nothing to do with whether a party must move separately for partial summary judgment when seeking dismissal of an aspect of a claim.  Moreover, that case supports Counterclaim-Defendants.  The court affirmed the grant of summary judgment in favor of defendants because plaintiff failed to provide evidence of any antitrust damages.  *Id.* at 593-96.

amend its pleading through a summary judgment opposition brief and the time for seeking

leave to amend has long since expired.  Any belated motion to amend, which undoubtedly

would require additional discovery, should be denied because more than a year has passed

since the counterclaims were filed, fact discovery ended more than a year ago, and summary

judgment motions already have been filed.[15]  No legitimate excuse exists for the filing of

any belated motion.  ██████████████████████████████████████

████████████████████████  (Ex. 66 at 145:19-147:16, 175:15-24.)

### III.    THE COUNTERCLAIMS AGAINST
   C. ANDERSON ARE TIME-BARRED

Counterclaim-Plaintiffs do not contest that their claim against C. Anderson was

brought after the four-year statute of limitations expired.  Their attempt to avoid dismissal of

this claim based on the doctrine of fraudulent concealment should be rejected.  The burden

of proof in connection with this equitable tolling doctrine "rests squarely on the party

pleading fraudulent concealment." *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp.

1423, 1443 (S.D.N.Y. 1986).  Counterclaim-Plaintiffs have not satisfied that burden.[16]

Equitable tolling under this doctrine, as shown in the moving brief, ceases when facts

emerge sufficient to arouse a suspicion of price-fixing.[17]  (Counterclaim-Defs. Br. 17.)[18]  Thus,

---

[15]    Adding TWR as a counterclaim-plaintiff now would require the Court to re-open discovery to allow
Counterclaim-Defendants the opportunity to, among other things, depose various TWR witnesses concerning the
counterclaim (including their suspicions of when the claim arose) and the damages allegedly incurred by TWR.
Depending on the outcome of such discovery, any such amendment likely would result in even further unnecessary
delay, because of the need for the parties to engage in another round of summary judgment briefs.

[16]    Counterclaim-Plaintiffs contend that Counterclaim-Defendants concede that the first prong of the fraudulent
concealment test -- *i.e.*, that the defendant actively concealed the conspiracy -- is presumed. (Counterclaim-Pls.
Br. 19.)  But that presumption applies only in the context of a price-fixing conspiracy, not a boycott conspiracy.
*See, e.g.*, *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-19 (4th Cir. 1987) (affirming
denial of fraudulent concealment claim where plaintiff alleging boycott failed to adequately allege concealment).

[17]    "Because the fraudulent concealment standard equates suspicion with knowledge, plaintiffs need not have
learned the intimate details of the [alleged wrong] for the statute of limitations to begin running." *Donahue*, 633 F.
Supp. at 1443.

Counterclaim-Plaintiffs' contention (Counterclaim-Pls. Br. 19) that they did not learn of the alleged conspiracy until February 2013 is beside the point.  Here, there is no genuine issue of material fact that Counterclaim-Plaintiffs suspected, albeit erroneously, an alleged price-fixing conspiracy no later than February 2009.  Their efforts to mischaracterize the evidence of their suspicions cannot change the undisputed facts.

For example, Brian Wolfe, a Time executive vice president, testified that he believed in early 2009 that Anderson and Source were "working together."  (Counterclaim-Defs. Br. 7.) Likewise, Michael Roscoe, a consultant to AMI who the president of AMI considered chairman of DSI, testified that the chances of Anderson and Source proposing the same pricing terms were about as likely as "winning the lottery today and two days later winning the lottery again."[19] (Counterclaim-Defs. Br. 8.)  The other Wolfe and Roscoe testimony identified by Counterclaim-Plaintiffs does not negate the suspicions reflected by this testimony.

Counterclaim-Plaintiffs' failure to adduce evidence of any due diligence further compels rejection of their fraudulent concealment argument.  A plaintiff attempting to invoke the doctrine

