# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: +1-212-474-1000
FACSIMILE: +1-212-474-3700

JOHN W. WHITE
EVAN R. CHESLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
ROBERT H. BARON
KEVIN J. GREHAN
C. ALLEN PARKER
SUSAN WEBSTER
DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH

ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DAVID J. KAPPOS
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON

KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
JOHN D. BURETTA
J. WESLEY EARNHARDT
YONATAN EVEN

BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA
STEPHEN M. KESSING
LAUREN A. MOSKOWITZ
DAVID J. PERKINS
JOHNNY G. SKUMPIJA
J. LEONARD TETI, II
D. SCOTT BENNETT
TING S. CHEN
CHRISTOPHER K. FARGO
KENNETH C. HALCOM
DAVID M. STUART
JONATHAN L. DAVIS
AARON M. GRUBER
O. KEITH HALLAM, III
OMID H. NASAB

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
MICHAEL L. SCHLER

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: +44-20-7453-1000
FACSIMILE: +44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
+1-212-474-1348

WRITER'S EMAIL ADDRESS
rwilson@cravath.com

August 4, 2015

Anderson News, L.L.C. v. American Media, Inc.
No. 09 Civ. 2227 (PAC) (S.D.N.Y.)

Dear Judge Crotty:

Plaintiff claims that two of the charts presented by AMI—although accurate—are misleading, incomplete and irrelevant. The undisputed evidence shows that for fiscal years 2004 through 2008, Anderson News' loss from continuing operations exceeded $118 million. (*See* Time/TWR/Hearst 56.1 ¶ 48; AMI/DSI 56.1 ¶¶ 301-303, 310.) Plaintiff concedes that loss.

Next, Anderson News introduces for the first time data from 1996 through 2001 purporting to show annual cover price increases of over 6%. (Torres Ltr. 2.) That data were not the subject of discovery and not part of the record. No expert relied on this information. In fact, the data source for this information (the Audit Bureau of Circulation) is not even one of the three sources considered by plaintiffs' expert Dr. Lys as the basis for his cover price assumption. (Davis Ex. 261 (4/16/14 Lys Rpt.) ¶ 218.) This is another attempt to cherry-pick data favorable to Anderson. Using the data from *The New Single Copy* that is in the record (attached hereto as Exhibit A) and the data introduced for the first time in plaintiff's letter, the compound annual growth rate in magazine cover prices from 2001 through 2008 was 3.69%. (Torres Ltr. Ex. 1;

Exhibit A.)  This growth rate is only slightly higher than the increase in the consumer price index of 2.83% for the same time period.[1]  Using this growth rate—rather than Dr. Lys's 6.81% assumption—in Dr. Lys's formula causes Anderson News's value from organic cash flows to drop from positive $40.9 million to negative $107.1 million.  (*See* Torres Ex. 1 (Beaton Rpt.) ¶ 201 & Tbl. 61.)

Anderson News's letter confirms that it cannot identify any case where a party filed an antitrust suit after trying and failing to impose a price increase (Torres Ltr. 3), and we have found no such case.  Although Anderson News cites the Second Circuit's decision on appeal, the Second Circuit did not have before it Anderson News's admissions that it sought higher prices than TNG and other competing wholesalers (Opp'n to Time/TWR/Hearst 22; Responses to Time/TWR/Hearst 56.1 ¶¶ 56, 92-93, 106-108, 114-115, 153-54), nor did it have Mr. Anderson's admissions that he foreclosed competition by shutting down Prologix East and preventing TNG from delivering its magazines (Fritzler Ex. 5 (Anderson Dep.) 444:18-445:15) and that, when ProLogix East reopened pursuant to court order, he chose to shut down rather than match TNG's prices (*id.* 478:5-479:11, 575:2-578:24).[2]  Nothing in the Second Circuit's opinion suggests that Anderson News may recover damages because it refused prices acceptable to its competitors, as part of its plan to force supracompetitive prices on publishers.[3]

---

[1] As plaintiff's own expert noted, "nominal [cover] prices generally track CPI [the consumer price index]".  (Dealy Ex. 2 (4/16/14 Marx Rpt.) ¶ 374 n.545.)

[2] The Second Circuit also did not have before it the undisputed evidence that, according to Anderson's own tracking document, 95% of publishers—including non-defendant publishers and publishers of admitted non-conspirator Comag—refused to accept Anderson's price increase, demonstrating that rejecting Anderson's demands was consistent with the defendants' independent self-interest.  (Curtis SOF ¶¶ 425-26 (ANEWS0189593); Curtis Summ. J. Hr'g Pres., Slide 1 (Pie Chart).)

[3] Moreover, the emphasis in Anderson News's letter on the importance of support from retailers to sustain its demand for a price increase (Torres Ltr. 3) is telling.  Mr. Anderson admitted that, in order to force publishers to accept his price increase, and as part of his going dark plan, he organized a boycott, which included Anderson News's two largest retail customers.  (Fritzler Ex. 5 (Anderson Dep.) 392:18-20, 393:3-396:25, 439:10-16, 444:18-445:15; Davis Ex. 213 (Anderson Dep.) 107:12-108:6.)

Contrary to Anderson News's claims, in their opening papers, defendants demonstrated that Hachette had agreed to pay the per-copy distribution fee on a one-time basis. (Time/TWR/Hearst 56.1 ¶ 121; Fritzler Ex. 97 (ANEWS0153184-85); Fritzler Ex. 98 (CURTIS0034463).)  In fact, Anderson News attempted to respond to this point by submitting Mr. Campbell's declaration that Hachette shipped fewer magazines during the week of February 2 than in the prior week.  (Campbell Decl. ¶ 7.)  Anderson News's president, Mr. Stockard, testified that such a temporary agreement was acceptable to Anderson News at the time.  (*See* Stockard Dep. at 442:4-11 (attached hereto as Exhibit B).)

Finally, Anderson News claims it continued to ship magazines during the first week of February and that it ceased operations on February 7 because it lacked magazine supply. These claims are refuted, however, by Mr. Anderson's own admission that on February 2 or 3 he directed Mr. Castle to shut down both Prologix East and Anderson Services (Fritzler Ex. 5 (Anderson Dep.) 442:20-24, 428:19-429:4), with the "intent" of pressuring publishers to accept a price increase (*id.* 444:18-445:15).  At the time Mr. Anderson implemented his "going dark" plan, certain publishers Curtis represented had agreed to pay the 7-cent surcharge on 200 titles, with a draw of over 900,000 copies of magazines during the week Anderson News shut down (Durand Ex. 34 (ANEWS0153184)).  And because it had agreed to a 30-day extension of its preexisting agreement with Comag (Anderson News's Response to Time/TWR/Hearst 56.1 ¶ 117), Anderson News continued to receive magazines from Comag's clients, including Hearst, Conde Nast, and Wenner, which sold *Us Weekly*, the second best-selling weekly magazine in the United States (Dealy Ex. 2 (Marx 4/16/2014 Rpt.) ¶¶ 42, 100 (Fig. 12)).  It was Mr. Anderson's choice to implement his "going dark" strategy, and when the federal court in Delaware entered the TRO it was, in Mr. Anderson's words: "game over".  (Time/TWR/Hearst 56.1 ¶¶ 135-39.)

Respectfully,

Rowan D. Wilson

The Honorable Judge Paul A. Crotty
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

BY ECF AND BY HAND

Copy to:

Counsel of record (by ECF)