UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANDERSON NEWS, L.L.C. and LLOYD
WHITAKER, as the Assignee under an
Assignment for the Benefit of Creditors for
Anderson Services, L.L.C.,

        Plaintiffs,

  -against-

AMERICAN MEDIA, INC., BAUER
PUBLISHING CO., L.P., CURTIS CIRCULATION
COMPANY, DISTRIBUTION SERVICES, INC.,
HACHETTE FILIPACCHI MEDIA U.S., INC.,
HEARST COMMUNICATIONS, INC.,
HUDSON NEWS DISTRIBUTORS LLC, KABLE
DISTRIBUTION SERVICES, INC.,
RODALE, INC., TIME INC., and TIME/WARNER
RETAIL SALES & MARKETING, INC.,

        Defendants.
------------------------------------------------------------------X
AMERICAN MEDIA, INC., HEARST
COMMUNICATIONS, INC., and TIME INC.,

        Counterclaim-Plaintiffs,

  -against-

ANDERSON NEWS, L.L.C. and CHARLES
ANDERSON, JR.,

        Counterclaim-Defendants.
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-20-15

09 Civ. 2227 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Anderson News, L.L.C. ("Anderson News") and Lloyd Whitaker (together, "Plaintiffs") claim that Defendants[1] engaged in an antitrust conspiracy to drive Plaintiffs out of

---

[1] "Defendants" are American Media, Inc., Bauer Publishing Co., L.P., Curtis Circulation Company, Distribution Services, Inc., Hachette Filipacchi Media U.S., Inc., Hearst Communications, Inc., Kable Distribution Services, Inc., Rodale, Inc., Time Inc., and Time/Warner Retail Sales & Marketing, Inc.

1

business, in violation of Section 1 of the Sherman Act and New York State law. On December 19, 2014, Defendants moved for summary judgment on all claims. In conjunction with Defendants' motions for summary judgment, Plaintiffs and Defendants each move to exclude proposed expert testimony.

Defendants seek to exclude the testimony of Professor Guhan Subramanian, Dr. Leslie Marx, Dr. Robert Picard, and Dr. Thomas Lys. Plaintiffs seek to exclude the testimony of Neil Beaton. Because this Court granted Defendants' motions for summary judgment, it is unnecessary to decide the motions relating to the parties' damages experts (Dr. Picard, Dr. Lys, and Beaton).[2] Accordingly, the Court will decide only the motions concerning the testimony of Professor Subramanian and Dr. Marx.

There are numerous gaps in Plaintiffs' theory of the case, which they attempt to cover over with experts. Anderson's mid-January proposal, instead of being a demand or ultimatum, becomes a benign invitation to negotiate (Professor Subramanian). Without direct evidence of an antitrust conspiracy, various methods of communication between Defendants are styled as "super plus events" which permit an inference of conspiracy, even though an inference of independent action is more compelling (Dr. Marx).

I. **Applicable Law**

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[2] The Court rejects so much of Dr. Lys' proposed testimony which suggests that the Anderson companies were on the cusp of becoming a financial juggernaut, based on certain financial assumptions provided by Anderson. The Court relies on what Charles Anderson said about his company's financial condition as of January and February 2009, as well as Anderson's financial performance over the previous five years. If Anderson had chosen to stay in business, we might observe the actual result, but Doderson chose to quit the business. The proposed testimony amounts to speculation about the future.

2

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In considering whether an expert meets the requirements of Rule 702, the Court's inquiry "thus focuses on three issues: (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact." *Arista Records LLC v. Lime Group LLC*, 2011 WL 1674796, at *7 (S.D.N.Y. May 2, 2011).

To determine whether a theory is the product of "reliable principles and methods," *see* Fed. R. Evid. 702(c), courts generally consider whether the theory can be tested, whether it has been subjected to peer review, the error rate associated with the methodology, and whether the theory is generally accepted by the scientific community. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993). An expert's data and methodology is reliable if there is a "rigorous analytical connection between [the] methodology and the expert's conclusions." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005).