---

[18]   Counterclaim-Plaintiffs rely on *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318 (2d Cir. 2004) and *Newman v. Warnaco Grp., Inc.*, 335 F.3d 187 (2d Cir. 2003), for the proposition that actual knowledge of the antitrust violation is required for the statute of limitations to begin running. (Counterclaim-Pls. Br. 20-21.)  Neither case adopts such a holding or reasoning.  In *Veltri*, the court's holding that fraudulent concealment applied was predicated expressly on the fact that the defendants were required to provide affirmative notice to the plaintiff regarding the plaintiff's right to file an administrative appeal of an adverse benefits determination and an action challenging that determination in court, but failed to do so.  393 F.3d at 323; *see also Danecker v. Bd. of Trs. of Serv. Emps. 32BJ N. Pension Fund*, 882 F. Supp. 2d 606, 613 (S.D.N.Y. 2012) ("*Veltri's* determination that equitable tolling was merited turned on the fact – undisputed – that the pension fund had breached its notice duties under federal law to *Veltri*.").  No comparable affirmative obligation exists here on the part of Counterclaim-Defendants.  *Newman* specifically held that the evidence adduced was insufficient to demonstrate that the plaintiffs had "*any* indication that fraud was being perpetrated." 335 F.3d at 194.  Here, in stark contrast, the evidence shows that Counterclaim-Plaintiffs long had suspicions of the alleged conspiracy.  (*See infra* at 9-10.)  Further, Counterclaim-Plaintiffs' reliance on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (Counterclaim-Pls. Br. 21), is equally misplaced.  *Twombly* set forth antitrust pleading standards sufficient to survive a motion to dismiss a conspiracy claim, not standards sufficient to equitably toll a statute of limitations through the doctrine of fraudulent concealment.  *Id.* at 556-57.

[19]   Counterclaim-Plaintiffs do not contest Counterclaim-Defendants' contention that the suspicions of Roscoe should also be attributed to AMI and Hachette because those parties relied on DSI in responding to the Anderson and Source announcements. (Counterclaim-Defs. Br. 18 n.16.)

of fraudulent concealment must provide evidence as to "when [inquiries regarding the alleged conspiracy] were made, to whom, regarding what, and with what response." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998). Counterclaim-Plaintiffs have not done so. Their argument that they could not have learned of the conspiracy through reasonable diligence until the beginning of discovery in this case does not relieve them of their due diligence obligation. (Counterclaim-Pls. Br. 19.) The undisputed evidence shows that, despite their suspicions in February 2009 (*see* Counterclaim-Defs. Br. 17-18), Counterclaim-Plaintiffs failed to conduct any due diligence and have not provided any legitimate reason for their failure to do so. This failure is fatal to their argument and to their claim. *See In re Merrill*, 154 F.3d at 60.[20]

## CONCLUSION

Based on the foregoing, Counterclaim-Defendants respectfully request that the Court grant their motion for summary judgment and dismiss the counterclaims in their entirety.

---

[20] Counterclaim-Plaintiffs' contention (Counterclaim-Pls. Br. 21-22) that they conducted due diligence in April 2010 by serving blanket document requests in the Anderson bankruptcy proceeding does not cure this deficiency. Those requests were served more than one year after their suspicions arose -- a delay that, under the law, is fatal to their fraudulent concealment claim. *See, e.g.*, *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1259 (1st Cir. 1996) (affirming summary judgment and holding that "the exercise of reasonable diligence . . . mandates that early steps be taken to appraise those facts which come to the [plaintiff's] attention") (citation and quotation omitted); *see also Cook v. Avien, Inc.*, 573 F.2d 685, 697-98 (1st Cir. 1978) (failure to conduct diligence for more than six months after suspicions arose was insufficient to meet diligence standard).

In any event, none of those document requests conceivably could be construed as due diligence regarding Counterclaim-Plaintiffs' suspicions of an alleged conspiracy between Anderson and Source. The document requests concerned only Anderson's financial performance. *See* Exhibit 112 to the Declaration of Daniel P. Margolskee. Moreover, Counterclaim-Plaintiffs could have conducted -- but failed to conduct -- due diligence from Source and TNG. Thus, the doctrine of fraudulent concealment cannot be invoked to save Counterclaim-Plaintiffs' time-barred claims.

Dated: April 17, 2015
      New York, New York

                          Respectfully submitted,

                          KASOWITZ, BENSON, TORRES
                            & FRIEDMAN LLP

By: _____
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Hector Torres (htorres@kasowitz.com)
Seth Davis (sdavis@kasowitz.com)
Seth A. Moskowitz (smoskowitz@kasowitz.com)
Kevin A. Cyrulnik (kcyrulnik@kasowitz.com)

1633 Broadway
New York, NY 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800

*Attorneys for Counterclaim-Defendant*
*Anderson News, LLC*


KELLOGG, HUBER, HANSEN, TODD, EVANS
    & FIGEL, PLLC

By: _____
Michael K. Kellogg (mkellogg@khhte.com)
Steven F. Benz (sbenz@khhte.com)

1615 M Street NW #400
Washington, DC 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999

*Attorneys for Counterclaim-Defendant*
*Charles Anderson, Jr.*

11