In addition, "[a]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (citation omitted). Expert testimony is not "helpful" to a jury if the jury is "as capable of comprehending the primary facts and of drawing correct conclusions from them" as an expert. *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962); *see Nimely*, 414 F.3d at 397 (an expert that "usurps . . . the role of the jury in applying [the] law to the facts before it . . . does not aid the jury in making a decision," but instead "attempts to

3

substitute the expert's judgment for the jury's") (citation omitted). Moreover, experts who "merely recit[e] what is on the face of a document produced during discovery" do "no more than that which the finder of fact could him or herself do," and such experts' reports "may be precluded on this basis alone." *See Cross Commerce Media, Inc. v. Collective, Inc.*, 2014 U.S. Dist. LEXIS 117244, at *22 (S.D.N.Y. Aug. 21, 2014).

Also inadmissible are "expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise," *Nimely*, 414 F.3d at 398, as well as testimony regarding "the intent or motive of parties," or a "party's state of mind," *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004); *LaSalle Bank Nat'l Assoc. v. CIBC, Inc.*, 2012 WL 466785, at *7 (S.D.N.Y. Feb. 14, 2012).

## II. Application

### a. Guhan Subramanian

Guhan Subramanian, a Harvard professor, specializes in business organizations and negotiation theory. Upon his review of, *inter alia*, the recording and transcript of the January 14, 2009 telephone interview to the single-copy magazine market in which Charles Anderson announced the price increase and inventory cost shift, the terms for acceptance, and the consequences for not accepting by February 1, 2009, Subramanian states that in his expert opinion: (1) Anderson intended the price increase and inventory cost shift to be negotiable, and (2) Defendants "knew or should have known" that, notwithstanding the February 1 deadline, the proposal was really an invitation to negotiate. Subramanian Report ¶ 105. Defendants move to exclude Professor Subramanian's testimony.

Professor Subramanian's testimony is inadmissible. There is ample, firsthand evidence of how the parties viewed Anderson's statement, expressed orally and in writing, which reflects

the parties' contemporaneous understanding of what Anderson said and their reactions. A jury is more than capable of "comprehending the primary facts" and "drawing . . . conclusions" from this evidence, without expert assistance. *See Salem*, 370 U.S. at 35. Permitting expert testimony on these issues would improperly "substitute the expert's judgment for the jury's" in determining the import of both spoken words and written documents. *See Nimely*, 414 F.3d at 398 (citation omitted).

The expert report also improperly opines on the parties' knowledge, motivations, and intent. *See, e.g.*, ¶ 105 ("Anderson intended its proposed Anderson Surcharge to be negotiable"); ¶ 67 ("Mr. Jacobsen . . . believed that follow-on negotiations with Anderson were possible"); ¶ 72 ("Mr. Anderson understood that Anderson and TWR had reached an agreement regarding the surcharge and discounts"); ¶ 77 ("I conclude from this e-mail chain that Kable knew that Anderson's proposal was negotiable"). This is not a proper subject for expert testimony.[3] *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 547. Defendants' motion to exclude Professor Subramanian's testimony is GRANTED.

### b. Dr. Leslie Marx

Dr. Marx, an economics professor at Duke University, offers her opinion that Defendants' conduct was consistent with collusion. She bases her opinions on the presence of what she refers to as "super-plus factors," which are plus factors that "allow a strong inference of collusion." Report ¶ 67.

---

[3] Plaintiffs also argue that Professor Subramanian's testimony is admissible because courts "routinely permit expert testimony on the 'customs and practice' of a particular industry." Opp. Mtn. at 18. Professor Subramanian testified, however, that he is *not* an expert in magazine publishing or the wholesaling of magazines. Wallace Decl., Ex. C, at 28-29. Professor Subramanian's proposed testimony regarding the "customs and practices of high-level business executives" is not equivalent to testimony regarding the customs and practices of a particular, specialized industry. Opp. Mtn. at 19. Plaintiffs' cases regarding "custom and practice" expert opinions all involve specialized industries. *See Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 403 (S.D.N.Y. 2013) (music industry); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999) (sports industry); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 537 (E.D.N.Y. 2012) (banking industry).

Dr. Marx's testimony regarding "super-plus" factors is inadmissible, because it appears to be a label conjured up for litigation rather than the "product of reliable principles and methods." *See* Fed. R. Evid. 702(c). Aside from works written by Dr. Marx and her co-authors, there is no scholarly or legal authority defining or using the term "super-plus factors." Nor is there an explanation of why "super-plus factors" demonstrate a stronger inference of collusion than traditional "plus factors." Instead, the Report merely states that "[p]lus factors differ in their strength," and cites to an article and a book, both authored by Dr. Marx and her colleagues. Report ¶ 67. The article identifies certain plus factors as "super-plus factors," based on general economic principals, and proposes an equation, based on the Bayes Theorem of probability, to determine the "strength" of a plus factor. Opp. Mtn., Ex. 5. Neither the article nor the book indicates that the proposed equation has been tested, or that it produces reliable results. Moskowitz Decl., Exs. 5, 6. Moreover, the fact that the term has not been adopted or used by anyone other than Dr. Marx and her colleagues indicates that this term has not been generally accepted by the scientific community.[4] *See Daubert*, 509 U.S. at 594.

Dr. Marx's opinions regarding "super-plus factors" are therefore excluded. Her opinions regarding the existence of plus factors, and whether she believes that those factors are consistent with Defendants' actions in this case, however, are permitted. *See In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980, at *4, *12; *In re Processed Egg Prods. Antitrust Litig.*, 2015 WL 337224, at *7-*9 (E.D. Pa. Jan. 26, 2015).

---

[4] Plaintiffs cite to *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980, at *12 (D. Md. May 1, 2013), in which the Court permitted expert testimony regarding a "multi-factor guide" of economic factors indicating collusive conduct that the expert had developed in connection with the litigation. In that case, however, the Court determined that the factors in the expert's guide were consistent with the plus factors commonly relied upon by antitrust experts. In contrast, Dr. Marx seeks to testify that certain plus factors are *stronger* than others, in that they are more consistent with collusion than other plus factors. It is this portion of Dr. Marx's analysis that lacks support from other academic or legal sources.

Defendants also seek to exclude Dr. Marx's opinion that it was in each Defendant's independent economic self-interest to continue to supply Anderson News with magazines. Defendants argue that Dr. Marx failed to take into account factors such as the cost of agreeing to the surcharge, the financial risk to Defendants if Anderson News failed to deliver magazines, and the fact that Defendants had the option of shipping to other wholesalers who did not impose a surcharge.

Although Dr. Marx's report refers to record evidence, such as emails in which Defendants acknowledged that they were losing sales by not shipping magazines to Anderson News' competitor, Source, there is no indication that she performed any actual analysis regarding Defendants' financial incentives to continue supplying Anderson News with magazines. Without any such analysis, or explanation as to why it was not performed, Dr. Marx's opinions on this point "merely recit[e] what is on the face of . . . document[s] produced during discovery." *See Cross Commerce Media, Inc.*, 2014 U.S. Dist. LEXIS 117244, at * 22. Her opinions on this topic are therefore excluded.

Finally, Dr. Marx's report contains a number of references to Defendants' motivations, thought processes, and understanding.[5] These opinions are inadmissible. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 547.

Defendants' motion to exclude Dr. Marx's testimony is GRANTED with respect to testimony regarding the term "super-plus factors," Defendants' economic self-interest, and the parties' motivations, thoughts, or intentions. The motion is DENIED with respect to Dr. Marx's opinions regarding "plus factors."

---

[5] *See, e.g.*, Report ¶ 106 (Defendants "perceived Walmart as being reluctant to switch wholesalers"); Report ¶ 161 ("Defendants clearly were conscious of potential future antitrust liability"); Report ¶ 214 (Defendants "monitored shipping channels and other sources to ensure that none of their competitors were intending to deviate from their plan to cut off Anderson and Source").

7

## CONCLUSION

For the reasons set forth above, the motion to exclude Professor Guhan Subramanian's testimony is GRANTED. The motion to exclude Dr. Leslie Marx's testimony is GRANTED in part and DENIED in part.

In light of this Order, and the Order GRANTING Defendants' and Counterclaim Defendants' motions for summary judgment, the Clerk is directed to enter judgment and close this case.

Dated: New York, New York  
       August 20, 2015

SO ORDERED

*Paul A. Crotty*  
PAUL A. CROTTY  
United States District Judge